RIDER TO SUBCONTRACT AGREEMENT BETWEEN    USM 3900
THE PBM-LIMBACH GROUP-MECHANICAL
and UNITED SHEET METAL

The provisions of this Rider amend the terms and conditions of Subcontract No. 13033-010-014-4 for the BEQ Marine Barracks Annex and Support Facility Project ("Agreement") between **The PBM-Limbach Group-Mechanical** ("Contractor") and **United Sheet Metal** ("Subcontractor"). To the extent that there are any conflicts or ambiguities between the provisions of this Rider and the terms and conditions of the Subcontract Agreement, the provisions of this Rider shall prevail.

SUBCONTRACT AGREEMENT

ARTICLE 4 – TIME OF COMPLETION AND SCHEDULE

Second Paragraph
  Line 3: *Delete* "because of any" and in their place, *insert* "to the extent."
  End of sentence: *Add* "is caused by the Subcontractor."

ARTICLE 6 – TERMINATION FOR DEFAULT
  Line 4: After "seventy-two (72) hours", *insert* ", if Subcontractor fails to commence and continue correction of such default or neglect with diligence and promptness."
  Line 7: *Insert* "reasonable" between "such" and "event."

ARTICLE 9 – INDEMNIFICATION
  Line 3: *Insert* "to the extent caused by the negligent acts or omissions of the Subcontractor and" between "fees)" and "arising."

ARTICLE 15 – REMOVAL OF RUBBISH

Second Paragraph
  Line 3: *Insert* "Upon further notice to Subcontractor," before "Subcontractor shall."

ARTICLE 20 – MAINTENANCE AND OPERATING INSTRUCTIONS

Second Paragraph
  *Delete* in its entirety.

IN WITNESS WHEREOF, and intending to be legally bound, the parties have executed this Rider by their duly authorized representatives this 20th day of NOVEMBER, 2002.

THE PBM-LIMBACH GROUP-MECHANICAL            UNITED SHEET METAL
(Contractor)                                 (Subcontractor)

By: Randy Newcom                             By: [signature]

Title: PROJECT MANAGER                       Title: Jimmie G. Roberts
                                                    President

Revised: 3/99
Supersedes: 12/98

## The PBM-LIMBACH Group - Mechanical
## SUBCONTRACT

USM 3900

| PROJECT # | PHASE | TRADE | CNTR | UNIT | TYPE | SUBCONTRACT # |
|---|---|---|---|---|---|---|
| 13033 | 01 | 0 | 0 | 14 | 4 | 13033-010-014-4 |

| BRANCH NO. | VENDOR NO. | SUBCONTRACTOR |
|---|---|---|
| 34 | | United Sheet Metal, 51 Ritchie Road, Capitol Heights, Maryland 20743<br>Contact: Rick Moy, Phone: (301) 350-4200, Fax: (301) 336-0944 |

THIS SUBCONTRACT is entered into this **27th** day of **August**, 2002 by and between **The PBM-LIMBACH Group - Mechanical** a Virginia Corporation (hereinafter "Contractor") and **United Sheet Metal** a Maryland Corporation (hereinafter "Subcontractor").

WHEREAS, Contractor has entered into a certain contract (hereinafter "Principal Contract"), dated **June 6, 2002**, with **Coakley Williams Construction** (hereinafter "Principal"), to execute construction work for Principal on **BEQ Marine Barracks Annex and Support Facility**, at **8th & I Streets, S.E., Washington, DC 20374** (hereinafter "Project") for **The Department of the Navy** (hereinafter "Owner"), and this Subcontract is for the performance by Subcontractor of a portion of such work.

The parties hereto mutually agree as follows:

### ARTICLE 1 - SCOPE OF WORK (See Attachment "A")

Subcontractor shall furnish, in strict accordance with the Contract Documents, all labor, materials, tools, machinery, equipment, hoisting, storage facilities, utilities, supplies and services and do all things necessary for the complete performance of the work described in Article 21 (hereinafter the "Work").

Subcontractor shall provide, during the entire construction of the Project, a jobsite superintendent with full authority to act on behalf of Subcontractor and such foremen and other supervisory personnel to assure compliance with established schedules, quality standards for the Work and other requirements of this Subcontract.

### ARTICLE 2 - SUBCONTRACT PRICE AND PAYMENT

The Subcontract Price to be paid by Contractor to Subcontractor shall be the amount stated in Article 21, which includes any and all sales, use and other taxes, fees, permits and licenses arising out of the Work, subject to additions and/or deductions as provided herein.

On a monthly date (the 15th of each month unless otherwise indicated) and in the form specified by Contractor, Subcontractor shall submit to Contractor a requisition for payment showing the proportionate value of the Work performed through a current monthly date specified by Contractor, less a retention of **Ten** percent (**10%**) of such value and less all prior requisitions by Subcontractor. No payment shall be made to Subcontractor unless the requisition is submitted in the form specified by Contractor. Contractor shall pay Subcontractor, within a reasonable period of time after payment is received by Contractor, the approved value of Subcontractor's Work covered by each requisition, less the retention and all prior requisitions as provided above and less all other amounts which Contractor is entitled to retain or deduct in accordance with this Subcontract. Subcontractor acknowledges and agrees that receipt of payment by Contractor from Principal is an express condition precedent to Subcontractor's right to receive any payments from Contractor for or arising out of the Work performed pursuant to this Subcontract. If for any reason whatsoever Contractor does not receive payment from Principal, Contractor shall have no obligation to make payment to Subcontractor.

RECEIVED
09/03/02
UNITED SHEET METAL

1 of 18



Before the first requisition for payment, Subcontractor shall submit to Contractor a schedule of values for the entire Subcontract allocated to various portions of the work, prepared in such form, to the level of detail, and supported by such data to substantiate its accuracy as Principal, Architect or Owner may require. Overhead and profit shall be distributed into each item of the Work. Contractor and/or Principal shall have the right to require Subcontractor to alter the value or add/delete categories listed on the schedule of values at any time if (a) the schedule of values appears to be incorrect or unbalanced, (b) a revision of the segregation of values is required due to Subcontractor revising the sequence of construction or assembly of building components which in turn invalidates the schedule of values, or (c) Change Orders are issued to Subcontractor. The sum of the parts of the schedule of values shall total to the Subcontract Sum. This schedule, unless objected to by Contractor, Principal, Architect or Owner, shall be used as a basis for reviewing Subcontractor's requisition for payment. The minimum level of breakdown and order on the requisition for payment will be (a) bond costs, if applicable, (b) general conditions line item(s), (c) major portions of the Work broken down into labor and material line items, (d) mobilization and demobilization, (e) warranties and manuals, and (f) a listing of approved and executed Change Orders to the Subcontract, if any, in sequential order.

Subcontractor will be entitled to payment for stored materials off site only if and to the extent Contractor is entitled to payment for stored materials off site. Subcontractor is required to correlate the documentation for payment of stored materials requested in the requisition for payment against the agreed-upon breakdown of the schedule of values. Contractor reserves the right to not process the requisition for payment if this correlation has not been submitted in conjunction with the requisition.

