# ATTACHMENT 1
# (C-I)

C

## SUBCONTRACT PAYMENT BOND

KNOW ALL MEN BY THESE PRESENTS: that PBM Limbach Group, 10110 Senate Drive, Lanham, MD, 20706 as Principal, hereinafter called Subcontractor, and: United States Fidelity and Guaranty Company

__385 Washington Street, St. Paul, MN 55102__

as Surety, hereinafter called Surety, are held and firmly bound unto J.A. Jones/Tompkins Builders, Inc., 1333 H Street N. W., Washington, DC 20005 as Obligee, hereinafter called General Contractor, in the amount of Ten million eight hundred eighteen thousand dollars ($10,818,000.00) for the payment whereof Subcontractor and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Subcontractor has by written agreement dated 8/1/2002 entered into a subcontract with General Contractor for a portion of the work agreed to be performed by General Contractor on a project known as SEC - Station Place, 100 F Street N.E., Washington, DC 20002 which subcontract, as duly modified or amended from time to time, is by reference made a part hereof, and is hereinafter, referred to as the Subcontract.

Case 1:05-cv-01199-RBW    Document 24-3    Filed 12/30/2005    Page 3 of 45

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Subcontractor shall promptly make payment (a) to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Subcontract, and (b) to all other persons, firms, or corporations furnishing such labor or material for which Subcontractor is, and General Contractor may become, obligated to make payment, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

   1) A claimant is defined as one having a direct contract with the Subcontractor for labor or material, or both, used or reasonably required for use in the performance of the Subcontract, labor and material being construed to include, without limiting the generality thereof, that part of water, gas, power, light, heat, oil, gasoline, telephone service, rental of equipment, services, insurance, bond, or supplies directly applicable to the Subcontract.

   2) The above named Subcontractor and Surety hereby jointly and severally agree with the General Contractor that every claimant as herein defined, who has not been paid in full before, the expiration of a period of ninety (90) days after the date on which the last of such claimant's work was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgement for such sum or sums as may be justly due claimant, and have execution thereon. The General Contractor shall not be liable for the payment of any costs or expenses of any such suit.

   3) No suit or action shall be commenced hereunder by any claimant:

       a) After the expiration of one (1) year following the date on which Subcontractor ceased Work on said Subcontract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law; or

       b) Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the Project, or any part thereof, is situated, or in the United States District Court for the district in which the Project, or any part thereof, is situated, and not elsewhere.

   4)  The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder.

Signed and sealed this __17th__ day of __September, 20 02__ .

(should not be earlier than Subcontract date)

Attach valid Corporate Power of Attorney Form.

THIS BOND IS ISSUED SIMUTANEOUSLY WITH PERFORMANCE BOND IN FAVOR OF THE GENERAL CONTRACTOR, CONDITIONED ON THE FULL AND FAITHFUL PERFORMANCE OF THE SUBCONTRACT.

_Collee Clausen_
(Witness)

PBM-Limbach Group
(Principal)                                    (Seal)

_David F. Will_
DAVID F WILL, VP & ASS'N SEC.    (Title)

_Michelle L. DiDolce_
(Witness)

Michelle L. DiDolce

United States Fidelity and Guaranty Company
(Surety)                                    (Seal)

_Pamela L. Nunez_
(Title)

Pamela L. Nunez, Attorney-in-Fact

Form No. 0177-GEN-815 JAN/95

**The St Paul**

# POWER OF ATTORNEY

Seaboard Surety Company
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company
St. Paul Mercury Insurance Company

United States Fidelity and Guaranty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.

Power of Attorney No. 22928

Certificate No. 1348920

KNOW ALL MEN BY THESE PRESENTS: That Seaboard Surety Company is a corporation duly organized under the laws of the State of New York, and that St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company and St. Paul Mercury Insurance Company are corporations duly organized under the laws of the State of Minnesota, and that United States Fidelity and Guaranty Company is a corporation duly organized under the laws of the State of Maryland, and that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc. is a corporation duly organized under the laws of the State of Wisconsin *(herein collectively called the "Companies")*, and that the Companies do hereby make, constitute and appoint

James L. Bly, Christine A. Hartung, Leslie L. Rudat, Pamela L. Nunez, Elena Zunic, Marjorie A. Altemus, Wendy A. Bright and Rosemarie Rodden

of the City of Pittsburgh, State Pennsylvania, their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign its name as surety to, and to execute, seal and acknowledge any and all bonds, undertakings, contracts and other written instruments in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

IN WITNESS WHEREOF, the Companies have caused this instrument to be signed and sealed this 25th day of January 2002

Seaboard Surety Company
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company
St. Paul Mercury Insurance Company

United States Fidelity and Guaranty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.

*WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER*

JOHN F. PHINNEY, Vice President

THOMAS E. HUIBREGTSE, Assistant Secretary

State of Maryland
City of Baltimore

On this 25th day of January 2002, before me, the undersigned officer, personally appeared John F. Phinney and Thomas E. Huibregtse, who acknowledged themselves to be the Vice President and Assistant Secretary, respectively, of Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Company, and Fidelity and Guaranty Insurance Underwriters, Inc.; and that the seals affixed to the foregoing instrument are the corporate seals of said Companies; and that they, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the names of the corporations by themselves as duly authorized officers.

In Witness Whereof, I hereunto set my hand and official seal.

My Commission expires the 13th day of July, 2002.

REBECCA EASLEY-ONOKALA, Notary Public

86203 Rev. 7-2000 Printed in U.S.A.

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Boards of Directors of Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Company, and Fidelity and Guaranty Insurance Underwriters, Inc. on September 2, 1998, which resolutions are now in full force and effect, reading as follows:

**RESOLVED,** that in connection with the fidelity and surety insurance business of the Company, all bonds, undertakings, contracts and other instruments relating to said business may be signed, executed, and acknowledged by persons or entities appointed as Attorney(s)-in-Fact pursuant to a Power of Attorney issued in accordance with these resolutions. Said Power(s) of Attorney for and on behalf of the Company may and shall be executed in the name and on behalf of the Company, either by the Chairman, or the President, or any Vice President, or an Assistant Vice President, jointly with the Secretary or an Assistant Secretary, under their respective designations. The signature of such officers may be engraved, printed or lithographed. The signature of each of the foregoing officers and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Attorney(s)-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and subject to any limitations set forth therein, any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company, and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding upon the Company with respect to any bond or undertaking to which it is validly attached; and

**RESOLVED FURTHER,** that Attorney(s)-in-Fact shall have the power and authority, and, in any case, subject to the terms and limitations of the Power of Attorney issued them, to execute and deliver on behalf of the Company and to attach the seal of the Company to any and all bonds and undertakings, and other writings obligatory in the nature thereof, and any such instrument executed by such Attorney(s)-in-Fact shall be as binding upon the Company as if signed by an Executive Officer and sealed and attested to by the Secretary of the Company.

I, Thomas E. Huibregtse, Assistant Secretary of Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Company, and Fidelity and Guaranty Insurance Underwriters, Inc. do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I hereunto set my hand this  17th  day of  September , 2002

     

Thomas E. Huibregtse, Assistant Secretary

*To verify the authenticity of this Power of Attorney, call 1-800-421-3880 and ask for the Power of Attorney clerk.  Please refer to the Power of Attorney number, the above-named individuals and the details of the bond to which the power is attached.*

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

**D**

Law Offices

WILLIAM M. HUDDLES (MD, DC)
ROGER C. JONES (VA)
KENNETH K. SORTEBERG (MD, DC)
MARK S. DACHILLE (MD)

EDWARD N. HERSHON (MD)
JOHN H. MICHEL (MD, DC)
SCOTT C. HOFER (MD, VA, DC)

HUDDLES & JONES, P.C.
OVERLOOK CENTER, SUITE 304
5457 TWIN KNOLLS ROAD
COLUMBIA, MARYLAND 21045-3259

WWW.CONSTRUCTIONLAW.COM

DC METRO          BALTIMORE METRO
(301) 621-4120    (410) 720-0072
FAX (301) 621-4473    (410) 720-0329 FAX

WRITER'S DIRECT E-MAIL:

jones@hjpc.com

June 1, 2004

United States Fidelity & Guaranty Company
Case 1:05-cv-01199-RBW     Document 24-3     Filed 12/30/2005     Page 7 of 45
385 Washington Street
St. Paul, Minnesota 55102
ATTN: Bond Claims Department

RE:   Payment Bond Claim - $2,515,455.80
      Payment Bond No. SS7088
      Principle: PBM Limbach Group
      Project: SEC - Station Place, 100 F Street, N.E.,
               Washington, D.C. 20002

Gentlemen:

This law firm represents United Sheet Metal, Inc., a subcontractor to PBM Limbach on the above-referenced project. On behalf of our client, and pursuant to the above-referenced payment bond, United Sheet Metal, Inc. herewith makes a claim against said labor and material payment bond in the amount of $2,515,455.80, for unpaid labor, materials and services provided to the project, unpaid contract work and unpaid change work. This claim is itemized as follows:

| | |
|---|---:|
| February 2004 Requisition (net of retainage) - - - - - - - - - (Limbach has received payment for the account of USM) | $ 224,414.00 |
| March 2004 Progress Payment (net of retainage, after retainage reduction) - - - - - - - - - - - - - - - - - - (Limbach has received payment for the account of USM) | $ 309,546.00 |
| April 2004 Progress Payment (net of retainage) - - - - - - - (Limbach has received payment for the account of USM) | $ 262,553.00 |
| May 2004 Progress Payment - - - - - - - - - - - - - - - - - - | $ 13,501.80 |
| Unpaid Approved Changes - - - - - - - - - - - - - - - - - - | $ 362,536.00 |
| Unpaid Pending Changes - - - - - - - - - - - - - - - - - - - | $1,342,905.00 |
| TOTAL | $2,515,455.80 |

Despite the fact that Limbach has received substantial payments for the account of United Sheet Metal's work performed on the project, to date, in breach of its subcontract agreement, Limbach has failed and refused to process said payment to United Sheet Metal. Accordingly, if this payment bond claim is not promptly processed by United States Fidelity & Guaranty Company, United Sheet Metal, Inc. has instructed this office to proceed with all appropriate legal action.

United States Fidelity & Guaranty Company
June 1, 2004
Page 2


We trust you will give this matter your immediate attention.

Sincerely,

RCJ:cmr
cc:    United Sheet Metal, Inc.
       Albert P. Coia, Tompkins Builders, Inc.

E

USM 3918

RECEIVED
JAN 22 2004
UNITED SHEET METAL, INC.