Contractor may, in its sole discretion, make payments to Subcontractor at earlier times or in larger amounts than provided herein. Contractor may also, in its sole discretion, make payments directly to sub-subcontractors, labor and/or material suppliers of Subcontractor to satisfy claims and/or liens, by joint check or otherwise, and deduct the amount of any such payments from amounts due or to become due to Subcontractor under this Subcontract. At the time of presenting each monthly requisition, Subcontractor shall furnish Contractor with evidence satisfactory to Contractor that all labor, materials, and other costs for which Subcontractor received payment from Contractor have been paid in full.

Contractor shall be entitled to withhold payments for (a) equitable value of changes made in Subcontractor's Work that reduces its Subcontract price, (b) amounts withheld by Owner or Principal applicable to Subcontractor's Work, (c) damages incurred through delay by Subcontractor, and (d) damages incurred to remedy a default by Subcontractor. If the amounts for such withholding are in excess of the payments due Subcontractor, then Subcontractor shall promptly pay the total amount of any such excess to Contractor. This remedy shall be in addition to any other remedies provided for elsewhere in this Subcontract or existing at law or in equity.

Final payment shall be made to Subcontractor within a reasonable period of time after the last of the following events to occur: (a) final acceptance of all Work by Contractor, Principal and Owner, (b) receipt of evidence satisfactory to Contractor that all costs incurred by Subcontractor in performance of the Work have been paid in full, (c) execution and delivery by Subcontractor of a general release and final waiver of lien, in the form specified by Contractor, and (d) receipt of payment in full by Contractor from Principal, it being expressly understood by Subcontractor that receipt of payment by Contractor from Principal is a condition precedent to Subcontractor's right to receive any payment from Contractor under this Subcontract.

No payment made under this Subcontract shall constitute evidence of partial or complete performance of this Subcontract or acceptance of the Work, nor shall entrance by or use of all or any part of the Work by Contractor, Principal or Owner constitute acceptance of the Work.

**ARTICLE 3 - CONTRACT DOCUMENTS**

The Principal Contract, and all drawings, specifications, addenda, general, special and supplementary conditions, and other documents forming or by reference made a part of the Principal Contract, are hereby made a part of this Subcontract and are herein called the "Contract Documents." The Contract Documents are available for review by Subcontractor at the offices of Contractor and/or Principal upon request. Subcontractor represents that it has examined the Contract Documents, has investigated the Work and is familiar with all conditions of the Project affecting the Work, has verified all information furnished by Contractor, and is fully qualified to perform the Work.



Subcontractor shall be bound by, and expressly assumes for the benefit of Contractor, all obligations and liabilities which the Contract Documents impose upon Contractor in connection with the Work. Contractor shall have the same rights and remedies against Subcontractor as Principal has against Contractor under the Contract Documents.

**ARTICLE 4 - TIME OF COMPLETION AND SCHEDULE**

Time is of the essence in this Subcontract. Subcontractor shall comply with the schedules and completion dates set forth in the Contract Documents, as revised during construction, and with all schedules issued by Principal or Contractor. Subcontractor shall secure all necessary information and approvals, and plan, purchase, fabricate and do all things necessary to comply with the schedules and completion dates. Subcontractor shall coordinate its Work under the Subcontract with the work of the Contractor, Principal and all other contractors and subcontractors on the Project in order to comply with the schedules and completion dates.

If Subcontractor delays the material progress of the Project, Subcontractor shall indemnify and hold harmless Contractor, Principal and Owner from liability for any and all damages, costs and expenses (including attorneys' fees) incurred by Contractor, Principal, and Owner because of any such delay.

When directed by Contractor, Subcontractor shall increase manpower, work additional hours and shifts, work weekends and holidays, and expedite equipment and material deliveries to the extent necessary, in Contractor's opinion, to comply with Subcontractor's obligations under this Article, at no cost to Contractor.

If Subcontractor shall be delayed in the performance of the Work by any cause beyond its control or not within its reasonable control to avoid, Subcontractor shall promptly notify Contractor in writing. The time of completion of the Work under the Subcontract shall be extended only to the extent that the time of completion is extended by Principal or Owner under the Contract Documents. An extension of time is the sole and exclusive remedy of Subcontractor for any delay to the performance of its Work, except to the extent that Contractor actually receives additional compensation on behalf of Subcontractor from Principal or Owner due to delay or suspension of the Work.

**ARTICLE 5 - CHANGES IN WORK**

Subcontractor shall make changes in the Work as directed by written order from Contractor. Subcontractor shall not make changes in the Work unless so directed or approved in writing by Contractor prior to beginning any change to the Work.

If any change causes an increase or decrease in Subcontractor's cost or time required for performance of the Work, an equitable adjustment shall be made to the Subcontract Price and/or time of completion and this Subcontract modified in writing. Any request by Subcontractor for an adjustment in the Subcontract Price or time must be submitted to Contractor in itemized written form within seven (7) calendar days from date of receipt by Subcontractor of notification of a change. Pending a determination of the adjustment, if any, Subcontractor shall proceed with the Work as changed and maintain daily records during the performance of the change indicating the name of each employee, number of hours worked, the equipment and materials used, and a description of the work performed each day in connection with the change.

In the event of changes in the Work ordered by Principal or Owner, or other conduct of the Principal and/or Owner which increase Subcontractor's cost or time of performance, Contractor shall not be obligated to pay Subcontractor a greater sum than the Contractor is paid by the Principal and/or Owner for any such change or conduct, less reasonable overhead and profit to Contractor. In the event of deletions in the Work ordered by Principal or Owner, the amount of the deduction imposed upon Contractor by the Contract Documents for such deletion shall be deducted from the amount of the Subcontract Price.

If Contractor receives a claim from Subcontractor due to changes ordered by Principal or Owner or due to other conduct of the Principal and/or Owner, Contractor will submit the claim to Principal and/or Owner for processing in accordance with the Contract Documents. The submission of a claim to Principal and/or Owner on behalf of Subcontractor shall not be deemed an admission by Contractor, nor raise any presumption as to the validity or correctness of Subcontractor's claim. Subcontractor shall bear all expenses and burden of pursuing and proving its claim.



## ARTICLE 6 - TERMINATION FOR DEFAULT

In the event Subcontractor should become bankrupt, insolvent, fail to pay for materials or services for which it has received payment from Contractor, make an assignment or arrangement for creditors, refuse or neglect to prosecute the Work properly and diligently, or fail to perform any of the provisions of this Subcontract, Contractor shall notify Subcontractor in writing of the default(s) and, after seventy-two (72) hours Contractor may at its option cease making any further payment to Subcontractor, terminate Subcontractor's right to proceed with all or any part of the Work, take possession thereof and of all materials, equipment and supplies, and complete the terminated Work by such means as Contractor sees fit, at the cost and expense of Subcontractor. In any such event, Contractor may recover from Subcontractor the total amount of any loss or damage incurred as a result of such default, including reasonable attorneys' fees, and deduct any of the foregoing amounts from payments otherwise due or to become due to Subcontractor. If the damages incurred as a result of such default are in excess of the payments due Subcontractor, then Subcontractor or its surety shall promptly pay the total amount of any such excess to Contractor. These remedies for default are in addition to any other rights or remedies of Contractor elsewhere in this Subcontract or existing at law or in equity.

## ARTICLE 7 - SUBLETTING AND ASSIGNMENT

Subcontractor shall not assign this Subcontract, or sublet or subcontract any part of the Work, or assign the right to receive any payments due or to become due hereunder without prior written consent of Contractor, and Contractor's consent to any such assignment or subcontract shall not relieve Subcontractor of any liability for the full and complete performance of this Subcontract.