# REFRIGERATION SUPPLY COMPANY, INC.

907 BARRY PLACE, N.W., WASHINGTON, D.C. 20001-2298
Phone: 202-462-2600, Fax 202-462-9213, E-Mail RSCDC@aol.com Homepage @ http://rscdc.com

UNEXECUTED

Fax USM

Case 1:05-cv-01199-RBW    Document 24-3    Filed 12/30/2005    Page 10 of 45

| To: | United Sheet Metal | DATE: | 01/19/04 |
|---|---|---|---|
| | 51 Ritchie Road | JOB: | 6399 |
| | Capitol Heights, MD 20743 | RE: | SEC Station Place |
| | | | Phase 2 |
| | | | 700 Second Street, N.E. |
| Attention: | Rick Moy | | Washington, DC 20001 |

**WE ARE SENDING YOU** _____X_____ Attached        Under separate cover via

| | | |
|---|---|---|
| _____ Shop drawings | _____ Corresponde | __X__ Other |
| _____ Copy of letter | _____ RFI | _____ Resubmittal |
| _____ As-Builts | _____ Samples | _____ Submittal |

| Copies | Date | Description |
|---|---|---|
| 1 | 10/13/03 | Subcontract Agreement - 6399-13509-010-014-4 |
| | | |
| | | |
| | | |

**THESE ARE TRANSMITTED as checked below:**

| | |
|---|---|
| _____ For Approval | _____ Approved as submitted |
| __X__ For Use and Information | _____ Approved as noted |
| __X__ As requested | _____ Returned for corrections |
| _____ For your Signature | _____ Resubmit _____ copies for approval |
| _____ For Proposal | _____ Submit _____ copies for distribution |
| | _____ Return _____ corrected prints |

**REMARKS**

Enclosed for your review, use and information. Should you have any concerns, please contact the

SIGNED: _Mark W Briggs/lexe_

Mark W. Briggs
Senior Project Manager

| COPY TO | w/a | Field Office File |
|---|---|---|
| | w/o | MB/WMIII |
| | w/o | Chuck Ball |

ATTACHMENT A
SCOPE OF WORK
6399-13509-010-014-4

SCOPE OF WORK FOR STATION PLACE PHASE 2

PROVIDE ALL LABOR, MATERIAL AND EQUIPMENT TO PERFORM METAL DUCTS, DUCT ACCESSORIES, AIR TERMINALS, AND DIFFUSERS,REGISTERS,AND GRILLES IN STRICT ACCORDANCE WITH BUT NOT LIMITED TO SECTIONS 15815, 15820, 15840, AND 15855 OF THE SPECIFICATIONS.

Case 1:05-cv-01199-RBW     Document 24-3     Filed 12/30/2005     Page 11 of 45

SCOPE OF WORK BASED ON THE LIST OF DRAWINGS PREPARED BY Kevin Roche, John Dinkeloo and Associate Architects dated 11/02/03, revised 1/30/03 which includes Addendums 1-4 and Addendums 5 & 6.

A.  In addition to all other requirements this Contract includes but is not limited to the following:

1.  All Ductwork
2.  Air Outlets
3.  Duct Sound Lining
4.  Perforated Inner Lining
5.  Duct Leak Testing
6.  Emergency Generator Exhaust
7.  Duct Fire Stopping
8.  Fire Dampers
9.  Smoke Dampers
10. Discharge Plenums For Air Handling Units (housings for AF 1 & 2 are under Trane's PO)
11. Drafting/Coordination
12. Generator flue pipe (not including the muffler to generator)
13. Deduct For OCIP Insurance Program.
14. Wage Rates.

B.  This Contract includes the following to the extent they are applicable to the work included in this Contract.

1.  DIVISION 15 MECHANICAL
1.  Addendums 1,2,3,4, 5, 6

C.  This Contract includes receiving, unloading, distributing, and setting the following items, which will be supplied by others.

1.  Fans w/ Isolation
2.  Smoke Detectors
3.  Automatic Dampers
4.  50/50 Labor on A.H.U.'S
5.  P.R.V'S
6.  Filters
7.  Coils (Duct Mounted)
8.  Other Duct Mounted Devices supplied by others.

D.  This Contract does not include the following:



1. Rigging
2. Premium time
3. Cut, Patch, Paint
4. Air Balancing
5. Belt Guards
6. Demolition
7. Arch. Access Doors and Grilles
8. Duct cleaning
9. Seismic restraints and bracing

Case 1:05-cv-01199-RBW    Document 24-3    Filed 12/30/2005    Page 12 of 45

E.  Prices for the following Alternates and Addendums if they affect you

1. Alternate 1      $ 0
2. Alternate 2      $ 0
3. Alternate 3      $ 0
4. Alternate 4      $ 0
5. Alternate 5      $ 0
6. Alternate 6      $ 0
7. Addendum No. 5   $ 0
8. Addendum No. 6   $ 0
   SEC #1  ADD $100





# REFRIGERATION SUPPLY COMPANY, INC.

907 BARRY PLACE, N.W., WASHINGTON, D.C. 20001-2298
Phone: 202-462-2600, Fax 202-462-8213, E-Mail RSCDC@aol.com  Homepage @ http://rscdc.com

Date:    October 10, 2003        Job:    Station Place II - Bldg. II
                                         United Sheet Metal
                                                              6399-13509-010-014-4

## MEMORANDUM OF UNDERSTANDING

Refrigeration Supply Co., Inc. (R.S.C) has entered into a Contract with Limbach Company LLC to provide Coordination Services as a Minority Sub-Contractor for this job: to supply Mechanical / Miscellaneous Equipment and/or Services and Labor (thru other sub-contractors or vendors to R.S.C.). The administration of these vendors and sub-contractors; purchasing, consultation, billing, progress payment requests, and other coordination services will be provided by R.S.C.

In essence all Vendors and Sub-Contractors of R.S.C. are responsible directly to Limbach Company LLC to perform as per specifications and the Contracts negotiated between Limbach Company LLC and these Firms.

R.S.C. is to be held Harmless for any Non-Performance of these Contracts or any of the Terms and Conditions as outlined in the Job Specifications.  R.S.C. is also to be held Harmless to any claims, charges, or Attorney fees arising out of this Contract Coordination fee @    1.5   % of Participation Amount.  -  Approximately    $1,070,000.00    plus change orders.

---

*Minority Contractor*
Refrigeration Supply Co., Inc.

Date

*Contractor*
Limbach Company LLC

Date

---

RSC provides: Parts, equipment and supplies for Heating, Air conditioning, Refrigeration and Cooling
RSC offers seminars on CFC certification for HVAC and Auto; Total Refrigerant Management;
Integrated Supply Management, Instruments repair, Trouble shooting, Rental equipment
Video rental (HVAC), printing (stationery, invoices, business cards), bulk mail services
RSC is a woman-owned minority and section 8(a) certified company; EC/EDI capable
Store Hours: 7:30 am - 4:30 pm (M-F); 8:00 am - 12 Noon (Sat)
Accepts: Visa, MasterCard, Discover, American Express







# REFRIGERATION SUPPLY COMPANY, INC.
907 BARRY PLACE, N.W., WASHINGTON, D.C. 20001-2298
Phone: 202-462-2500, Fax 202-462-9213, E-Mail RSCDC@aol.com  Homepage @ http://rscdc.com

## SUBCONTRACTORS REQUISITION FOR PAYMENT
SEE SECOND PAGE FOR INSTRUCTIONS

NAME AND ADDRESS OF SUBCONTRACTOR

DATE: _____

REQUISITION FOR
PAYMENT NO.: _____

SUBCONTRACT NO.: _____

| | | | |
|---|---|---|---|
| ORIGINAL SUBCONTRACT AMOUNT | $ _____ | JOB NAME: | _____ |
| AMENDMENTS TO SUBCONTRACT | $ _____ | LOCATION: | _____ |
| TOTAL AUTHORIZED SUBCONTRACT AMOUNT | $ _____ | TYPE OF WORK: | _____ |

VALUE OF WORK COMPLETED BY SUBCONTRACTOR AS PER
DETAIL ON SECOND SHEET HEREOF:

| | | SINCE LAST REPORT | | TOTAL TO DATE |
|---|---|---|---|---|
| FROM: _____ TO: _____ | | $ _____ | | $ _____ |
| LESS RETAINED PERCENTAGE | | $ _____ | | $ _____ |
| NET AMOUNT EARNED THIS REQUISITION | | $ _____ | | $ _____ |
| LESS PAYMENTS TO DATE | | | $ _____ | |
| LESS BACKCHARGES | | $ _____ | $ _____ | |
| TOTAL PAYMENTS AND BACKCHARGES TO DATE | | | | $ _____ |
| AMOUNT REQUESTED THIS REQUISITION | | $ _____ | | $ _____ |

Subcontractor covenants that it will receive the payment paid pursuant to this Requisition and will hold such payment as a trust fund to be applied first to paying the claims of subcontractors, laborers and materialmen arising out of the performance of the Subcontract, before using any part of the total for any other purpose. Subcontractor further waives and releases any and all claims, liens or right of lien it has to the extent of the payment received. Subcontractor further agrees to indemnify and hold harmless the Contractor and the Owner from and against any and all lien claims of its subcontractors and suppliers arising out of the performance of the Subcontract.

To induce the making of the payment hereby requested, the Subcontractor represents that all claims of its subcontractors and suppliers, for which it has received payment from the Contractor, have been paid together with all taxes applicable thereto, except for the following:

| CLAIMANT | NATURE OF CLAIM | AMOUNT |
|---|---|---|
| | | |
| | | |
| | | |

Subcontractor _____

By: _____

| AUTHORIZED SIGNATORY | TITLE | DATE |
|---|---|---|

FOR RSG USE ONLY

Payment Authorized By:

Project Engineer _____ Date _____

Operating Dept. Manager _____ Date _____

Checked By:

Invoice Audit Section _____ Date _____

Business Dept. Manager _____ Date _____

FORM CC50 11/88

| Subcontractor Item No. | Description of Work | Total Value at Completion | To Last Report | Since Last Report | Total To Date |
|---|---|---|---|---|---|
| | | | | | |

Case 1:05-cv-01199-RBW     Document 24-3     Filed 12/30/2005     Page 15 of 45

(IF SPACE IS INSUFFICIENT, ATTACH DETAIL)

INSTRUCTIONS TO SUBCONTRACTOR:

1. Requisitions for payment shall be submitted in triplicate to Contractor's job office and shall be numbered consecutively.
2. Show Subcontractor's name and address as in subcontract.
3. "Original Subcontract Amount" is the Lump Sum, if subcontract is so priced.
4. "Amendments to Subcontract." Show here the total of any extras minus credits covered by Amendments to Subcontract that have been issued. No other extras or credits will be recognized.
5. Amounts earned by Subcontractor "Since Last Report" and "Total to Date" shall be for work performed to end of the period covered by Requisition for Payment, as detailed in the columns above. (Use separate sheet if space is inadequate.)
6. Subcontractor must show any claims against it (or him) arising out of the subcontract that have not been fully paid -- give name of claimant, what the claim covers and amount thereof, in spaces provided therefore.