## ARTICLE 8 - INSURANCE

Subcontractor shall procure and maintain all insurance coverage required by the Contract Documents, but not less than the following: (1) insurance as required under the applicable Workers' Compensation and Occupational Safety and Health Acts; (2) Comprehensive General Liability Insurance, including contractual liability coverage for the indemnification clauses stated herein, with limits not less than $1,000,000 per occurrence; (3) Contractor's Protective Liability Insurance with limits not less than $500,000, if any of the Work is to be sublet; (4) Completed Operations coverage; (5) Automobile Liability Insurance with limits not less than $500,000; and (6) Installation Floater Property Insurance with limits not less than $500,000. General Liability and Automobile Liability Insurance limits may be attained by individual policies or by a combination of underlying policies with umbrella and/or excess liability policies.

Contractor, Principal and Owner shall be named as additional insured under the policies of insurance required by the Contract Documents (except for Workers' Compensation) and shall be afforded the same coverage under the policies as Subcontractor. Certificates of such insurance shall be filed with Contractor *prior* to the commencement of any Work by Subcontractor, shall be subject to approval of Contractor, and shall provide for thirty (30) days' written notice to Contractor of changes in or cancellation of any such insurance. No payment under this Subcontract shall be made to Subcontractor until the required certificates of insurance have been filed with Contractor.

The General Liability Insurance must be primary and not excess over and not contributory with any other insurance of Principal or Contractor. Subcontractor and its insurance carriers waive subrogation rights against Contractor, Principal, Owner and their insurance carriers for losses covered by Subcontractor's insurance, and will include this same requirement in contracts with its subcontractors and suppliers. If the policies of insurance referred to in this paragraph require an endorsement to provide for continued coverage where there is a waiver of subrogation, Subcontractor will cause them to be so endorsed.

## ARTICLE 9 - INDEMNIFICATION

Subcontractor shall defend, indemnify and save harmless the Owner, Principal, and Contractor, and their officers and employees, from all claims, loss, damage, injury, liability, costs and expenses of whatsoever kind or nature (including attorneys' fees) arising out of this Subcontract or attributable to the Work performed under this Subcontract, except to the extent that such claim, loss, damage, injury or liability is caused by the sole negligence of a party indemnified hereunder. Subcontractor's indemnity obligations under this Subcontract shall not be limited by the provisions of any Workers' Compensation or similar acts. In the event that the indemnification required under this Article is prohibited by law, Subcontractor shall indemnify Contractor to the fullest extent permitted by law.

## ARTICLE 10 - SAFETY

Subcontractor is solely responsible for the health and safety of its employees, agents, subcontractors, and other persons on and adjacent to the Project site. Subcontractor shall take all necessary and prudent safety precautions with respect to its Work and shall comply with ALL safety programs and measures initiated by Contractor, Principal, and Owner and with all applicable laws, ordinances, rules, regulations and orders of any public authority for the safety of persons or property, including, but not limited to, OSHA Standard 1926.59 for a Hazardous Communication Standard Policy. Subcontractor and all of its subcontractors shall submit Material Safety Data Sheets ("MSDS") and Hazardous Substance Survey Forms ("HSSF") for all materials for which the MSDS and the HSSF are required by OSHA prior to bringing such materials onto the Project site. Subcontractor agrees to cooperate with Contractor, Principal and Owner on any overall Substance Abuse Program instituted for the Project, and will provide a copy of its own Substance Abuse Policy, if any, to Contractor and Principal prior to commencement of Work.

Subcontractor shall assign a competent safety representative (a) who is certified both in first aid and CPR, (b) who is capable of identifying existing and predictable hazards in the surroundings or working conditions which are unsanitary, hazardous, or dangerous to employees and the public, and (c) who has authorization to take prompt corrective measures to insure the safety of Subcontractor's work areas. Subcontractor's safety representative shall submit Subcontractor's safety plan to Contractor for review prior to the commencement of any work activities on the Project site and shall report within one (1) day to Contractor any injury to any of Subcontractor's employees at the site and all precautions taken to eliminate the cause of each accident.

As an expert in Subcontractor's field of work, Subcontractor's safety representative has sole control over all requirements for doing the work safely, and Contractor is not responsible in any manner for the safety of Subcontractor's Work. If Subcontractor fails to correct unsafe procedures, acts, or conditions within twenty-four (24) hours of notification by Contractor or any public authority, however, Contractor may (but has no contractual obligation to do so) correct the unsafe practice and backcharge the Subcontractor for these costs plus ten percent (10%) for overhead, ten percent (10%) for profit, and twenty percent (20%) for a "safety premium." This specifically includes but is not limited to the cleanup of Subcontractor's construction debris and the replacement of standard railings or barricades removed by Subcontractor's employees. Repeated failures to correct unsafe practices will result in default and termination of this Subcontract pursuant to Article 6 of this Subcontract and without any further notice to Subcontractor. In the event Contractor receives a penalty from OSHA as a result of a violation of OSHA Standards by Subcontractor and Contractor is cited under the multi-employer work site rule, Subcontractor agrees to protect, defend, indemnify and hold harmless Contractor from the imposition of any fines and/or penalties by OSHA.

## ARTICLE 11 - GUARANTEES

Subcontractor shall protect the Work until final acceptance thereof by Principal and Owner, and shall warrant and guarantee for a period of one (1) year after such acceptance, or for such longer period thereafter as may be provided in the Contract Documents, that the Work shall be free from defects in workmanship and materials, and shall develop the ratings, capacities and characteristics specified in the Contract Documents.

Without limiting the foregoing, Subcontractor agrees to assign to Contractor and/or Owner any and all guarantees or warranties of manufacturers or suppliers of equipment and material under this Subcontract. Subcontractor shall also execute such separate guarantees directly for the benefit of Owner as may be required by the Contract Documents.

Subcontractor shall remove, replace and/or repair at its own expense and at the convenience of Owner, Principal and Contractor any non-conforming or defective Work or Work which fails to comply with the Contract Documents. Subcontractor shall also pay all costs necessary to remove, replace and/or repair any other work or property which may be damaged in removing, replacing or repairing the Work, and shall reimburse Contractor for any loss or damage sustained by Contractor arising out of the non-conforming or defective Work.



### ARTICLE 12 - PERSONNEL

Subcontractor shall employ such labor as will ensure that the work of Contractor, Principal or any other contractor or subcontractor on the Project will not be interrupted, delayed or hindered by a labor controversy or dispute of any kind. Failure to do so shall constitute a default by Subcontractor under Article 6 of this Subcontract. Labor controversies and disputes between Subcontractor, its employees and/or any other contractors or subcontractors on the Project shall not be a basis for an extension of time under the Subcontract or otherwise relieve Subcontractor of its obligations under the Subcontract.

### ARTICLE 13 - PAYMENT AND PERFORMANCE BONDS

Contractor may require Subcontractor to provide payment and performance bonds at any time, each in the full amount of the Subcontract Price, in a form and with sureties acceptable to Contractor, dated as of the date of this Subcontract. Failure by Subcontractor to furnish such bonds within five (5) days after written notice from Contractor shall, at the option of Contractor and without further notice, constitute a default under Article 6 of this Subcontract. No payment under this Subcontract shall be made to Subcontractor until Subcontractor has furnished the bonds requested by Contractor.