RIDER TO SUBCONTRACT AGREEMENT BETWEEN
THE LIMBACH COMPANY, LLC and UNITED SHEET METAL, INC.

The provisions of this Rider amend the terms and conditions of Subcontract _____6399-13509-010-014-4_____
for the _____SEC-Station Place, Building 2, Washington, DC 20002_____ Project ("Agreement") between
Limbach Company, LLC ("Contractor") and United Sheet Metal, Inc. ("Subcontractor"). To the extent that
there are any conflicts or ambiguities between the provisions of this Rider and the terms and conditions of the
Subcontract Agreement, the provisions of this Rider shall prevail.

—

## ARTICLE 4 - TIME OF COMPLETION AND SCHEDULE

Second Paragraph
  Line 3: *Delete* "because of any" and in their place, *insert* "to the extent".
  End of sentence: *Add* "is caused by the Subcontractor".

## ARTICLE 6 - TERMINATION FOR DEFAULT
  Line 4: After "seventy-two (72) hours", *insert* ", if Subcontractor fails to commence and continue
    correction of such default or neglect with diligence and promptness".
  Line 7: *Insert* "reasonable" between "such" and "event".

## ARTICLE 9 - INDEMNIFICATION
  Line 3: *Insert* "to the extent caused by the negligent acts or omissions of the Subcontractor and"
    between "fees" and "arising".

## ARTICLE 15 - REMOVAL OF RUBBISH

Second Paragraph
  Line 3: *Insert* "Upon further notice to Subcontractor," before "Subcontractor shall".

## ARTICLE 20 - MAINTENANCE AND OPERATING INSTRUCTIONS

Second Paragraph
  *Delete* in its entirety.

IN WITNESS WHEREOF, and intending to be legally bound, the parties have executed this Rider by their
duly authorized representatives this _____Second_____ day of _____November_____, 2003.

LIMBACH COMPANY, LLC
(Contractor)

UNITED SHEET METAL, INC.
(Subcontractor)

By: _____

By: _____

Title: _____

Title: _____
    JIMMIE G. ROBERTS
      CEO

## RIDER TO SUBCONTRACT AGREEMENT BETWEEN
## REFRIGERATION SUPPLY CO., INC. and UNITED SHEET METAL, INC.

The provisions of this Rider amend the terms and conditions of Subcontract _____ 6399-13509-010-014-4 _____ for the _____ SEC-Station Place, Building 2, Washington, DC 20002 _____ Project ("Agreement") between Refrigeration Supply Co., Inc. ("Contractor") and United Sheet Metal, Inc. ("Subcontractor"). To the extent that there are any conflicts or ambiguities between the provisions of this Rider and the terms and conditions of the Subcontract Agreement, the provisions of this Rider shall prevail.

Case 1:05-cv-01199-RBW    Document 24-3    Filed 12/30/2005    Page 17 of 45

## ARTICLE 4 – TIME OF COMPLETION AND SCHEDULE

**Second Paragraph**
    Line 3: *Delete* "because of any" and in their place, *insert* "to the extent".
    End of sentence: *Add* "is caused by the Subcontractor".

## ARTICLE 6 – TERMINATION FOR DEFAULT
    Line 4: After "seventy-two (72) hours", *insert* ",if Subcontractor fails to commence and continue correction of such default or neglect with diligence and promptness".
    Line 7: *Insert* "reasonable" between "such" and "event".

## ARTICLE 9 – INDEMNIFICATION
    Line 3: *Insert* "to the extent caused by the negligent acts or omissions of the Subcontractor and" between "fees" and "arising".

## ARTICLE 15 – REMOVAL OF RUBBISH

**Second Paragraph**
    Line 3: *Insert* "Upon further notice to Subcontractor," before "Subcontractor shall".

## ARTICLE 20 – MAINTENANCE AND OPERATING INSTRUCTIONS

**Second Paragraph**
    *Delete* in its entirety.

IN WITNESS WHEREOF, and intending to be legally bound, the parties have executed this Rider by their duly authorized representatives this __Second__ day of _____ November _____ 2003.

**REFRIGERATION SUPPLY CO., INC.**
(Contractor)

By:_____

Title:_____

**UNITED SHEET METAL, INC.**
(Subcontractor)

By:_____

            **JIMMIE G. ROBERTS**
               CEO
Title:_____

USm 3918

3918-Contract File



# REFRIGERATION SUPPLY COMPANY, INC.

907 BARRY PLACE, N.W., WASHINGTON, D.C. 20001-2298

Phone: 202-462-2600, Fax 202-462-9213, E-Mail RSCDC@aol.com Homepage @ http://rscdc.com

RECEIVED
JAN 2 1 2004
UNITED SHEET METAL, INC.

## SUBCONTRACT AGREEMENT

Case 1:05-cv-01199-RBW    Document 24-3    Filed 12/30/2005    Page 18 of 45

| PROJECT # | PHASE | TRADE | CNTR | UNIT | TYPE | SUBCONTRACT # |
|---|---|---|---|---|---|---|
| 13509 | 01 | 0 | 0 | 14 | 4 | 6399-13509-010-014-4 |

| BRANCH NO. | VENDOR NO. | SUBCONTRACTOR |
|---|---|---|
| 34 | 001496 | United Sheet Metal<br>51 Ritchie Road<br>Capitol Heights, MD 20743 Attn: Joe Polvinale III<br>Phone: (301) 350-4200  Fax # (301) 336-0944 |

THIS SUBCONTRACT is entered into this **8th** day of **October**, **2003** by and between **Refrigeration Supply Company** a District of Columbia Corporation (hereinafter "Contractor") and **United Sheet Metal**, a Maryland Corporation (hereinafter "Subcontractor").

WHEREAS, Contractor has entered into a certain contract (hereinafter "Principal Contract"), dated **March 30, 2003**, with **J. A. Jones / Tompkins Builders** (hereinafter "Principal"), to execute construction work for Principal on **SEC – Station Place, Building 2**, at **600 Second Street, NE, Washington, DC 20002** (hereinafter "Project") for **Louis Dreyfus Property Group** (hereinafter "Owner"), and this Subcontract is for the performance by Subcontractor of a portion of such work.

The parties hereto mutually agree as follows:

## ARTICLE 1 – SCOPE OF WORK (See Attachment "A")

Subcontractor shall furnish, in strict accordance with the Contract Documents, all labor, materials, tools, machinery, equipment, hoisting, storage facilities, utilities, supplies and services and do all things necessary for the complete performance of the work described in Article 21 (hereinafter the "Work").

Subcontractor shall provide, during the entire construction of the Project, a jobsite superintendent with full authority to act on behalf of Subcontractor and such foremen and other supervisory personnel to assure compliance with established schedules, quality standards for the Work and other requirements of this Subcontract.

## ARTICLE 2 - SUBCONTRACT PRICE AND PAYMENT

The Subcontract Price to be paid by Contractor to Subcontractor shall be the amount stated in Article 21, which includes any and all sales, use and other taxes, fees, permits and licenses arising out of the Work, subject to additions and/or deductions as provided herein.

On a monthly date (the 15th of each month unless otherwise indicated) and in the form specified by Contractor, Subcontractor shall submit to Contractor a requisition for payment showing the proportionate value of the Work performed through a current monthly date specified by Contractor, less a retention of Ten percent (10%) of such value and less all prior requisitions by Subcontractor. No payment shall be made to Subcontractor unless the requisition is submitted in the form specified by Contractor. Contractor shall pay Subcontractor, within a reasonable period of time after payment is received by Contractor, the approved value of Subcontractor's Work covered by each requisition, less the retention and all prior requisitions as provided above and less all other amounts which Contractor is entitled to retain or deduct in accordance with this Subcontract. Subcontractor acknowledges and agrees that receipt of payment by Contractor from Principal is an express condition precedent to Subcontractor's right to receive any payments from Contractor for or arising out of the Work performed pursuant to this Subcontract. If for any reason whatsoever Contractor does not receive payment from Principal, Contractor shall have no obligation to make payment to Subcontractor.

Before the first requisition for payment, Subcontractor shall submit to Contractor a schedule of values for the entire Subcontract allocated to various portions of the work, prepared in such form, to the level of detail, and supported by such data to substantiate its accuracy as Principal, Architect or Owner may require. Overhead and profit shall be distributed into each item of the Work. Contractor and/or Principal shall have the right to require Subcontractor to alter the value or add/delete categories listed on the schedule of values at any time if (a) the schedule of values appears to be incorrect or unbalanced, (b) a revision of the segregation of values is required due to Subcontractor revising the sequence of construction or assembly of building components which in turn invalidates the schedule of values, or (c) Change Orders are issued to Subcontractor. The sum of the parts of the schedule of values shall total to the Subcontract Sum. This schedule, unless objected to by Contractor, Principal, Architect or Owner, shall be used as a basis for reviewing Subcontractor's requisition for payment. The minimum level of breakdown and order on the requisition for payment will be (a) bond costs, if applicable. (b) general conditions line item(s), (c) major portions of the Work broken down into labor and material line items, (d) mobilization and demobilization, (e) warranties and manuals, and (f) a listing of approved and executed Change Orders to the Subcontract, if any, in sequential order.

Case 1:05-cv-01199-RBW    Document 20-6    Filed 12/30/2005    Page 19 of 45

Subcontractor will be entitled to payment for stored materials off site only if and to the extent Contractor is entitled to payment for stored materials off site. Subcontractor is required to correlate the documentation for payment of stored materials requested in the requisition for payment against the agreed-upon breakdown of the schedule of values. Contractor reserves the right to not process the requisition for payment if this correlation has not been submitted in conjunction with the requisition.

Contractor may, in its sole discretion, make payments to Subcontractor at earlier times or in larger amounts than provided herein. Contractor may also, in its sole discretion, make payments directly to sub-subcontractors, labor and/or material suppliers of Subcontractor to satisfy claims and/or liens, by joint check or otherwise, and deduct the amount of any such payments from amounts due or to become due to Subcontractor under this Subcontract. At the time of presenting each monthly requisition, Subcontractor shall furnish Contractor with evidence satisfactory to Contractor that all labor, materials, and other costs for which Subcontractor received payment from Contractor have been paid in full.

Contractor shall be entitled to withhold payments for (a) equitable value of changes made in Subcontractor's Work that reduces its Subcontract price, (b) amounts withheld by Owner or Principal applicable to Subcontractor's Work, (c) damages incurred through delay by Subcontractor, and (d) damages incurred to remedy a default by Subcontractor. If the amounts for such withholding are in excess of the payments due Subcontractor, then Subcontractor shall promptly pay the total amount of any such excess to Contractor. This remedy shall be in addition to any other remedies provided for elsewhere in this Subcontract or existing at law or in equity.