### ARTICLE 14 - PATENTS

Subcontractor shall defend, indemnify and save harmless Contractor, Principal and Owner against liability for all damages, loss and expenses, including attorneys' fees, sustained by reason of any patent infringement claims arising out of the Work.

### ARTICLE 15 - REMOVAL OF RUBBISH

Subcontractor shall keep the Project free at all times from accumulation of scrap, rubbish and debris resulting from the Work. At the time of completion, Subcontractor shall clean the Work in the manner required by the Contract Documents. Subcontractor shall remove from work performed by others at the Project all dirt and other matter resulting from execution of the Work.

If Contractor notifies Subcontractor that it is delinquent in its obligations of cleanup or rubbish removal and Subcontractor fails to remedy such delinquency in a timely manner, Contractor and/or Principal have the right to take whatever steps necessary to remedy such delinquency. Subcontractor shall then be backcharged for all costs of such remedy.

### ARTICLE 16 - USE OF CONTRACTOR'S TOOLS AND EQUIPMENT

Whenever Subcontractor shall use any hoist, scaffold, derrick, material, tools or equipment owned and/or furnished by Owner, Principal or Contractor, Subcontractor shall satisfy itself as to the safety and legal use thereof to the same extent as if it were owned by and in the sole control of Subcontractor. Subcontractor assumes full responsibility for the use and safety of any borrowed hoist, scaffold, derrick, materials, tools and equipment, and hereby agrees to defend, indemnify and hold harmless Owner, Principal and Contractor for any claims and damages caused by or arising out of the use thereof by Subcontractor, its agents, employees and sub-subcontractors.

### ARTICLE 17 - INTERPRETATION

Interpretation of the Contract Documents is governed by the provisions of the Contract Documents, and Contractor shall not be responsible to Subcontractor for interpretations of the Contract Documents by employees or agents of Contractor, unless the interpretation is expressly provided in writing to Subcontractor by Contractor's authorized representative.

Should a dispute arise as to the scope of work required by Subcontractor under the Contract Documents, Subcontractor shall perform all disputed work promptly upon written direction of an authorized representative of Contractor. Subcontractor shall submit a fully documented and itemized claim for any adjustment to the Subcontract Price and/or time to Contractor within seven (7) calendar days from date of receipt of such written direction, and such claim shall be processed and disposed of in accordance with Article 5 as though it were a change in the Work.



**ARTICLE 18 - DISPUTES**

In the event of any dispute between Contractor and Subcontractor due to any conduct of Owner or Principal or involving the Contract Documents, Subcontractor shall be bound to any disputes procedure to which Contractor is bound under the Contract Documents and to any decision rendered thereunder, provided that Subcontractor is given notice that such dispute procedure has been demanded by any party, whether or not Subcontractor elects to participate in such procedure. Subcontractor shall bear the burden of proving its claims and refuting claims made against it through Contractor by Owner or Principal and shall bear all of its costs, expenses and attorneys' fees in connection therewith.

Any dispute between Contractor and Subcontractor arising out of this Subcontract or breach thereof, but not involving the Owner, Principal or Contract Documents, may, at the option of Contractor, be submitted to arbitration in accordance with the Construction Industry Rules of the American Arbitration Association. Any arbitration proceeding instituted under this paragraph or under any disputes procedure in the Contract Documents may be consolidated at the option of Contractor with any other arbitration proceeding then or thereafter pending between Contractor and any other person if the respective arbitrations arise out of common questions of fact or law. The decision of the arbitrator(s) shall be final and binding upon the parties and a judgment upon any award rendered may be entered in any court of competent jurisdiction.

**ARTICLE 19 - SHOP DRAWINGS & CATALOGS (SUBMITTALS)**

Timely and accurate submittal of shop drawings, other submittal documents, and as-built record drawings is of the essence of this Subcontract. Subcontractor shall submit in the number of copies and format as directed by Contractor all shop drawings, calculations, data, catalogue cuts, drawings, equipment lists and other submittal documents required by the Contract Documents not later than forty-five (45) days prior to the scheduled commencement of the relevant portion of the Work or such earlier date as requested by Contractor. Such submittal documents shall clearly identify the Project Name, the Contractor, the Subcontractor, the manufacturer of the submitted product, the contract drawings and specifications to which the submittal is applicable, the specific materials, equipment and arrangement proposed, and relevant performance data. Subcontractor shall cooperate with Contractor in providing the information necessary to produce a submittal register of all items requiring submittals. This submittal register shall include (a) specification section number, (b) description, (c) submittal type (sample, shop drawing, warranty, etc.), (d) scheduled date for initial submittal, and (e) number of days required for fabrication and delivery once an approved submittal is returned to Contractor.

Submittal documents shall comply with the Contract Documents except for deviations approved in writing by Owner, Principal and Contractor. Each submittal shall be accompanied by a transmittal which explicitly states that there are no deviations from the requirements of the Contract Documents, except those deviations for which approval is requested. In the event approval of a deviation is not granted, Subcontractor shall promptly correct the submittal documents and proceed as required by the Contract Documents so as to not delay performance of the Work.

Subcontractor shall furnish Contractor with detailed as-built/record drawings which fully describe the actual installation performed under this Subcontract. As-built/record drawings shall be in the format and in the level of detail as required by Owner, Principal and Contractor.

**ARTICLE 20 - MAINTENANCE AND OPERATING INSTRUCTIONS**

Subcontractor shall submit maintenance and operating instructions in the number and within the time required by the Contract Documents. Such instructions shall include all equipment, materials and systems provided under the Subcontract, and shall include an index, the name and address of Subcontractor and each manufacturer, wiring diagrams, parts lists, assembly drawings, instructions for check-out and start-up, and instructions for maintenance and operation.

Contractor may withhold ten percent (10%) of the Subcontract Price, in addition to retention under Article 2, pending receipt and acceptance by Owner of maintenance and operating instructions.
Subcontractor shall provide, at its cost, qualified personnel to perform start-up of the equipment provided by Subcontractor under this Subcontract, and to provide instructions on maintenance and operation to personnel of Owner as required by the Contract Documents.



**ARTICLE 21 - WORK AND SUBCONTRACT PRICE**

Description of Work:  See Attachment "A" (Scope of Work)
See Attachment "B" (Drawing List)
See Attachment "C" (Subcontractor Requisition Form)

Subcontract Price: $651,000.00

**ARTICLE 22 - COMPLIANCE WITH LAWS**

Subcontractor shall comply with all federal, state and local laws, ordinances, rules and regulations applicable to the performance of this Subcontract, including without limitation those relative to equal employment opportunity, fair labor standards, and occupational safety and health. Subcontractor shall provide written certification of compliance upon request of Contractor. Subcontractor shall defend, indemnify and hold harmless Contractor, Principal and Owner from any and all liability arising out of or attributable to Subcontractor's failure to comply with any such law.

Contractor is an equal opportunity employer in compliance with Title VII, Civil Rights Acts of 1964, Executive Order 11246 and Revised Order 4, Section 402 of the Vietnam Era Veterans Readjustment Assistance Act of 1974 and Section 503 of the Rehabilitation Act of 1973. Subcontractor will ensure that in regard to any of its contracts entered into pursuant to this Subcontract that minority and women-owned business enterprises will be afforded full opportunity to participate upon meeting the qualifications to bid on the Project, and will not be discriminated against on the grounds of race, creed, color, sex, age, disability, religion, ancestry, marital status, national origin, place of birth or sexual preference. Subcontractor shall ensure that employees and applicants for employment are not discriminated against because of race, color, sex, origin, age, marital status, sexual orientation, or disability and in conformance with all local, state and federal regulations.