Final payment shall be made to Subcontractor within a reasonable period of time after the last of the following events to occur: (a) final acceptance of all Work by Contractor, Principal and Owner, (b) receipt of evidence satisfactory to Contractor that all costs incurred by Subcontractor in performance of the Work have been paid in full, (c) execution and delivery by Subcontractor of a general release and final waiver of lien, in the form specified by Contractor, and (d) receipt of payment in full by Contractor from Principal, it being expressly understood by Subcontractor that receipt of payment by Contractor from Principal is a condition precedent to Subcontractor's right to receive any payment from Contractor under this Subcontract.

No payment made under this Subcontract shall constitute evidence of partial or complete performance of this Subcontract or acceptance of the Work, nor shall entrance by or use of all or any part of the Work by Contractor, Principal or Owner constitute acceptance of the Work.

## ARTICLE 3 - CONTRACT DOCUMENTS

The Principal Contract, and all drawings, specifications, addenda, general, special and supplementary conditions, and other documents forming or by reference made a part of the Principal Contract, are hereby made a part of this Subcontract and are herein called the "Contract Documents." The Contract Documents are available for review by Subcontractor at the offices of Contractor and/or Principal upon request. Subcontractor represents that it has examined the Contract Documents, has investigated the Work and is familiar with all conditions of the Project affecting the Work, has verified all information furnished by Contractor, and is fully qualified to perform the Work.



Subcontractor shall be bound by, and expressly assumes for the benefit of Contractor, all obligations and liabilities which the Contract Documents impose upon Contractor in connection with the Work. Contractor shall have the same rights and remedies against Subcontractor as Principal has against Contractor under the Contract Documents.

## ARTICLE 4 - TIME OF COMPLETION AND SCHEDULE

Time is of the essence in this Subcontract. Subcontractor shall comply with the schedules and completion dates set forth in the Contract Documents, as revised during construction, and with all schedules issued by Principal or Contractor. Subcontractor shall secure all necessary information and approvals, and plan, purchase, fabricate and do all things necessary to comply with the schedules and completion dates. Subcontractor shall coordinate its Work under the Subcontract Case 1:05-cv-01199-RBW    Document 20-6    Filed 12/30/2005    Page 20 of 45 on the Project in order to comply with the schedules and completion dates.

If Subcontractor delays the material progress of the Project, Subcontractor shall indemnify and hold harmless Contractor, Principal and Owner from liability for any and all damages, costs and expenses (including attorneys' fees) incurred by Contractor, Principal, and Owner because of any such delay.

When directed by Contractor, Subcontractor shall increase manpower, work additional hours and shifts, work weekends and holidays, and expedite equipment and material deliveries to the extent necessary, in Contractor's opinion, to comply with Subcontractor's obligations under this Article, at no cost to Contractor.

If Subcontractor shall be delayed in the performance of the Work by any cause beyond its control or not within its reasonable control to avoid, Subcontractor shall promptly notify Contractor in writing. The time of completion of the Work under the Subcontract shall be extended only to the extent that the time of completion is extended by Principal or Owner under the Contract Documents. An extension of time is the sole and exclusive remedy of Subcontractor for any delay to the performance of its Work, except to the extent that Contractor actually receives additional compensation on behalf of Subcontractor from Principal or Owner due to delay or suspension of the Work.

## ARTICLE 5 - CHANGES IN WORK

Subcontractor shall make changes in the Work as directed by written order from Contractor. Subcontractor shall not make changes in the Work unless so directed or approved in writing by Contractor prior to beginning any change to the Work.

If any change causes an increase or decrease in Subcontractor's cost or time required for performance of the Work, an equitable adjustment shall be made to the Subcontract Price and/or time of completion and this Subcontract modified in writing. Any request by Subcontractor for an adjustment in the Subcontract Price or time must be submitted to Contractor in itemized written form within seven (7) calendar days from date of receipt by Subcontractor of notification of a change. Pending a determination of the adjustment, if any, Subcontractor shall proceed with the Work as changed and maintain daily records during the performance of the change indicating the name of each employee, number of hours worked, the equipment and materials used, and a description of the work performed each day in connection with the change.

In the event of changes in the Work ordered by Principal or Owner, or other conduct of the Principal and/or Owner which increase Subcontractor's cost or time of performance, Contractor shall not be obligated to pay Subcontractor a greater sum than the Contractor is paid by the Principal and/or Owner for any such change or conduct, less reasonable overhead and profit to Contractor. In the event of deletions in the Work ordered by Principal or Owner, the amount of the deduction imposed upon Contractor by the Contract Documents for such deletion shall be deducted from the amount of the Subcontract Price.

If Contractor receives a claim from Subcontractor due to changes ordered by Principal or Owner or due to other conduct of the Principal and/or Owner, Contractor will submit the claim to Principal and/or Owner for processing in accordance with the Contract Documents. The submission of a claim to Principal and Owner on behalf of Subcontractor shall not be deemed an admission by Contractor, nor raise any presumption as to the validity or correctness of Subcontractor's claim. Subcontractor shall bear all expenses and burden of pursuing and proving its claim.



## ARTICLE 6 - TERMINATION FOR DEFAULT

In the event Subcontractor should become bankrupt, insolvent, fail to pay for materials or services for which it has received payment from Contractor, make an assignment or arrangement for creditors, refuse or neglect to prosecute the Work properly and diligently, or fail to perform any of the provisions of this Subcontract, Contractor shall notify Subcontractor in writing of the default(s) and, after seventy-two (72) hours Contractor may at its option cease making any further payment to Subcontractor, terminate Subcontractor's right to proceed with all or any part of the Work, take possession thereof and of all materials, equipment and supplies, and complete the terminated Work by such means as Contractor sees fit, at the cost and expense of Subcontractor. In any such event, Contractor may recover from Subcontractor the total amount of any loss or damage incurred as a result of such default, including reasonable attorneys' fees, and deduct any of the foregoing amounts from payments otherwise due or to become due to Subcontractor. If the damages incurred as a result of such default are in excess of the payments due Subcontractor, then Subcontractor or its surety shall promptly pay the total amount of any such excess to Contractor. These remedies for default are in addition to any other rights or remedies of Contractor elsewhere in this Subcontract or existing at law or in equity.

Case 1:05-cv-01199-RBW   Document 24-3   Filed 12/30/2005   Page 21 of 45

## ARTICLE 7 - SUBLETTING AND ASSIGNMENT

Subcontractor shall not assign this Subcontract, or sublet or subcontract any part of the Work, or assign the right to receive any payments due or to become due hereunder without prior written consent of Contractor, and Contractor's consent to any such assignment or subcontract shall not relieve Subcontractor of any liability for the full and complete performance of this Subcontract.

## ARTICLE 8 - INSURANCE

Subcontractor shall procure and maintain all insurance coverage required by the Contract Documents, but not less than the following: (1) insurance as required under the applicable 'Workers' Compensation and Occupational Safety and Health Acts; (2) Comprehensive General Liability Insurance, including contractual liability coverage of the indemnification clauses stated herein, with limits not less than $1,000,000 per occurrence; (3) Contractor's Protective Liability Insurance with limits not less than $500,000, if any of the Work is to be sublet; (4) Completed Operations coverage; (5) Automobile Liability Insurance with limits not less than $500,000; and (6) Installation Floater Property Insurance with limits not less than $500,000. General Liability and Automobile Liability Insurance limits may be attained by individual policies or by a combination of underlying policies with umbrella and/or excess liability policies.

Contractor, Principal and Owner shall be named as additional insured under the policies of insurance required by the Contract Documents (except for Workers' Compensation) and shall be afforded the same coverage under the policies as Subcontractor. Certificates of such insurance shall be filed with Contractor prior to the commencement of any Work by Subcontractor, shall be subject to approval of Contractor, and shall provide for thirty (30) days' written notice to Contractor of changes in or cancellation of any such insurance. No payment under this Subcontract shall be made to Subcontractor until the required certificates of insurance have been filed with Contractor.

The General Liability Insurance must be primary and not excess over and not contributory with any other insurance of Principal or Contractor. Subcontractor and its insurance carriers waive subrogation rights against Contractor, Principal, Owner and their insurance carriers for losses covered by Subcontractor's insurance, and will include this same requirement in contracts with its subcontractors and suppliers. If the policies of insurance referred to in this paragraph require an endorsement to provide for continued coverage where there is a waiver of subrogation, Subcontractor will cause them to be so endorsed.

## ARTICLE 9 - INDEMNIFICATION

Subcontractor shall defend, indemnify and save harmless the Owner, Principal, and Contractor, and their officers and employees, from all claims, loss, damage, injury, liability, costs and expenses of whatsoever kind or nature (including attorneys' fees) arising out of this Subcontract or attributable to the Work performed under this Subcontract, except to the extent that such claim, loss, damage, injury or liability is caused by the sole negligence of a party indemnified hereunder. Subcontractor's indemnity obligations under this Subcontract shall not be limited by the provisions of any Workers' Compensation or similar acts. In the event that the indemnification required under this Article is prohibited by law, Subcontractor shall indemnify Contractor to the fullest extent permitted by law.



## ARTICLE 10 - SAFETY

Subcontractor is solely responsible for the health and safety of its employees, agents, subcontractors, and other persons on and adjacent to the Project site. Subcontractor shall take all necessary and prudent safety precautions with respect to its Work and shall comply with ALL safety programs and measures initiated by Contractor, Principal, and Owner and with all applicable laws, ordinances, rules, regulations and orders of any public authority for the safety of persons or property, including, but not limited to, OSHA Standard 1926.59 for a Hazardous Communication Standard Policy. Subcontractor and all of its subcontractors shall submit Material Safety Data Sheets ("MSDS") and Hazardous Substance Survey Forms ("HSSF") for all materials for which the MSDS and the HSSF are required by OSHA prior to bringing such materials onto the Project site. Subcontractor agrees to cooperate with Contractor, Principal, and Owner over a Substance Abuse Program instituted for the Project, and will provide a copy of its own Substance Abuse Policy, if any, to Contractor and Principal prior to commencement of Work.

Subcontractor shall assign a competent safety representative (a) who is certified both in first aid and CPR, (b) who is capable of identifying existing and predictable hazards in the surroundings or working conditions which are unsanitary, hazardous, or dangerous to employees and the public, and (c) who has authorization to take prompt corrective measures to insure the safety of Subcontractor's work areas. Subcontractor's safety representative shall submit Subcontractor's safety plan to Contractor for review prior to the commencement of any work activities on the Project site and shall report within one (1) day to Contractor any injury to any of Subcontractor's employees at the site and all precautions taken to eliminate the cause of each accident.