Subcontractor will provide certified payrolls on a weekly basis for direct forces, both field and shop, and all sub-subcontractor forces. Department of Labor Form WH-347 is acceptable. The sex, minority status and zip code must be provided for each employee on these payroll forms.

**ARTICLE 23 – YEAR 2000 COMPLIANCE**

Should the Work, the equipment or the materials provided under this Subcontract include any computer equipment, systems, computer software programs, embedded chips or any computer product of any nature (collectively "Computer Work"), or should Subcontractor use computer software, computer hardware, firmware, telecommunications and other information technology systems and equipment containing microchips (collectively "Covered Systems"), Subcontractor represents and warrants that the Work, including without limitation all Computer Work and Covered Systems, shall be "Year 2000 compliant." "Year 2000 compliant" means that the Computer Work and Covered Systems shall be properly designed so that their correct, accurate, continued and proper operation is unaffected by the change of millennium, and shall continue to properly operate and function without interruption through the years 1999 and 2000 and thereafter (including year change dates and leap year dates), and will not cause damage to other systems that interface with the Work. "Year 2000 compliant" also means that the Computer Work and Covered Systems shall properly process, calculate, compare, sequence, display, store, transmit and receive date data (including year change dates and leap year dates) from, into and between the 20th and 21st centuries and during the years 1999 and 2000. Subcontractor shall fully defend, indemnify and hold harmless Contractor, Principal and the Owner from and against any and all claims, losses, expenses, costs, liabilities and damages of any nature, including attorneys' fees, arising out of and/or relating to any inaccuracy in the foregoing representation or breach of the foregoing warranty.



## ARTICLE 24 - COMPLETE AGREEMENT

This Subcontract constitutes the entire agreement between the parties and supersedes any and all other written or oral agreements. This Subcontract cannot be amended or changed, nor may any provision hereof be waived, except in writing signed by an authorized representative of the parties.

IN WITNESS WHEREOF, the parties hereto executed this Subcontract the day and year first above written.

Attest/Witness: _____

THE PBM-LIMBACH GROUP - Mechanical
(Contractor)

Signed: _Randy Newa_____

Title: __PROJECT MANAGER_____

Date: __11/20/02_____

Attest/Witness: _____

UNITED SHEET METAL
(Subcontractor)

Signed: _____

Title: __Jimmie G. Roberts_____
           President

Date: __11-19-02_____



ATTACHMENT A
SCOPE OF WORK
13033-010-014-4

Provide all labor, material and equipment to perform low pressure metal ductwork, medium pressure metal ductwork, flexible ductwork (insulated), fire and smoke dampers, sound attenuators, air distribution devices, and air inlet and outlet louvers in strict accordance with but not limited to sections 15881, 15882, 15884A, 15890, 15920, 15930, and 15931 of the specifications. Scope of work based on the Attached Drawing List (Attachment B).

A. In addition to all other requirements, this Contract includes, but is not limited to, the following:

   1. All ductwork
   2. Aluminum dryer exhaust
   3. Boiler flue duct
   4. Duct Soundlining
   5. Perforated inner lining
   6. Flex duct
   7. Mechanical louvers
   8. Fire dampers
   9. Smoke dampers
   10. Duct leak testing
   11. Parking garage
   12. Drafting/coordination
   13. Registers, grilles and diffusers

B. In addition to all other requirements, this Contract includes the following to the extent they are applicable to the items included in this Subcontract.

   1. Division 15 – MECHANICAL.
   2. Section 15932 Sheet Metal SpecialtiesDivision
   3. Division 00 – List of Drawings
   4. Division 01 – Sections inserted from RFP
   5. WAGE RATES – GENERAL DECISION NUMBER DC010003, N62477-00-R-0077.

C. This contract includes receiving, unloading, distributing, and setting the following items which will be supplied by others:

   1. Fans with isolation
   2. Smoke detectors
   3. Automatic dampers
   4. Humidifiers (duct mounted)
   5. Ventilators
   6. 50/50 labor on ducted FCU's and AHU's
   7. VAV boxes
   8. Other duct mounted devices supplied by others.

D. This contract does not include the following:

   1. Rigging
   2. Premium time
   3. Cut, patch, paint
   4. Air balancing
   5. Belt guards
   6. Arch. access doors
   7. Arch. louvers
   8. Firestopping



ATTACHMENT "B"

Marine Barricks Annex and Support Facility
8th & I Streets, SE
Washington, DC 20374

Job No. 13033

## DRAWING LOG

| DRAWING NO. | DESCRIPTION | DRAWING DATE |
|---|---|---|
| **COVER** | | |
| A-CVR - 1 | COVER SHEET | 03/11/02 |
| A-CVR - 2 | INDEX AND SYMBOLS | 03/11/02 |
| A-CVR - 3 | CODE ANALYSIS | 03/11/02 |
| A-CVR - 4 | LIFE SAFETY CODE ANALYSIS | 03/11/02 |
| A-CVR - 5 | LIFE SAFETY CODE ANALYSIS | 03/11/02 |
| **CIVIL** | | |
| C - 1 | EXISTING CONDITIONS PLAN | 03/11/02 |
| C - 1.1 | SOIL BORING LOCATION PLAN | 03/11/02 |
| C - 1.2 | SOIL BORING LOG | 03/11/02 |
| C - 2 | DEMOLITION PLAN | 03/11/02 |
| C - 3 | SEDIMENTATION AND EROSION CONTROL PLAN | 03/11/02 |
| C - 4 | SITE AND GRADING PLAN | 03/11/02 |
| C - 5 | UTILITY PLAN | 03/11/02 |
| C - 6 | PLANTING PLAN | 03/11/02 |
| C - 7 | SEDIMENTATION AND EROSION CONTROL DETAILS | 03/11/02 |
| C - 8 | UTILITY DETAILS | 03/11/02 |
| C - 9 | SITE DETAILS | 03/11/02 |
| C - 10 | SITE DETAILS | 03/11/02 |
| C - 11 | SITE DETAILS | 03/11/02 |
| C - 12 | STORMWATER MANAGEMENT DETAILS | 03/11/02 |
| C - 13 | UTILITY PROFILES | 03/11/02 |
| C - 14 | UTILITY PROFILES | 03/11/02 |
| **ARCHITECTURAL** | | |
| A1 - 01 | LOWER LEVEL FLOOR PLAN | 03/11/02 |
| A1 - 02 | GROUND LEVEL PLAN | 03/11/02 |
| A1 - 03 | SECOND FLOOR PLAN | 03/11/02 |
| A1 - 04 | 3RD AND 4TH FLOOR PLAN | 03/11/02 |
| A1 - 05 | ROOF PLAN | 03/11/02 |
| A1 - 06 | ENLARGED LOWER LEVEL FLOOR PLAN | 03/11/02 |
| A1 - 07 | ENLARGED LOWER LEVEL FLOOR PLAN | 03/11/02 |
| A1 - 08 | ENLARGED GROUND LEVEL PLAN | 03/11/02 |
| A1 - 09 | ENLARGED GROUND LEVEL PLAN | 03/11/02 |
| A1 - 10 | ENLARGED SECOND FLOOR PLAN | 03/11/02 |
| A1 - 11 | ENLARGED SECOND FLOOR PLAN | 03/11/02 |
| A1 - 12 | ENLARGED 3RD FLOOR PLAN | 03/11/02 |
| A1 - 13 | ENLARGED 4TH FLOOR PLAN | 03/11/02 |
| A2 - 01 | BUILDING SECTIONS | 03/11/02 |
| A2 - 02 | BUILDING SECTIONS | 03/11/02 |
| A3 - 01 | EXTERIOR ELEVATIONS | 03/11/02 |
| A3 - 02 | EXTERIOR ELEVATIONS | 03/11/02 |
| A3 - 03 | EXTERIOR ELEVATIONS - ENLARGED ELEVATIONS | 03/11/02 |
| A3 - 04 | EXTERIOR ELEVATIONS - ENLARGED ELEVATIONS | 03/11/02 |