As an expert in Subcontractor's field of work, Subcontractor's safety representative has sole control over all requirements for doing the work safely, and Contractor is not responsible in any manner for the safety of Subcontractor's Work. If Subcontractor fails to correct unsafe procedures, acts, or conditions within twenty-four (24) hours of notification by Contractor or any public authority, however, Contractor may (but has no contractual obligation to do so) correct the unsafe practice and backcharge the Subcontractor for these costs plus ten percent (10%) for overhead, ten percent (10%) for profit, and twenty percent (20%) for a "safety premium." This specifically includes but is not limited to the cleanup of Subcontractor's construction debris and the replacement of standard railings or barricades removed by Subcontractor's employees. Repeated failures to correct unsafe practices will result in default and termination of this Subcontract pursuant to Article 6 of this Subcontract and without any further notice to Subcontractor. In the event Contractor receives a penalty from OSHA as a result of a violation of OSHA Standards by Subcontractor and Contractor is cited under the multi-employer work site rule, Subcontractor agrees to protect, defend, indemnify and hold harmless Contractor from the imposition of any fines and/or penalties by OSHA.

## ARTICLE 11 - GUARANTEES

Subcontractor shall protect the Work until final acceptance thereof by Principal and Owner, and shall warrant and guarantee for a period of one (1) year after such acceptance, or for such longer period thereafter as may be provided in the Contract Documents, that the Work shall be free from defects in workmanship and materials, and shall develop the ratings, capacities and characteristics specified in the Contract Documents.

Without limiting the foregoing, Subcontractor agrees to assign to Contractor and/or Owner any and all guarantees or warranties of manufacturers or suppliers of equipment and material under this Subcontract. Subcontractor shall also execute such separate guarantees directly for the benefit of Owner as may be required by the Contract Documents.

Subcontractor shall remove, replace and/or repair at its own expense and at the convenience of Owner, Principal and Contractor any non-conforming or defective Work or Work which fails to comply with the Contract Documents. Subcontractor shall also pay all costs necessary to remove, replace and/or repair any other work or property which may be damaged in removing, replacing or repairing the Work, and shall reimburse Contractor for any loss or damage sustained by Contractor arising out of the non-conforming or defective Work.





### ARTICLE 12 - PERSONNEL

Subcontractor shall employ such labor as will ensure that the work of Contractor, Principal or any other contractor or subcontractor on the Project will not be interrupted, delayed or hindered by a labor controversy or dispute of any kind. Failure to do so shall constitute a default by Subcontractor under Article 6 of this Subcontract. Labor controversies and disputes between Subcontractor, its employees and/or any other contractors or subcontractors on the Project shall not be a basis for an extension of time under the Subcontract or otherwise relieve Subcontractor of its obligations under the Subcontract.

### ARTICLE 13 - PAYMENT AND PERFORMANCE BONDS

Case 1:05-cv-01199-RBW    Document 24-3    Filed 12/30/2005    Page 23 of 45

Contractor may require Subcontractor to provide payment and performance bonds at any time, each in the full amount of the Subcontract Price, in a form and with sureties acceptable to Contractor, dated as of the date of this Subcontract. Failure by Subcontractor to furnish such bonds within five (5) days after written notice from Contractor shall, at the option of Contractor and without further notice, constitute a default under Article 6 of this Subcontract. No payment under this Subcontract shall be made to Subcontractor until Subcontractor has furnished the bonds requested by Contractor.

### ARTICLE 14 - PATENTS

Subcontractor shall defend, indemnify and save harmless Contractor, Principal and Owner against liability for all damages, loss and expenses, including attorneys' fees, sustained by reason of any patent infringement claims arising out of the Work.

### ARTICLE 15 - REMOVAL OF RUBBISH

Subcontractor shall keep the Project free at all times from accumulation of scrap, rubbish and debris resulting from the Work. At the time of completion, Subcontractor shall clean the Work in the manner required by the Contract Documents. Subcontractor shall remove from work performed by others at the Project all dirt and other matter resulting from execution of the Work.

If Contractor notifies Subcontractor that it is delinquent in its obligations of cleanup or rubbish removal and Subcontractor fails to remedy such delinquency in a timely manner, Contractor and/or Principal have the right to take whatever steps necessary to remedy such delinquency. Subcontractor shall then be backcharged for all costs of such remedy.

### ARTICLE 16 - USE OF CONTRACTOR'S TOOLS AND EQUIPMENT

Whenever Subcontractor shall use any hoist, scaffold, derrick, material, tools or equipment owned and/or furnished by Owner, Principal or Contractor, Subcontractor shall satisfy itself as to the safety and legal use thereof to the same extent as if it were owned by and in the sole control of Subcontractor. Subcontractor assumes full responsibility for the use and safety of any borrowed hoist, scaffold, derrick, materials, tools and equipment, and hereby agrees to defend, indemnify and hold harmless Owner, Principal and Contractor for any claims and damages caused by or arising out of the use thereof by Subcontractor, its agents, employees and sub-subcontractors.

### ARTICLE 17 - INTERPRETATION

Interpretation of the Contract Documents is governed by the provisions of the Contract Documents, and Contractor shall not be responsible to Subcontractor for interpretations of the Contract Documents by employees or agents of Contractor, unless the interpretation is expressly provided in writing to Subcontractor by Contractor's authorized representative.

Should a dispute arise as to the scope of work required by Subcontractor under the Contract Documents, Subcontractor shall perform all disputed work promptly upon written direction of an authorized representative of Contractor. Subcontractor shall submit a fully documented and itemized claim for any adjustment to the Subcontract Price and/or time to Contractor within seven (7) calendar days from date of receipt of such written direction, and such claim shall be processed and disposed of in accordance with Article 5 as though it were a change in the Work.



## ARTICLE 18 - DISPUTES

In the event of any dispute between Contractor and Subcontractor due to any conduct of Owner or Principal or involving the Contract Documents, Subcontractor shall be bound to any disputes procedure to which Contractor is bound under the Contract Documents and to any decision rendered thereunder, provided that Subcontractor is given notice that such dispute procedure has been demanded by any party, whether or not Subcontractor elects to participate in such procedure. Subcontractor shall bear the burden of proving its claims and refuting claims made against it through Contractor by Owner or Principal and shall bear all of its costs, expenses and attorneys' fees in connection therewith.

Any dispute between Contractor and Subcontractor arising out of this Subcontract or breach thereof, but not involving the Owner, Principal or the Contract Documents may, at the option of Contractor, be submitted to arbitration in accordance with the Construction Industry Rules of the American Arbitration Association. Any arbitration proceeding instituted under this paragraph or under any disputes procedure in the Contract Documents may be consolidated at the option of Contractor with any other arbitration proceeding then or thereafter pending between Contractor and any other person if the respective arbitrations arise out of common questions of fact or law. The decision of the arbitrator(s) shall be final and binding upon the parties and a judgment upon any award rendered may be entered in any court of competent jurisdiction.

## ARTICLE 19 - SHOP DRAWINGS & CATALOGS (SUBMITTALS)

Timely and accurate submittal of shop drawings, other submittal documents, and as-built record drawings is of the essence of this Subcontract. Subcontractor shall submit in the number of copies and format as directed by Contractor all shop drawings, calculations, data, catalogue cuts, drawings, equipment lists and other submittal documents required by the Contract Documents not later than forty-five (45) days prior to the scheduled commencement of the relevant portion of the Work or such earlier date as requested by Contractor. Such submittal documents shall clearly identify the Project Name, the Contractor, the Subcontractor, the manufacturer of the submitted product, the contract drawings and specifications to which the submittal is applicable, the specific materials, equipment and arrangement proposed, and relevant performance data. Subcontractor shall cooperate with Contractor in providing the information necessary to produce a submittal register of all items requiring submittals. This submittal register shall include (a) specification section number, (b) description, (c) submittal type (sample, shop drawing, warranty, etc.), (d) scheduled date for initial submittal, and (e) number of days required for fabrication and delivery once an approved submittal is returned to Contractor.

Submittal documents shall comply with the Contract Documents except for deviations approved in writing by Owner, Principal and Contractor. Each submittal shall be accompanied by a transmittal which explicitly states that there are no deviations from the requirements of the Contract Documents, except those deviations for which approval is requested. In the event approval of a deviation is not granted, Subcontractor shall promptly correct the submittal documents and proceed as required by the Contract Documents so as to not delay performance of the Work.

Subcontractor shall furnish Contractor with detailed as-built/record drawings which fully describe the actual installation performed under this Subcontract. As-built/record drawings shall be in the format and in the level of detail as required by Owner, Principal and Contractor.

## ARTICLE 20 - MAINTENANCE AND OPERATING INSTRUCTIONS

Subcontractor shall submit maintenance and operating instructions in the number and within the time required by the Contract Documents. Such instructions shall include all equipment, materials and systems provided under the Subcontract, and shall include an index, the name and address of Subcontractor and each manufacturer, wiring diagrams, parts lists, assembly drawings, instructions for check-out and start-up, and instructions for maintenance and operation.

Contractor may withhold ten percent (10%) of the Subcontract Price, in addition to retention under Article 2, pending receipt and acceptance by Owner of maintenance and operating instructions.
Subcontractor shall provide, at its cost, qualified personnel to perform start-up of the equipment provided by Subcontractor under this Subcontract, and to provide instructions on maintenance and operation to personnel of Owner as required by the Contract Documents.



## ARTICLE 21 - WORK AND SUBCONTRACT PRICE

Description of Work:    See Attachment "A" (Scope of Work)
                        See Attachment "B" (Drawing List)
                        See Attachment "C" (Subcontractor Requisition Form)

Subcontract Price:    $1,070,000.00

## ARTICLE 22 - COMPLIANCE WITH LAWS

Case 1:05-cv-01199-RBW    Document 24-3    Filed 12/30/2005    Page 25 of 45

Subcontractor shall comply with all federal, state and local laws, ordinances, rules and regulations applicable to the performance of this Subcontract, including without limitation those relative to equal employment opportunity, fair labor standards, and occupational safety and health.   Subcontractor shall provide written certification of compliance upon request of Contractor.   Subcontractor shall defend, indemnify and hold harmless Contractor, Principal and Owner from any and all liability arising out of or attributable to Subcontractor's failure to comply with any such law.

Contractor is an equal opportunity employer in compliance with Title VII, Civil Rights Acts of 1964, Executive Order 11246 and Revised Order 4, Section 402 of the Vietnam Era Veterans Readjustment Assistance Act of 1974 and Section 503 of the Rehabilitation Act of 1973.  Subcontractor will ensure that in regard to any of its contracts entered into pursuant to this Subcontract that minority and women-owned business enterprises will be afforded full opportunity to participate upon meeting the qualifications to bid on the Project, and will not be discriminated against on the grounds of race, creed, color, sex, age, disability, religion, ancestry, marital status, national origin, place of birth or sexual preference.  Subcontractor shall ensure that employees and applicants for employment are not discriminated against because of race, color, sex, origin, age, marital status, sexual orientation, or disability and in conformance with all local, state and federal regulations.