ATTACHMENT "B"

Marine Barricks Annex and Support Facility
8th & I Streets, SE
Washington, DC  20374

Job No. 13033

## DRAWING LOG

| DRAWING NO. | DESCRIPTION | DRAWING DATE |
|---|---|---|
| A4 - 01 | LOWER LEVEL REFLECTED CEILING PLAN | 03/11/02 |
| A4 - 02 | LOWER LEVEL REFLECTED CEILING PLAN | 03/11/02 |
| A4 - 03 | GROUND LEVEL REFLECTED CEILING PLAN | 03/11/02 |
| A4 - 04 | GROUND LEVEL REFLECTED CEILING PLAN | 03/11/02 |
| A4 - 05 | SECOND FLOOR REFLECTED CEILING PLAN | 03/11/02 |
| A4 - 06 | SECOND FLOOR REFLECTED CEILING PLAN | 03/11/02 |
| A4 - 07 | 3RD AND 4TH FLOOR REFLECTED CEILING PLAN | 03/11/02 |
| A5 - 01 | ENLARGED FLOOR PLANS | 03/11/02 |
| A5 - 02 | ENLARGED FLOOR PLANS | 03/11/02 |
| A5 - 03 | ENLARGED BEQ UNIT FLOOR PLANS | 03/11/02 |
| A6 - 01 | WALL SECTIONS | 03/11/02 |
| A6 - 02 | WALL SECTIONS | 03/11/02 |
| A6 - 03 | WALL SECTIONS | 03/11/02 |
| A6 - 04 | WALL SECTIONS | 03/11/02 |
| A6 - 05 | WALL SECTIONS | 03/11/02 |
| A6 - 06 | WALL SECTIONS | 03/11/02 |
| A6 - 07 | WALL SECTIONS | 03/11/02 |
| A6 - 08 | WALL SECTIONS | 03/11/02 |
| A6 - 09 | WALL SECTIONS | 03/11/02 |
| A7 - 01 | STAIR #1 AND #2 PLANS AND SECTIONS | 03/11/02 |
| A7 - 02 | STAIR #3  PLANS, SECTIONS, AND DETAILS | 03/11/02 |
| A7 - 03 | STAIR #4 PLANS AND SECTIONS | 03/11/02 |
| A7 - 04 | MONUMENTAL STAIR PLANS AND SECTION | 03/11/02 |
| A7 - 05 | EXTERIOR STAIRS PLANS, SECTIONS AND DETAILS | 03/11/02 |
| A8 - 01 | ELEVATORS #1, 2, AND 3 SECTIONS AND DETAILS | 03/11/02 |
| A10 - 01 | EXTERIOR PLAN DETAILS AT LOWER LEVEL | 03/11/02 |
| A10 - 02 | EXTERIOR PLAN DETAILS AT LOWER LEVEL | 03/11/02 |
| A10 - 03 | EXTERIOR PLAN DETAILS AT GROUND LEVEL | 03/11/02 |
| A10 - 04 | EXTERIOR PLAN DETAILS AT GROUND LEVEL | 03/11/02 |
| A10 - 05 | EXTERIOR PLAN DETAILS AT GROUND LEVEL | 03/11/02 |
| A10 - 06 | PLAN DETAILS AT GROUND LEVEL | 03/11/02 |
| A10 - 07 | PLAN DETAILS AT GROUND LEVEL | 03/11/02 |
| A10 - 08 | PLAN DETAILS AT GROUND LEVEL | 03/11/02 |
| A11 - 01 | WALL SECTION DETAILS | 03/11/02 |
| A11 - 02 | WALL SECTION DETAILS | 03/11/02 |
| A11 - 03 | WALL SECTION DETAILS | 03/11/02 |
| A11 - 04 | WALL SECTION DETAILS | 03/11/02 |
| A11 - 05 | WALL SECTION DETAILS | 03/11/02 |
| A11 - 06 | WALL SECTION DETAILS | 03/11/02 |
| A11 - 07 | ROOF DETAILS | 03/11/02 |
| A12 - 01 | INTERIOR ELEVATIONS: GROUND LEVEL | 03/11/02 |
| A12 - 02 | INTERIOR ELEVATIONS: GROUND LEVEL | 03/11/02 |
| A12 - 03 | INTERIOR ELEVATIONS: GROUND LEVEL | 03/11/02 |
| A12 - 04 | INTERIOR ELEVATIONS: LOWER, GROUND AND UPPER FLOORS | 03/11/02 |



ATTACHMENT "B"