Subcontractor will provide certified payrolls on a weekly basis for direct forces, both field and shop, and all sub-subcontractor forces.  Department of Labor Form WH-347 is acceptable.  The sex, minority status and zip code must be provided for each employee on these payroll forms.

## ARTICLE 23 –YEAR 2000 COMPLIANCE

Should the Work, the equipment or the materials provided under this Subcontract include any computer equipment, systems, computer software programs, embedded chips or any computer product of any nature (collectively "Computer Work"), or should Subcontractor use computer software, computer hardware, firmware, telecommunications and other information technology systems and equipment containing microchips (collectively "Covered Systems"), Subcontractor represents and warrants that the Work, including without limitation all Computer Work and Covered Systems, shall be "Year 2000 compliant." "Year 2000 compliant" means that the Computer Work and Covered Systems shall be properly designed so that their correct, accurate, continued and proper operation is unaffected by the change of millennium, and shall continue to properly operate and function without interruption through the years 1999 and 2000 and thereafter (including year change dates and leap year dates), and will not cause damage to other systems that interface with the Work.  "Year 2000 compliant" also means that the Computer Work and Covered Systems shall properly process, calculate, compare, sequence, display, store, transmit and receive date data (including year change dates and leap year dates) from, into and between the 20th and 21st centuries and during the years 1999 and 2000.  Subcontractor shall fully defend, indemnify and hold harmless Contractor, Principal and the Owner from and against any and all claims, losses, expenses, costs, liabilities and damages of any nature, including attorneys' fees, arising out of and/or relating to any inaccuracy in the foregoing representation or breach of the foregoing warranty.



## ARTICLE 24 - COMPLETE AGREEMENT

This Subcontract constitutes the entire agreement between the parties and supersedes any and all other written or oral agreements. This Subcontract cannot be amended or changed, nor may any provision hereof be waived, except in writing signed by an authorized representative of the parties.

IN WITNESS WHEREOF, the parties hereto executed this Subcontract the day and year first above written.

Attest/Witness:

REFRIGERATION SUPPLY COMPANY

Case 1:05-cv-01199-RBW    Document 24-3    Filed 12/30/2005    Page 26 of 45

(Contractor)

Signed: _____

Title: _____

Date: _____

Attest/Witness:

UNITED SHEET METAL INC.

(Subcontractor)

Signed: _____
JIMMIE G. ROBERTS
CEO

Title: _____

Date: _____



F

# TOMPKINS
### B U I L D E R S , I N C

AFFIDAVIT AND RELEASE
*PARTIAL PAYMENT*
## TOMPKINS BUILDERS, INC.
1333 H Street, NW, Suite 200
Washington, DC 20005
Telephone (202) 789-0770

Please return fully executed original

SUBCONTRACTOR/SUPPLIER/SELLER: _____

LOWER TIER SUBCONTRACTOR/SUPPLIER/SELLER: _____

SUBCONTRACT/PURCHASE ORDER FOR: _____

LOWER TIER SUBCONTRACT/PURCHASE ORDER FOR:

SUBCONTRACT/PURCHASE ORDER NO.: _____     DATE: _____

LOWER TIER SUBCONTRACTOR/PURCHASE ORDER NO.: _____     DATE: _____

PROJECT NAME/LOCATION: _____ SEC - Station Place - Building 2 _____

600, Second Street, N.E., Washington, D.C. 20002

The status of our account as of _____ (Date) is as follows:

Total value of materials furnished and/or work performed from beginning of job to date above is:

Less amount retained                                                               $_____

Less total payments made to present time and applied against materials delivered and/or   $_____

work performed to date above:

Balance due:                                                                       $_____

                                                                                   $_____

In consideration of a Partial Payment, the undersigned, as a subcontractor, supplier, or lower tier subcontractor or supplier (a) covenants and warrants that all labor, materials, equipment, services, and other items, including without limitation, all payroll, sales and privilege taxes, furnished pursuant to the above subcontract or purchase order (and in the case of this affidavit and release being executed by the lower tier subcontractor or supplier, the lower tier subcontract or purchase order) have been paid for and warrants that, except for retainage and unpaid, unapproved changes and claims previously identified to Owner and Contractor, that there are no outstanding claims against the Owner and Contractor of the project and/or its' lenders and guarantors, or the project, except that persons or firms listed on the schedule on the reverse side of this page, if any, remain unpaid the amounts shown opposite their names, which persons or firms shall be promptly and duly paid from this partial payment; (b) releases the Company (and in the case of this affidavit and release being executed by the lower tier subcontractor or supplier, the subcontractor or supplier) and the company's surety (and in the case of this affidavit and release being executed by the lower tier subcontractor or supplier, the subcontractor's or supplier's surety) and the owner of the project and its lenders and guarantors from all claims, rights or causes of action in equity or law whatsoever arising out of, through or under the above mentioned subcontract or purchase order for the performance of work pursuant thereto through the date of the execution of this release; (c) waives and releases the Owner and its lenders and guarantors, Company and the Company's surety from any and all liens and rights of liens upon the premises described above, and upon the improvements through the date of the execution of this release; and (d) agrees to defend, indemnify, and hold harmless Owner and its lenders and guarantors, the Company and the Company's surety (and in the case of this affidavit and release being executed by the lower tier subcontractor or supplier, the subcontractor or supplier) from and against any claims, liens, causes of action for losses or expenses (including without limitation reasonable attorney's fees) should any such claim, lien or right of lien be asserted by the below named subcontractor or supplier or any of its or their laborers, material men or subcontractors (of any tier).

                                   FIRM NAME: _____

                                   BY: _____

                                   TITLE: _____

                                   DATE: _____

STATE OF: _____ )

COUNTY OF: _____ )

The individual who has before me signed the foregoing Affidavit and Release on the date shown, being first duly sworn, deposes and says that he is authorized to execute the foregoing on behalf of the said firm and that the statements contained therein are true.

Notary Public: _____
My Commission
Expires _____

(BOTH PAGES OF THIS FORM MUST BE COMPLETED)

Form ACT-SP1 07/30/03



**TOMPKINS**
BUILDERS, INC

AFFIDAVIT AND RELEASE
PARTIAL PAYMENT

Date: _____

The undersigned certifies under oath as follows: In connection with the following list of materials, equipment, supplies, services, and any other things furnished by us to the <u>SEC - Station Place - Building 2</u> job from the beginning of the project up to and including date of |_____, we submit the following as a complete list of persons or firms from whom we purchased or rented materials, equipment, supplies, services and any other things and further state that none is of foreign origin or manufacture, except as allowed by the specifications.

| NAME OF PERSON OR FIRM | ARTICLE OR WORK FURNISHED | PRESENT BALANCE DUE |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

Case 1:05-cv-01199-RBW    Document 24-3    Filed 12/30/2005    Page 29 of 45

(Information required even if it is "NONE" or "N/A". If additional space is required, list on separate sheet.)

This is to further certify that we have not furnished to this project any materials or any other things from anyone other than those listed above, and that this list constitutes all indebtedness, other than direct payroll, incurred by us for this subcontract or purchase order through date shown above; that we have paid to all firms to whom we are indebted for this project all sums due them through the above date, except as noted above; that we have paid all payrolls in full and have submitted the necessary certified copies of same with the affidavit; that we have reported and paid all federal, state and local taxes, including unemployment and FICA in connection with the payrolls for this project and that this affidavit is made for the purpose of inducing the company (and in the case of this affidavit and release being executed by the lower tier subcontractor or supplier, the subcontractor or supplier), to make payments on account to us; and further that these funds will be used to liquidate all accounts outstanding against this project.

FIRM NAME: _____

BY: _____

TITLE: _____

DATE: _____

Form ACT-SP1 07/30/03

**G**

## SUBCONTRACT PAYMENT BOND

KNOW ALL MEN BY THESE PRESENTS: that Limbach Company, LLC, 10110 Senate Drive, Lanham, MD, 20706 as Principal, hereinafter called Subcontractor, and:

United States Fidelity and Guaranty Company and Arch Insurance Company

as Surety, hereinafter called Surety, are held and firmly bound unto J.A. Jones/Tompkins Builders, Inc., 1333 H Street N. W., Washington, DC 20005 as Obligee, hereinafter called General Contractor, in the amount of Seven million three hundred fifty thousand dollars ($7,350,000.00) for the payment whereof Subcontractor and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Subcontractor has by written agreement dated 3/30/2003 entered into a subcontract with General Contractor for a portion of the work agreed to be performed by General Contractor on a project known as SEC - Station Place - Building 2, 600 Second Street N.E., Washington, DC 20002 which subcontract, as duly modified or amended from time to time, is by reference made a part hereof, and is hereinafter referred to as the Subcontract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Subcontractor shall promptly make payment (a) to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Subcontract, and (b) to all other persons, firms, or corporations furnishing such labor or material for which Subcontractor is, and General Contractor may become obligated to make payment, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

   1) A claimant is defined as one having a direct contract with the Subcontractor for labor or material, or both, used or reasonably required for use in the performance of the Subcontract, labor and material being construed to include, without limiting the generality thereof, that part of water, gas, power, light, heat, oil, gasoline, telephone service, rental of equipment, services, insurance, bond, or supplies directly applicable to the Subcontract.

   2) The above named Subcontractor and Surety hereby jointly and severally agree with the General Contractor that every claimant as herein defined, who has not been paid in full before, the expiration of a period of ninety (90) days after the date on which the last of such claimant's work was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgement for such sum or sums as may be justly due claimant, and have execution thereon. The General Contractor shall not be liable for the payment of any costs or expenses of any such suit.

   3) No suit or action shall be commenced hereunder by any claimant:

     a) After the expiration of one (1) year following the date on which Subcontractor ceased Work on said Subcontract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law; or

     b) Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the Project, or any part thereof, is situated, or in the United States District Court for the district in which the Project, or any part thereof, is situated, and not elsewhere.

   4) The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder.

Signed and sealed this   24th   day of September   2003
<br>(Should not be earlier than Subcontract date)

Attach valid Corporate Power of Attorney Form.

THIS BOND IS ISSUED SIMUTANEOUSLY WITH PERFORMANCE BOND IN FAVOR OF THE GENERAL CONTRACTOR CONDITIONED ON THE FULL AND FAITHFUL PERFORMANCE OF THE SUBCONTRACT.