**Marine Barricks Annex and Support Facility**
**8th & I Streets, SE**
**Washington, DC 20374**

Job No. 13033

## DRAWING LOG

| DRAWING NO. | DESCRIPTION | DRAWING DATE |
|---|---|---|
| A12 - 05 | INTERIOR ELEVATIONS: GROUND LEVEL | 03/11/02 |
| A12 - 06 | INTERIOR ELEVATIONS: GROUND AND LOWER LEVEL | 03/11/02 |
| A12 - 07 | LOCKER ROOM AND BATHROOM ELEVATIONS | 03/11/02 |
| A12 - 08 | BATHROOM ELEVATIONS | 03/11/02 |
| A13 - 01 | MILLWORK - ENLARGED PLANS, ELEVATIONS AND DETAILS | 03/11/02 |
| A13 - 02 | MILLWORK - ENLARGED PLANS, ELEVATIONS AND DETAILS | 03/11/02 |
| A13 - 03 | INTERIOR DETAILS | 03/11/02 |
| A13 - 04 | MILLWORK - DETAILS | 03/11/02 |
| A13 - 05 | MILLWORK - DETAILS | 03/11/02 |
| A14 - 01 | PARKING GARAGE LEVEL 1 | 03/11/02 |
| A14 - 02 | PARKING GARAGE LEVEL 2 - LEVEL 3 | 03/11/02 |
| A14 - 03 | PARKING GARAGE LEVEL 4 | 03/11/02 |
| A14 - 04 | PARKING GARAGE BUILDING SECTIONS | 03/11/02 |
| A14 - 05 | PARKING GARAGE ELEVATIONS | 03/11/02 |
| A14 - 06 | PARKING GARAGE ELEVATIONS | 03/11/02 |
| A14 - 07 | PARKING GARAGE WALL SECTIONS | 03/11/02 |
| A14 - 08 | PARKING GARAGE STAIR #1 AND #2 PLANS AND SECTIONS | 03/11/02 |
| A14 - 09 | PARKING GARAGE ELEVATOR SECTIONS AND DETAILS | 03/11/02 |
| A14 - 12 | GUARD HOUSE PLANS, ELEVATIONS, SECTIONS AND DETAILS | 03/11/02 |
| A15 - 01 | PARTITION SCHEDULE | 03/11/02 |
| A15 - 02 | MATERIAL, ROOM FINISHES AND EQUIPMENT SCHEDULES | 03/11/02 |
| A15 - 03 | DOOR SCHEDULE | 03/11/02 |
| A15 - 04 | WINDOW, LOUVER AND THRESHOLD SCHEDULES | 03/11/02 |
| A15 - 05 | MOLDING SCHEDULE | 03/11/02 |
| ID1 - 01 | LOWER LEVEL FINISH PLANS | 03/11/02 |
| ID1 - 02 | GROUND LEVEL AND SECOND FLOOR FINISH PLANS | 03/11/02 |
| ID2 - 01 | LOWER LEVEL FURNITURE PLAN | 03/11/02 |
| ID2 - 02 | GROUND LEVEL FURNITURE PLAN | 03/11/02 |
| ID2 - 03 | SECOND FLOOR FURNITURE PLAN | 03/11/02 |
| ID3 - 01 | INTERIOR SIGNAGE PACKAGE | 03/11/02 |
| **STRUCTURAL** | | |
| S1 - 01 | GENERAL NOTES | 03/11/02 |
| S1 - 02 | GENERAL NOTES | 03/11/02 |
| S2 - 01 | LOWER LEVEL / FOUNDATION PLAN (BEQ) | 03/11/02 |
| S2 - 02 | GROUND FLOOR FRAMING PLAN (BEQ) | 03/11/02 |
| S2 - 03 | 2ND, 3RD, & 4TH FLOOR FRAMING PLAN (BEQ) | 03/11/02 |
| S2 - 04 | ROOF FRAMING PLAN (BEQ) | 03/11/02 |
| S2 - 05 | LOWER LEVEL / FOUNDATION PLAN (BAND) | 03/11/02 |
| S2 - 06 | GROUND FLOOR FRAMING PLAN (BAND) | 03/11/02 |
| S2 - 07 | SECOND FLOOR FRAMING PLAN (BAND) | 03/11/02 |
| S2 - 08 | LOW ROOF FRAMING PLAN (BAND) | 03/11/02 |
| S2 - 09 | HIGH ROOF FRAMING PLAN (BAND) | 03/11/02 |
| S2 - 10 | MISCELLANEOUS FOUNDATIONS AND GUARD HOUSE | 03/11/02 |
| S3 - 01 | FOUNDATION DETAILS | 03/11/02 |

**ATTACHMENT "B"**

**Marine Barricks Annex and Support Facility**
**8th & I Streets, SE**
**Washington, DC 20374**

Job No. 13033

## DRAWING LOG

| DRAWING NO. | DESCRIPTION | DRAWING DATE |
|---|---|---|
| S3 - 02 | CONCRETE BEAM SCHEDULE AND DETAILS | 03/11/02 |
| S3 - 03 | CONCRETE DETAILS | 03/11/02 |
| S3 - 04 | CMU AND PLANK DETAILS | 03/11/02 |
| S3 - 05 | SLAB ON GRADE DETAILS | 03/11/02 |
| S3 - 06 | TYPICAL STEEL DETAILS | 03/11/02 |
| S3 - 07 | TYPICAL STEEL DETAILS | 03/11/02 |
| S3 - 08 | SECTIONS | 03/11/02 |
| S3 - 09 | SECTIONS | 03/11/02 |
| S3 - 10 | SECTIONS | 03/11/02 |
| S4 - 1 | BRACED FRAM ELEVATIONS | 03/11/02 |
| S4 - 2 | BRACED FRAM DETAILS | 03/11/02 |
| S4 - 3 | BRACED FRAM DETAILS | 03/11/02 |
| S4 - 4 | BRACED FRAM DETAILS | 03/11/02 |
| S4 - 5 | BRACED FRAM DETAILS | 03/11/02 |
| **MECHANICAL** | | |
| M - 1 | PARTIAL LOWER LEVEL PLAN - MECHANICAL | 03/11/02 |
| M - 2 | PARTIAL LOWER LEVEL PLAN - MECHANICAL | 03/11/02 |
| M - 3 | PARTIAL GROUND FLOOR PLAN - MECHANICAL | 03/11/02 |
| M - 4 | PARTIAL GROUND FLOOR PLAN - MECHANICAL | 03/11/02 |
| M - 5 | TYPICAL PARTIAL FLOOR PLAN - MECHANICAL | 03/11/02 |
| M - 6 | PARTIAL SECOND FLOOR PLAN - MECHANICAL | 03/11/02 |
| M - 7 | MECHANICAL ROOM FLOOR PLAN - MECHANICAL | 03/11/02 |
| M - 8 | MECHANICAL ROOM FLOOR PLAN - MECHANICAL | 03/11/02 |
| M - 9 | PARTIAL LOWER LEVEL PLAN - PIPING | 03/11/02 |
| M - 10 | PARTIAL LOWER LEVEL PLAN - PIPING | 03/11/02 |
| M - 11 | PARTIAL GROUND FLOOR PLAN - PIPING | 03/11/02 |
| M - 12 | PARTIAL GROUND FLOOR PLAN - PIPING | 03/11/02 |
| M - 13 | SITE PLAN - MECHANICAL | 03/11/02 |
| M - 14 | ROOF PLAN - MECHANICAL | 03/11/02 |
| M - 15 | SCHEDULES - MECHANICAL | 03/11/02 |
| M - 16 | SCHEDULES - MECHANICAL | 03/11/02 |
| M - 17 | DETAILS - MECHANICAL | 03/11/02 |
| M - 18 | DETAILS - MECHANICAL | 03/11/02 |
| M - 19 | DETAILS, NOTES AND SYMBOLS - MECHANICAL | 03/11/02 |
| M - 20 | SYSTEM POINT LIST - MECHANICAL | 03/11/02 |
| M - 21 | CONTROLS SCHEMATIC - MECHANICAL | 03/11/02 |
| M - 22 | FLOW DIAGRAMS - MECHANICAL | 03/11/02 |
| **PLUMBING** | | |
| PU - 1 | PARTIAL LOWER LEVEL / FOUNDATION PIPING PLAN - PLUMBING | 03/11/02 |
| PU - 2 | PARTIAL LOWER LEVEL / FOUNDATION PIPING PLAN - PLUMBING | 03/11/02 |
| P - 1 | PARTIAL LOWER LEVEL FLOOR PLAN - PLUMBING | 03/11/02 |
| P - 2 | PARTIAL LOWER LEVEL FLOOR PLAN - PLUMBING | 03/11/02 |
| P - 3 | PARTIAL GROUND FLOOR PLAN - PLUMBING | 03/11/02 |
| P - 4 | PARTIAL GROUND FLOOR PLAN - PLUMBING | 03/11/02 |

ATTACHMENT "B"

Marine Barricks Annex and Support Facility
8th & I Streets, SE
Washington, DC 20374