Limbach Company LLC
(Principal)     (Seal)

_(signature)_
(Title)

United States Fidelity and Guaranty Company
Arch Insurance Company
(Surety)     (Seal)

_(signature)_
(Title)

Pamela L. Nunez, Attorney-in-Fact

_(Witness signature)_
(Witness)

Michelle L. DiDolce _(signature)_
(Witness)

Michelle L. DiDolce

Form No. 0177-GEN-815 JAN/95

St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company
St. Paul Mercury Insurance Company
Seaboard Surety Company

United States Fidelity and Guaranty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Medical Liability Insurance Company

Bond No. TB6035

## RIDER CONTAINING
## DISCLOSURE NOTICE OF TERRORISM COVERAGE

Case 1:05-cv-01199-RBW     Document 24-3     Filed 12/30/2005     Page 32 of 45

This disclosure notice is required by the Terrorism Risk Insurance Act of 2002 (the "Act"). No action is required on your part. This Disclosure Notice is incorporated in and a part of the attached bond, and is effective the date of the bond.

You should know that, effective November 26, 2002, any losses covered by the attached bond that are caused by certified acts of terrorism would be partially reimbursed by the United States under a formula established by the Act. Under this formula, the United States reimburses 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

Under the Act, there is a cap on our liability to pay for covered terrorism losses if the aggregate amount of insured losses under the Act exceeds $100,000,000,000 during the applicable period for all insured and all insurers combined. In that case, we will not be liable for the payment of any amount which exceeds that aggregate amount of $100,000,000,000.

The portion of your premium that is attributable to coverage for acts of terrorism is $0.00.

**IMPORTANT NOTE:** THE COST OF TERRORISM COVERAGE IS SUBJECT TO CHANGE ON ANY BOND THAT PREMIUM IS CHARGED ANNUALLY.

# POWER OF ATTORNEY

Know All Men By These Presents:

That the Arch Insurance Company, a corporation organized and existing under the laws of the State of Missouri, having its principal office in Kansas City, Missouri (hereinafter referred to as the "Company") does hereby appoint

Christina A. Hartung, Elena Zunic, Marjorie A. Altemus, Leslie L. Rudat, Pamela L. Nunez, Wendy A. Bright and Rosemarie Rodden of Pittsburgh, PA (EACH)

its true and lawful Attorney(s)-in-Fact to make, execute, seal, and deliver from the date of issuance of this power for and on its behalf as surety, and as its act and deed:

Case 1:05-cv-01199-RBW    Document 24-3    Filed 12/30/2005    Page 33 of 45

Any and all bonds and undertakings

EXCEPTION: NO AUTHORITY is granted to make, execute, seal and deliver bonds or undertakings that guarantee the payment or collection of any promissory note, check, draft or letter of credit.

This authority does not permit the same obligation to be split into two or more bonds in order to bring each such bond within the dollar limit of authority as set forth herein.

The Company may revoke this appointment at any time.

The execution of such bonds and undertakings in pursuance of these presents shall be as binding upon the said Company as fully and amply to all intents and purposes, as if the same had been duly executed and acknowledged by its regularly elected officers at its principal office in Kansas City, Missouri.

This Power of Attorney is executed by authority of resolutions adopted by unanimous consent of the Board of Directors of the Company on March 3, 2003, true and accurate copies of which are hereinafter set forth and are hereby certified to by the undersigned Secretary as being in full force and effect:

"VOTED, That the Chairman of the Board, the President, or any Vice President, or their appointees designated in writing and filed with the Secretary, or the Secretary shall have the power and authority to appoint agents and attorneys-in-fact, and to authorize them to execute on behalf of the Company, and attach the seal of the Company thereto, bonds and undertakings, recognizances, contracts of indemnity and other writings, obligatory in the nature thereof, and any such officers of the Company may appoint agents for acceptance of process."

This Power of Attorney is signed, sealed and certified by facsimile under and by authority of the following resolution adopted by the unanimous consent of the Board of Directors of the Company on March 3, 2003:

VOTED, That the signature of the Chairman of the Board, the President, or any Vice President, or their appointees designated in writing and filed with the Secretary, and the signature of the Secretary, the seal of the Company, and certifications by the Secretary, may be affixed by facsimile on any power of attorney or bond executed pursuant to the resolution adopted by the Board of Directors on March 3, 2003, and any such power so executed, sealed and certified with respect to any bond or undertaking to which it is attached, shall continue to be valid and binding upon the Company.

**The St Paul**

## POWER OF ATTORNEY

Seaboard Surety Company
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company
St. Paul Mercury Insurance Company

United States Fidelity and Guaranty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.

Power of Attorney No.    22928

Certificate No. **1898551**

KNOW ALL MEN BY THESE PRESENTS: That Seaboard Surety Company is a corporation duly organized under the laws of the State of New York, and that St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company and St. Paul Mercury Insurance Company are corporations duly organized under the laws of the State of Minnesota, and that United States Fidelity and Guaranty Company is a corporation duly organized under the laws of the State of Maryland, and that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc. is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

James L. Bly, Christine A. Hartung, Leslie L. Rudat, Pamela L. Nunez, Elena Zunic, Marjorie A. Altemus, Wendy A. Bright and Rosemarie Rodden

of the City of    Pittsburgh    , State    Pennsylvania    , their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign its name as surety to, and to execute, seal and acknowledge any and all bonds, undertakings, contracts and other written instruments in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

IN WITNESS WHEREOF, the Companies have caused this instrument to be signed and sealed this    24th    day of    April    2003

Seaboard Surety Company
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company
St. Paul Mercury Insurance Company

United States Fidelity and Guaranty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.

PETER W. CARMAN, Vice President

THOMAS E. HUIBREGTSE, Assistant Secretary

State of Maryland
City of Baltimore

On this    24th    day of    April    2003    , before me, the undersigned officer, personally appeared Peter W. Carman and Thomas E. Huibregtse, who acknowledged themselves to be the Vice President and Assistant Secretary, respectively, of Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Company, and Fidelity and Guaranty Insurance Underwriters, Inc.; and that the seals affixed to the foregoing instrument are the corporate seals of said Companies; and that they, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the names of the corporations by themselves as duly authorized officers.

In Witness Whereof, I hereunto set my hand and official seal.
My Commission expires the 1st day of July, 2006.

REBECCA EASLEY-ONOKALA, Notary Public

86203 Rev. 7-2002 Printed in U.S.A.

# The St Paul



**Arch**
Insurance Group (U.S.)

### RIDER

To be attached to and form a part of _____ Payment _____ Bond No. TB6035/SU1003679 issued on September 24, 2003, by __ United States Fidelity and Guaranty Company and Arch Insurance Company __ as Surety, on behalf of __ Limbach Company LLC __, as Principal, in favor of __ J.A. Jones/Tompkins Builders, Inc. __, as Obligee.

It is hereby understood and agreed that the following language is added to the bond:

A claimant under this bond is defined as an individual or entity having a direct contract with the Principal or with a subcontractor of the Principal to furnish labor, materials or equipment for use in the performance of the Contract.

This amendment is effective March 30, 2003.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements, or limitations of this bond other than as above stated.

Signed, sealed and dated this 12th day of January, 2004.

Principal: Limbach Company LLC

By: _____
     Martin A. Keyser, V.P.

Surety: United States Fidelity and Guaranty Company
         and Arch Insurance Company

By: _____
     Pamela L. Nunez, Attorney-in-Fact

**The St Paul**

## POWER OF ATTORNEY

Seaboard Surety Company
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company
St. Paul Mercury Insurance Company

United States Fidelity and Guaranty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.

Power of Attorney No.    22928

Certificate No. 1898961

KNOW ALL MEN BY THESE PRESENTS: That Seaboard Surety Company is a corporation duly organized under the laws of the State of New York, and that St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company and St. Paul Mercury Insurance Company are corporations duly organized under the laws of the State of Minnesota, and that United States Fidelity and Guaranty Company is a corporation duly organized under the laws of the State of Maryland, and that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc. is a corporation duly organized under the laws of the State of Wisconsin *(herein collectively called the "Companies")*, and that the Companies do hereby make, constitute and appoint

James L. Bly, Christine A. Hartung, Leslie L. Rudat, Pamela L. Nunez, Elena Zunic, Marjorie A. Altemus, Wendy A. Bright and Rosemarie Rodden

of the City of _____ Pittsburgh _____ State _____ Pennsylvania _____, their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign its name as surety to, and to execute, seal and acknowledge any and all bonds, undertakings, contracts and other written instruments in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

IN WITNESS WHEREOF, the Companies have caused this instrument to be signed and sealed this _____ 24th _____ day of _____ April _____ 2003

Seaboard Surety Company
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company
St. Paul Mercury Insurance Company

United States Fidelity and Guaranty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.

PETER W. CARMAN, Vice President

THOMAS E. HUIBREGTSE, Assistant Secretary

State of Maryland
City of Baltimore

On this _____ 24th _____ day of _____ April _____ 2003 before me, the undersigned officer, personally appeared Peter W. Carman and Thomas E. Huibregtse, who acknowledged themselves to be the Vice President and Assistant Secretary, respectively, of Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Company, and Fidelity and Guaranty Insurance Underwriters, Inc.; and that they, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the names of the corporations by themselves as duly authorized officers.

In Witness Whereof, I hereunto set my hand and official seal.
My Commission expires the 1st day of July, 2006.



REBECCA EASLEY-ONOKALA, Notary Public

86203 Rev. 7-2002 Printed in U.S.A.

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Boards of Directors of Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Company, and Fidelity and Guaranty Insurance Underwriters, Inc. on September 2, 1998, which resolutions are now in full force and effect, reading as follows:

RESOLVED, that in connection with the fidelity and surety insurance business of the Company, all bonds, undertakings, contracts and other instruments relating to said business may be signed, executed, and acknowledged by persons or entities appointed as Attorney(s)-in-Fact pursuant to a Power of Attorney issued in accordance with these resolutions. Said Power(s) of Attorney for and on behalf of the Company may be executed in the name and on behalf of the Company, either by the Chairman, or the President, or any Vice President, or an Assistant Vice President, jointly with the Secretary or an Assistant Secretary, under their respective designations. The signature of such officers may be engraved, printed or lithographed. The signature of each of the foregoing officers and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Attorney(s)-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and subject to any limitations set forth therein, any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company, and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding upon the Company with respect to any bond or undertaking to which it is validly attached; and

RESOLVED FURTHER, that Attorney(s)-in-Fact shall have the power and authority, and, in any case, subject to the terms and limitations of the Power of Attorney issued them, to execute and deliver on behalf of the Company and to attach the seal of the Company to any and all bonds and undertakings, and other writings obligatory in the nature thereof, and any such instrument executed by such Attorney(s)-in-Fact shall be as binding upon the Company as if signed by an Executive Officer and sealed and attested to by the Secretary of the Company.

I, Thomas E. Huibregtse, Assistant Secretary of Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Company, and Fidelity and Guaranty Insurance Underwriters, Inc. do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I hereunto set my hand this ___ day of _January_ ___.

    

Thomas E. Huibregtse, Assistant Secretary

To verify the authenticity of this Power of Attorney, call 1-800-421-3880 and ask for the Power of Attorney clerk. Please refer to the Power of Attorney number, the above-named individuals and the details of the bond to which the power is attached.