Job No. 13033

## DRAWING LOG

| DRAWING NO. | DESCRIPTION | DRAWING DATE |
|---|---|---|
| P - 5 | TYPICAL PARTIAL FLOOR PLAN - PLUMBING | 03/11/02 |
| P - 6 | PARTIAL SECOND FLOOR PLAN - PLUMBING | 03/11/02 |
| P - 7 | SANITARY RISER DIAGRAMS - PLUMBING | 03/11/02 |
| P - 8 | WATER RISER DIAGRAMS - PLUMBING | 03/11/02 |
| P - 9 | STORM AND GAS RISER DIAGRAMS - PLUMBING | 03/11/02 |
| P - 10 | DETAILS AND TYPICAL MODULE PLANS | 03/11/02 |
| **ELECTRICAL** | | |
| SU - 1 | SITE UTILITY PLAN - ELECTRICAL | 03/11/02 |
| SU - 2 | SITE ELECTRICAL DETAILS | 03/11/02 |
| E - 1 | ELECTRICAL SCHEDULES, NOTES AND SYMBOLS | 03/11/02 |
| E - 2 | PARTIAL LOWER LEVEL FLOOR PLAN - LIGHTING | 03/11/02 |
| E - 3 | PARTIAL LOWER LEVEL FLOOR PLAN - LIGHTING | 03/11/02 |
| E - 4 | PARTIAL GROUND FLOOR PLAN - LIGHTING AND TYPICAL ROOM LAYOUT ELECTRICAL | 03/11/02 |
| E - 5 | PARTIAL GROUND FLOOR PLAN - LIGHTING | 03/11/02 |
| E - 6 | PARTIAL SECOND FLOOR PLAN - LIGHTING | 03/11/02 |
| E - 7 | PARTIAL SECOND FLOOR PLAN - LIGHTING | 03/11/02 |
| E - 8 | 3RD FLOOR PLAN - LIGHTING | 03/11/02 |
| E - 9 | 4TH FLOOR PLAN - LIGHTING | 03/11/02 |
| E - 10 | PARTIAL LOWER LEVEL FLOOR PLAN - POWER | 03/11/02 |
| E - 11 | PARTIAL LOWER LEVEL FLOOR PLAN - POWER | 03/11/02 |
| E - 12 | PARTIAL GROUND FLOOR PLAN - POWER | 03/11/02 |
| E - 13 | PARTIAL GROUND FLOOR PLAN - POWER | 03/11/02 |
| E - 14 | PARTIAL SECOND FLOOR PLAN - POWER | 03/11/02 |
| E - 15 | PARTIAL SECOND FLOOR PLAN - POWER | 03/11/02 |
| E - 16 | 3RD FLOOR PLAN - POWER | 03/11/02 |
| E - 17 | 4TH FLOOR PLAN - POWER | 03/11/02 |
| E - 18 | POWER RISER DIAGRAM AND SCHEDULES | 03/11/02 |
| E - 19 | PANEL SCHEDULES | 03/11/02 |
| E - 20 | PANEL SCHEDULES | 03/11/02 |
| E - 21 | PANEL SCHEDULES | 03/11/02 |
| E - 22 | PANEL SCHEDULES | 03/11/02 |
| E - 23 | PANEL SCHEDULES | 03/11/02 |
| E - 24 | PANEL SCHEDULES | 03/11/02 |
| E - 25 | PANEL SCHEDULES | 03/11/02 |
| E - 26 | PANEL SCHEDULES | 03/11/02 |



**ATTACHMENT C**
**SUBCONTRACTORS REQUISITION FOR PAYMENT**
*13033-010-014-4*

See Attached



# LIMBACH COMPANY
## SUBCONTRACTORS REQUISITION FOR PAYMENT
SEE REVERSE SIDE FOR INSTRUCTIONS

NAME & ADDRESS OF SUBCONTRACTOR

DATE: _____
REQUISITION FOR PAYMENT NO.: _____
LIMBACH SUBCONTRACT NO.: _____

ORIGINAL SUBCONTRACT AMOUNT      $_____    JOB NAME: _____
AMENDMENTS TO SUBCONTRACT        $_____    LOCATION: _____
TOTAL AUTHORIZED SUBCONTRACT AMT. $_____   TYPE OF WORK: _____

VALUE OF WORK COMPLETED BY SUBCONTRACTOR
AS PER DETAIL ON REVERSE SIDE HEREOF:

| | SINCE LAST REPORT | TOTAL TO DATE |
|---|---|---|
| FROM: _____, _____ TO: _____, _____ | $_____ | $_____ |
| LESS RETAINED PERCENTAGE. | $_____ | $_____ |
| NET AMOUNT EARNED THIS REQUISITION | $_____ | $_____ |
| LESS PAYMENTS TO DATE | | $_____ |
| LESS BACK CHARGES | $_____ | $_____ |
| TOTAL PAYMENTS AND BACK CHARGES TO DATE | | $_____ |
| AMOUNT REQUESTED THIS REQUISITION | $_____ | $_____ |

Subcontractor covenants that it will receive the payment paid pursuant to this Requisition and will hold such payment as a trust fund to be applied first to paying the claims of subcontractors, laborers and materialmen arising out of the performance of the Subcontract, before using any part of the total for any other purpose. Subcontractor further waives and releases any and all claims, liens or right of lien it has to the extent of the payment received. Subcontractor further agrees to indemnify and hold harmless the Contractor and the Owner from and against any and all lien claims of its subcontractors and suppliers arising out of the performance of the Subcontract.

To induce the making of the payment hereby requested, the Subcontractor represents that all claims of its subcontractors and suppliers, for which it has received payment from the Contractor, have been paid together with all taxes applicable thereto, except for the following:

| CLAIMANT | NATURE OF CLAIM | AMOUNT |
|---|---|---|
| | | |

Subcontractor _____
By: _____
   AUTHORIZED SIGNATORY    TITLE    DATE

For LIMBACH COMPANY use only

Payment authorized by:                    Checked by:

PROJECT ENGINEER            DATE          INVOICE AUDIT SECTION        DATE

OPERATING DEPT. MANAGER     DATE          BUSINESS DEPT. MANAGER       DATE

FORM   CC60 11/86

17 of 18

| SUB. CONTR. ITEM NO. | DESCRIPTION OF WORK | TOTAL VALUE AT COMPLETION | TO LAST REPORT | SINCE LAST REPORT | TOTAL TO-DATE |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

(IF SPACE IS INSUFFICIENT, ATTACH DETAIL)

INSTRUCTIONS TO SUBCONTRACTOR:

1. Requisitions for payment shall be submitted in triplicate to Contractor's job office and shall be numbered consecutively.
2. Show Subcontractor's name and address as in subcontract.
3. "Original Subcontract Amount" is the Lump Sum, if subcontract is so priced.
4. "Amendments to Subcontract." Show here the total of any extras minus credits covered by Amendments to Subcontract that have been issued. No other extras or credits will be recognized.
5. Amounts earned by Subcontractor "Since Last Report" and "Total to Date" shall be for work performed to end of the period covered by Requisition for Payment, as detailed in the columns above. (Use separate sheet if space is inadequate.)
6. Subcontractor must show any claims against it (or him) arising out of the subcontract that have not been fully paid—give name of claimant, what the claim covers and amount thereof, in spaces provided therefor.



18 oF 18