# POWER OF ATTORNEY

Know All Men By These Presents:

That the Arch Insurance Company, a corporation organized and existing under the laws of the State of Missouri, having its principal office in Kansas City, Missouri (hereinafter referred to as the "Company") does hereby appoint

Christina A. Hartung, Elena Zunic, Marjorie A. Altemus, Leslie L. Rudat, Pamela L. Nunez, Wendy A. Bright and Rosemarie Rodden of Pittsburgh, PA (EACH)

its true and lawful Attorney(s)-in-Fact, to make, execute, seal, and deliver from the date of issuance of this power for and on its behalf as surety, and as its act and deed:

Any and all bonds and undertakings

EXCEPTION:  NO AUTHORITY is granted to make, execute, seal and deliver bonds or undertakings that guarantee the payment or collection of any promissory note, check, draft or letter of credit.

This authority does not permit the same obligation to be split into two or more bonds in order to bring each such bond within the dollar limit of authority as set forth herein.

The Company may revoke this appointment at any time.

The execution of such bonds and undertakings in pursuance of these presents shall be as binding upon the said Company as fully and amply to all intents and purposes, as if the same had been duly executed and acknowledged by its regularly elected officers at its principal office in Kansas City, Missouri.

This Power of Attorney is executed by authority of resolutions adopted by unanimous consent of the Board of Directors of the Company on March 3, 2003, true and accurate copies of which are hereinafter set forth and are hereby certified to by the undersigned Secretary as being in full force and effect:

"VOTED, That the Chairman of the Board, the President, or any Vice President, or their appointees designated in writing and filed with the Secretary, or the Secretary shall have the power and authority to appoint agents and attorneys-in-fact, and to authorize them to execute on behalf of the Company, and attach the seal of the Company thereto, and any such officers of the Company may appoint agents for acceptance of process."

This Power of Attorney is signed, sealed and certified by facsimile under and by authority of the following resolution adopted by the unanimous consent of the Board of Directors of the Company on March 3, 2003:

VOTED, That the signature of the Chairman of the Board, the President, or any Vice President, or their appointees designated in writing and filed with the Secretary, and the signature of the Secretary, the seal of the Company, and certifications by the Secretary, may be affixed by facsimile on any power of attorney or bond executed pursuant to the resolution adopted by the Board of Directors on March 3, 2003, and any such power so executed, sealed and certified with respect to any bond or undertaking to which it is attached, shall continue to be valid and binding upon the Company.

00ML0013 00 03 03

Printed in U.S.A.

In Testimony Whereof, the Company has caused this Instrument to be signed and its corporate seal to be affixed by their authorized officers, this 17th day of April , 20 03 .

Attested and Certified                                           Arch Insurance Company

_____                    _____
Joseph S. Labell, Corporate Secretary                Thomas P. Luckstone, Vice President

Case 1:05-cv-01199-RBW     Document     Filed     Page 39 of 45

STATE OF CONNECTICUT    SS

COUNTY OF FAIRFIELD        SS

I Melissa B. Gilligan, a Notary Public, do hereby certify that Thomas P. Luckstone and Joseph S. Labell personally known to me to be the same persons whose names are respectively as Vice President and Corporate Secretary of the Arch Insurance Company, a Corporation organized and existing under the laws of the State of Missouri, subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that they being thereunto duly authorized signed, sealed with the corporate seal and delivered the said instrument as the free and voluntary act of said corporation and as their own free and voluntary acts for the uses and purposes therein set forth.

OFFICIAL SEAL
MELISSA B. GILLIGAN, Notary Public
State of Connecticut
My Commission Expires February 28, 2005

_____
Melissa B. Gilligan, Notary Public
My commission expires 2-28-05

CERTIFICATION

I, Joseph S. Labell, Corporate Secretary of the Arch Insurance Company, do hereby certify that the attached Power of Attorney dated April 17, 2003 on behalf of the person(s) as listed above is a true and correct copy and that the same has been in full force and effect since the date thereof and is in full force and effect on the date of this certificate; and I do further certify that the said Thomas P. Luckstone, who executed the Power of Attorney as Vice President, was on the date of execution of the attached Power of Attorney the duly elected Vice President of the Arch Insurance Company.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seal of the Arch Insurance Company on this 15th day of January , 20 04 .

_____
Joseph S. Labell, Corporate Secretary

This Power of Attorney limits the acts of those named therein to the bonds and undertakings specifically named therein and they have no authority to bind the Company except in the manner and to the extent herein stated.

Home Office: Kansas City, MO

00ML0013 00 03 03

Printed in U.S.A.

H

WILLIAM M. HUDDLES (MD, DC)
ROGER C. JONES (VA)
KENNETH K. SORTEBERG (MD, DC)
MARK S. DACHILLE (MD)

EDWARD N. HERSHON (MD)
JOHN H. MICHEL (MD, DC)
SCOTT C. HOFER (MD, VA, DC)

LAW OFFICES

# HUDDLES & JONES, P.C.

OVERLOOK CENTER, SUITE 304
5457 TWIN KNOLLS ROAD
COLUMBIA, MARYLAND 21045-3259

WWW.CONSTRUCTIONLAW.COM

DC METRO | BALTIMORE METRO
(301) 621-4120 | (410) 720-0072
FAX (301) 621-4473 | (410) 720-0329 FAX

WRITER'S DIRECT E-MAIL:

jones@hjpc.com

June 15, 2004

United States Fidelity & Guaranty Company
385 Washington Street
St. Paul, Minnesota 55102
ATTN: Bond Claims Department

and

United States Fidelity & Guaranty Company
5801 Smith Avenue
Baltimore, Maryland 21209
ATTN: Bond Claims Department

RE:   Payment Bond Claim – $55,918
       Principle: Limbach Company LLC
       Project: SEC – Station Place, Phase 2

Gentlemen:

This law firm represents United Sheet Metal, Inc., a subcontractor to Refrigeration Supply Company on the above-referenced project. On behalf of our client, and pursuant to the payment bond that Limbach Company LLC issued for the project, United Sheet Metal, Inc. herewith makes a claim against said labor and material payment bond in the amount of $55,918, for unpaid labor, materials and services provided to the project, unpaid contract work and unpaid change work, through April 30, 2004.

Of this claimed amount, we understand Refrigeration Supply Company and/or Limbach Company LLC has received payment for the account of United Sheet Metal, Inc. in the amount of $37,750, which has not been paid. Accordingly, if this payment bond claim is not promptly processed by USF&G (and/or any other surety on the payment bond), United Sheet Metal, Inc. has instructed this office to proceed with all appropriate legal action.

On behalf of our client, we also request that a copy of the payment bond provided by Limbach Company LLC for the project be promptly provided to the undersigned.

Sincerely,

Roger C. Jones

*1995*  CELEBRATING **10 YEARS** OF SERVICE  *2005*

TO THE CONSTRUCTION INDUSTRY

United States Fidelity & Guaranty Company (Minnesota)
United States Fidelity & Guaranty Company (Maryland)
June 15, 2004
Page 2

RCJ:cmr

cc:    United Sheet Metal, Inc.
       Limbach Company LLC
       Refrigeration Supply Company
       J.A. Jones/Tompkins Builders, Bud Tripaldi, Project Manager
       Sharon J. Trotta, Claim Administrator Surety (410) 205-0298 (Facsimile)

H
&J

WILLIAM M. HUDDLES (MD, DC)
ROGER C. JONES (VA)
KENNETH K. SORTEBERG (MD, DC)
MARK S. DACHILLE (MD)

EDWARD N. HERSHON (MD)
JOHN H. MICHEL (MD, DC)
SCOTT C. HOFER (MD, VA, DC)

### LAW OFFICES

## HUDDLES & JONES, P.C.
OVERLOOK CENTER, SUITE 304
5457 TWIN KNOLLS ROAD
COLUMBIA, MARYLAND 21045-3259

WWW.CONSTRUCTIONLAW.COM

DC METRO | BALTIMORE METRO
(301) 621-4120 | (410) 720-0072
FAX (301) 621-4473 | (410) 720-0329 FAX

WRITER'S DIRECT E-MAIL:

hofer@hjpc.com

June 22, 2004

SENT VIA FACSIMILE & U.S. MAIL
(651) 310-4435

United States Fidelity & Guaranty Company
385 Washington Street
St. Paul, Minnesota 55102
ATTN: Bond Claims Department

    and

SENT VIA FACSIMILE & U.S. MAIL
(410) 205-0605

United States Fidelity & Guaranty Company
5801 Smith Avenue
Baltimore, Maryland 21209
ATTN: Bond Claims Department

    and

SENT VIA FACSIMILE & U.S. MAIL
(816) 531-0189

Arch Insurance Company
3100 Broadway, Suite 511
Kansas City, Missouri 64111
ATTN: Bond Claims Department

    RE:   Payment Bond Claim - $55,918
          USF&G Payment Bond No. TB6035
          Arch Insurance Company
            Payment Bond No. SU1003679
          Principle: Limbach Company LLC
          Project: SEC – Station Place, Phase 2

*1995   CELEBRATING 10 YEARS OF SERVICE   2005*
*TO THE CONSTRUCTION INDUSTRY*

United States Fidelity & Guaranty Company (Minnesota)
United States Fidelity & Guaranty Company (Maryland)
Arch Insurance Company
June 22, 2004
Page 2

Gentlemen:

Case 1:05-cv-01199-RBW    Document 20-6    Filed 12/30/2005    Page 45 of 45

This law firm represents United Sheet Metal, Inc., a subcontractor to Refrigeration Supply Company on the above-referenced project. On behalf of our client, and pursuant to the payment bond that Limbach Company LLC issued for the project, United Sheet Metal, Inc. reiterates its claim against said labor and material payment bond in the amount of $55,918, for unpaid labor, materials and services provided to the project, unpaid contract work and unpaid change work, through April 30, 2004.

Of this claimed amount, we understand Refrigeration Supply Company and/or Limbach Company LLC has received payment for the account of United Sheet Metal, Inc. in the amount of $37,750, which has not been paid. Accordingly, if this payment bond claim is not promptly processed by USF&G and/or Arch, United Sheet Metal, Inc. has instructed this office to proceed with all appropriate legal action.

On behalf of our client, we also request that a copy of the payment bond provided by Limbach Company LLC for the project be promptly provided to the undersigned.

Sincerely,

Scott C. Hofer

RCJ:cmr
cc:    United Sheet Metal, Inc.
       Limbach Company LLC
       Refrigeration Supply Company
       J.A. Jones/Tompkins Builders, Bud Tripaldi, Project Manager
       Sharon J. Trotta, Claim Administrator Surety (410) 205-0298 (Facsimile)

H
&J