# ATTACHMENT 1

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

UNITED SHEET METAL, INC.                    *
51 Ritchie Road
Capitol Heights, Maryland 20743             *

   Plaintiff,               *

  v.                              *  Case No.  J00404 -04

EFS XI, INC.                                *
(d/b/a PBM Limbach Group,
PBM Limbach Group - Mechanical              *
and Limbach Company)
2820 Dorr Avenue                            *
Suite 210
Fairfax, Virginia 22031                     *
  SERVE:
  National Registered Agents, Inc.  *
  1090 Vermont Avenue, NW
  #910                              *
  Washington, DC 20005

  and                             *

LIMBACH COMPANY, LLC                        *
4 Northshore Center
Pittsburgh, Pennsylvania 15212              *
  SERVE:
  CT Corporation System             *
  1015 15th Street, NW
  Suite 100                         *
  Washington, DC 20005

  and                             *

REFRIGERATION SUPPLY COMPANY*
907 Barry Place, N.W.
Washington, D.C.  20001-2298                *
  SERVE:
  Pinak A. Mehta, Registered Agent *
  907 Barry Place, N.W.
  Washington, D.C.  20001           *

  and                             *

RECEIVED
Civil Clerk's Office
JUN 2 9 2004
Superior Court of the
District of Columbia
Washington, D.C.

UNITED STATES FIDELITY            *
AND GUARANTY COMPANY
385 Washington Street             *
St. Paul, Minnesota 55102
     SERVE:                     *
     Insurance Commissioner
     810 1st Street, N.W., Suite 701   *
     Washington, D.C.  20002
                                   *

     and                        *

ARCH INSURANCE COMPANY            *
3100 Broadway, Suite 511
Kansas City, Missouri 64111       *
     SERVE:
     Insurance Commissioner     *
     810 1st Street, N.W., Suite 701
     Washington, D.C.  20002    *

and                               *

AMERICAN MANUFACTURERS            *
MUTUAL INSURANCE COMPANY
1 Kemper Drive                    *
Long Grove, Illinois 60049-0001
     SERVE:                     *
     Insurance Commissioner
     810 1st Street, N.W., Suite 701   *
     Washington, D.C.  20002

          Defendants.             *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## COMPLAINT

    Plaintiff, United Sheet Metal, Inc., by undersigned counsel, files this Complaint

against Defendants, EFS XI, Inc. (d/b/a PBM Limbach Group, PBM Limbach Group –

Mechanical and Limbach Company), Limbach Company, LLC, Refrigeration Supply

Company, United States Fidelity and Guaranty Company, Arch Insurance Company and

American Manufacturers Mutual Insurance Company and, as grounds therefore, states as follows:

## The Parties And Jurisdiction

1.      Plaintiff, United Sheet Metal, Inc. (hereinafter referred to as "USM"), is a Maryland corporation with its principal place of business in Capitol Heights, Maryland. Plaintiff is engaged in the business of HVAC ductwork installation and contracting.

2.      Defendant, EFS XI, Inc. (d/b/a PBM Limbach Group, PBM Limbach Group – Mechanical and Limbach Company) (hereinafter referred to collectively with Limbach Company, LLC as "Limbach"), is a Virginia corporation, with its principal place of business located in Fairfax, Virginia. EFS XI, Inc. is engaged in the business of mechanical contracting. EFS XI, Inc. is subject to the jurisdiction of this Court.

3.      Defendant, Limbach Company, LLC (hereinafter referred to collectively with EFS XI, Inc. as "Limbach"), is a Delaware corporation, with its principal place of business located in Pittsburgh, Pennsylvania. Limbach Company, LLC is engaged in the business of mechanical contracting. Limbach Company, LLC is subject to the jurisdiction of this Court.

4.      Defendant, Refrigeration Supply Company (hereinafter referred to as "RSC"), is a Maryland corporation with is principal place of business in Washington, DC. RSC is engaged in the business of mechanical contracting. RSC is subject to the jurisdiction of this Court.

5.      Defendant, United States Fidelity and Guaranty Company (hereinafter referred to as "USF&G"), is a Maryland corporation with principal places of business in St. Paul, Minnesota and Baltimore, Maryland. USF&G is the surety on the labor and

3

material payment bonds provided by Limbach on the projects that are the subject of this action. USF&G is subject to the jurisdiction of this Court.

6. Defendant, Arch Insurance Company (hereinafter referred to as "Arch") is a Missouri corporation with its principal place of business in Kansas City Missouri. Arch is the surety on the labor and material payment bond provided by Limbach, together with USF&G, on the Station Place Phase II project that is the subject of this action. Arch is subject to the jurisdiction of this court.

7. Defendant, American Manufactures Mutual Insurance Company (hereinafter referred to as "AMMI"), is an Illinois corporation with its principal place of business in Long Grove, Illinois. AMMI is the surety on the labor and material payment bond provided by Limbach, together with USF&G, on the BEQ project that is the subject of this action. AMMI is subject to the jurisdiction of this Court.

8. Jurisdiction in this Court is proper pursuant to D. C. CODE ANN. §§ 11-921 and 13-423 because this is a civil action in the District of Columbia and the construction projects which this action arises from are located in the District of Columbia.

9. All conditions precedent for the filing of this action have been satisfied and/or waived and/or excused.

### (PART I: The Station Place Phase 1 Project Claim)

### Factual Background – Station Place Phase 1 Project

10. · This action involves construction work that was and is being performed on three construction projects. The first project is known as SEC – Station Place Phase 1, (hereinafter referred to as the "Station Place Phase 1 Project") located at 702 2nd Street,

4

NE in Washington, DC. The Owner of the Project is Louis Dreyfus Property Group (hereinafter referred to as "Dreyfus").

11.    In or about 2002, Dreyfus awarded a Contract (the "Station Place Phase 1 Prime Contract") to J.A. Jones/Tompkins Builders (hereinafter referred to as "Tompkins") to serve as the General Contractor for the construction work on the Station Place Phase 1 Project.

12.    In or about August, 2002, Tompkins entered into a subcontract (the "Station Place Phase 1 Mechanical Subcontract") with Limbach whereby Limbach was to perform the mechanical and related work for the Project, as required by the Station Place Phase 1 Prime Contract. "PBM Limbach Group" executed the mechanical subcontract.

13.    On or about November 20, 2002, Limbach entered into a sub-subcontract (the "Station Place Phase 1 HVAC Sub-Subcontract") with USM, whereby USM was to perform HVAC ductwork on the Project, as required by the Station Place Phase 1 Mechanical Subcontract the Station Place Phase 1 Prime Contract. "Limbach Company" executed the Sub-Subcontract on behalf of "PBM Limbach Group - Mechanical" who was identified as the "Contractor" in the Sub-Subcontract. "Limbach Company, LLC" executed a Rider to the Sub-Subcontract. A copy of the Station Place Phase 1 HVAC Sub-Subcontract is attached hereto as **EXHIBIT A.**

**COUNT I**
**(Material and Ordinary Breaches of Contract – Limbach – Station Place Phase 1 Project)**

14.    The allegations contained in Paragraphs 1 through 13 above are incorporated by reference as though fully set forth herein.

15.    This is an action against Limbach based on Limbach's ordinary and material breaches of the Station Place Phase 1 HVAC Sub-Subcontract.

16.    USM has substantially performed all work required by the Station Place Phase 1 HVAC Sub-Subcontract and the directives of Limbach including change work and extra work.

17.    Despite this fact, USM remains unpaid, through May 31, 2004, an amount totaling Two Million Five Hundred Fifteen Thousand Four Hundred Fifty-Six Dollars ($2,515,456) for Station Place Phase 1 HVAC Sub-Subcontract work performed, including change work and extra work.

18.    Of this unpaid amount, Limbach has received payment from Tompkins, for the account of USM, in excess of Seven Hundred Ninety-Five Thousand Dollars ($795,000) which, despite demand, Limbach has refused to pay USM.

19.    Limbach's failure to pay these unpaid amounts constitutes a material breach of the Station Place Phase 1 HVAC Sub-Subcontract that affects the very essence of the Station Place Phase 1 HVAC Sub-Subcontract and serves to defeat the object and purpose of the Station Place Phase 1 HVAC Sub-Subcontract.  It also constitutes bad faith on the part of Limbach.

20.    In addition, upon information and belief, USM understands Limbach has been executing Partial Payment Affidavit and Releases on forms issued by Tompkins (copy attached as **EXHIBIT B**), which purport to:

> In consideration of a partial payment, the undersigned, as a subcontractor, supplier, or lower tier subcontractor or supplier . . .

*  *  *

(b)    **Releases the company** (and in the case of this Affidavit and Release being executed by a lower tier subcontractor or supplier, the subcontractor or supplier) and the company's surety (and in the case of this Affidavit and Release being executed by the lower tier subcontractor or supplier, the subcontractor's or supplier's surety) **and the Owner of the project** and its lenders and guarantors **from all claims, rights or causes of action in equity or law whatsoever arising out of, through or under the above-mentioned subcontractor or purchase order for the performance of work pursuant thereto through the date of the execution of this Release;**

21.    To the extent Limbach has been executing these Partial Payment Affidavit and Releases, Limbach has released Tompkins and Dreyfus of all claims through the date of the Release on behalf of both Limbach and USM.

22.    As such, Limbach now stands in place of Tompkins and Dreyfus with respect to liability on USM's claims for change work and extra work.

23.    USM's Sub-Subcontract with Limbach and Limbach's Subcontract with Tompkins do not expressly require submission of Partial Payment Releases. Despite this fact, Limbach has refused to pay USM sums received from Tompkins for the account of USM, to the extent USM refuses to sign such Partial Payment Releases.

24.    Limbach's actions in signing Partial Payment Releases and in demanding Partial Payment Releases from USM constitute material breaches of the Station Place Phase 1 HVAC Sub-Subcontract that affect the very essence of the Station Place Phase 1 HVAC Sub-Subcontract and serve to defeat the object and purposes of the Station Place Phase 1 HVAC Sub-Subcontract. They also constitute bad faith on the part of Limbach.

25.    In addition, upon information and belief, USM understands Limbach has been executing change orders on forms issued by Tompkins which purport to release

Tompkins and the Owner for additional costs stemming from impact and delay relating to the changes that are the subject of the change orders.

26.    To the extent Limbach has been executing such change orders, Limbach has released Tompkins and Dreyfus of all claims for impact and delay relating to the changes on behalf of both Limbach and USM.

27.    As such, Limbach now stands in the place of Tompkins and Dreyfus with respect to liability on USM's claims for impact and delay costs relating to change work and extra work.

28.    USM's Sub-Subcontract with Limbach and Limbach's Subcontract with Tompkins do not expressly require change order pricing to represent a full accord and satisfaction for impact and delay costs relating to the change work. Despite this fact, Limbach has refused to pay USM's sums received from Tompkins for the account of USM change work, to the extent USM refuses to sign change orders including full accord and satisfaction language for impact and delay costs.

29.    Limbach's actions in signing change orders containing full accord and satisfaction language for impact and delay costs and in demanding that USM sign similar change orders are material breaches of the Station Place Phase 1 HVAC Sub-Subcontract that affect the very essence of the Station Place Phase 1 HVAC Sub-Subcontract and serve to defeat the object and purpose of the Station Place Phase 1 HVAC Sub-Subcontract. They also constitute bad faith on the part of Limbach.

30.    As a result of Limbach's material breaches of the Station Place Phase 1 HVAC Sub-Subcontract, USM has incurred damages totaling $2,515,456, through May

31, 2004, for which Limbach is liable.  Further, USM expects to continue incurring

damages for work performed after May 31, 2004.

**WHEREFORE**, Plaintiff, United Sheet Metal, Inc., demands judgment against

Defendants EFS XI, Inc. (d/b/a PBM Limbach Group, PBM Limbach Group- Mechanical

and Limbach Company) and Limbach Company, LLC, jointly and severally, in the

amount of $2,515,456, plus any additional damages incurred after May 31, 2004, plus

interest, together with such other and further relief as this Court may deem appropriate.

**COUNT II**
**(Payment Bond Action – Station Place Phase 1 Project)**

31.    The allegations contained in Paragraphs 1 through 30 above are

incorporated by reference as though fully set forth herein.

32.    This is an action against Defendants Limbach and USF&G on labor and

material payment bond number SS7088, provided by them for the Station Place Phase 1

Project, (copy attached as **EXHIBIT C**).

33.    USM has complied with all conditions required under the aforesaid

payment bond.

34.    USM last provided labor, materials and/or services for construction work

on the Station Place Phase 1 Project within one year of the filing of this action.

35.    By letter dated June 1, 2004 (copy attached as **EXHIBIT D**), USM,

through counsel, notified USF&G that USM was unpaid for Station Place Phase 1 HVAC

Sub-Subcontract work performed and for labor, materials and/or services provided to the

Station Place Phase 1 Project in the amount of $2,515,455.80.

36.    The current amount due and owing USM for work performed and for

labor, materials and/or services provided to the Station Place Phase 1 Project through

9

May 31, 2004, pursuant to the Station Place Phase 1 HVAC Sub-Subcontract totals $2,515,456.

37.    Of this amount, Limbach has received payment from Tompkins for the account of USM totaling in excess of $795,000.

38.    To date, despite demand, neither Limbach nor USF&G has paid USM these outstanding amounts due and owing.

39.    Limbach and USF&G are jointly and severally liable to USM for the claimed amount of $2,515,456 pursuant to the labor and material payment bond they have provided.  Further, Limbach and USF&G are jointly and severally liable to USM for damages USM expects to continue incurring for work performed after May 31, 2004.

**WHEREFORE**, Plaintiff, United Sheet Metal, Inc. demands judgment against Defendants, EFS XI, Inc. (d/b/a PBM Limbach Group, PBM Limbach Group – Mechanical and Limbach Company), Limbach Company, LLC and United States Fidelity and Guaranty Company, jointly and severally, in the amount of $2,515,456, plus any additional damages incurred after May 31, 2004, plus interest, together with such other and further relief as this Court may deem appropriate.

### COUNT III
### (Restitution/Unjust Enrichment/Quantum Meruit – Station Place Phase 1 Project)

40.    The allegations contained in Paragraphs 1 through 13 and 31 through 39 above are incorporated by reference as though fully set forth herein.

41.    This is an action, in the alternative, against Limbach and Limbach's payment bond surety USF&G, for the unpaid value of labor, material and services provided by USM in connection with the Station Place Phase 1 Project, under the doctrines of restitution, unjust enrichment and quantum meruit, due to the material

10

breaches of the Station Place Phase 1 HVAC Sub-Subcontract agreement between the parties.

42.    The failure and refusal of Limbach to process payment to USM, for an amount in excess of $795,000, which Limbach has received from Tompkins for the account of USM for contract and change work performed by USM on the Station Place Phase 1 Project constitutes a failure of consideration for the Station Place Phase 1 HVAC Sub-Subcontract and the change orders issued thereunder.    It also represents and unqualified and unjustified refusal by Limbach to comply with Limbach's Station Place Phase 1 HVAC Sub-Subcontract payment obligations, which has deprived USM of the benefit that USM justifiably expected in exchange for the work USM performed under the Station Place Phase 1 HVAC Sub-Subcontract.    As such, Limbach's failure to process payment, Limbach's insistence on partial payment releases, and Limbach's insistence on change orders containing full accord and satisfaction language for impact and delay costs are breaches so material and substantial in nature that they affect the very essence of the Station Place Phase 1 HVAC Sub-Subcontract, serving to defeat the object and purpose of the Station Place Phase 1 HVAC Sub-Subcontract agreement; constituting a repudiation and a material breach going to the very root of the Station Place Phase 1 HVAC Sub-Subcontract.  It also constitutes bad faith on the part of Limbach.

43.    Limbach's failure of consideration for the Station Place Phase 1 HVAC Sub-Subcontract and the change orders issued thereunder, as well as Limbach's material breaches of the Station Place Phase 1 HVAC Sub-Subcontract conditions and obligations justify the rescission and nullification of the written Station Place Phase 1 HVAC Sub-Subcontract agreement and the change orders issued thereunder.

44.    Notwithstanding the rescission and nullification of the written Station Place Phase 1 HVAC Sub-Subcontract agreement, there still exists an implied contract for Limbach to pay USM in quantum meruit for the work performed and the labor, material and services provided in connection with the Station Place Phase 1 Project. In this regard, USM performed valuable work and provided valuable labor, material and services for Limbach which Limbach accepted, used and enjoyed by way of receipt of payment from Tompkins for the account of said work by USM. Further, Limbach fully understood and was under reasonable notice that USM expected to be paid for the work, labor, material, and services USM provided in connection with the Station Place Phase 1 Project.

45.    By failing to pay USM for the work, labor, material and services USM provided in connection with the Station Place Phase 1 Project, Limbach has been unjustly enriched at USM's expense and there exist circumstances such that in good conscience Limbach should make restitution for the full value of the unpaid work, labor, material and services USM provided in connection with the Station Place Phase 1 Project.

46.    The reasonable value of the unpaid work performed and labor, material and services provided by USM in connection with the Station Place Phase 1 Project is $2,515,456 through May 31, 2004.

47.    Under the doctrines of restitution, unjust enrichment and quantum meruit and pursuant to the terms of the payment bond provided by Limbach on which USF&G is a surety, Limbach and USF&G are jointly and severally liable for this unpaid value of work performed and labor, material and services provided by USM in connection with the Station Place Phase 1 Project.

WHEREFORE, Plaintiff, United Sheet Metal, Inc., demands judgment against Defendants, EFS XI, Inc. (d/b/a PBM Limbach Group, PBM Limbach Group-Mechanical and Limbach Company), Limbach Company, LLC and United States Fidelity and Guaranty Company, jointly and severally, in the amount of $2,515,456, plus any additional damages incurred after May 31, 2004, plus interest, together with such other and further relief as this Court may deem appropriate.

## COUNT IV
### (Express and Constructive Trust – Limbach - Station Place Phase 1 Project)

48.     The allegations in paragraphs 1 through 47 above are incorporated by reference as if fully set forth herein.

49.     This is an action, in the alternative, against Limbach under the doctrines of express and constructive trust.

50.     The funds received by Limbach from Tompkins for the account of USM for work performed on the Station Place Phase 1 HVAC Sub-Subcontract are funds expressly and constructively held in trust by Limbach for USM under the doctrine of constructive trust and pursuant to Limbach's Mechanical Subcontract with Tompkins.

51.     The total amount of the express and constructive trust funds received by Limbach for USM exceeds $795,000. The failure and refusal of Limbach to pay USM for the account of work performed by USM constitutes a breach of both express and constructive trusts by Limbach.     Further Limbach's actions in this regard are unconscionable and in bad faith.

52.     Under the doctrines of express and constructive trust Limbach is liable to USM for all funds received by Limbach for the account of USM which Limbach has failed to pay USM and Limbach is required to account for all such funds.

WHEREFORE, Plaintiff, United Sheet Metal, Inc. demands:

(1)    That Defendants, EFS XI, Inc. (d/b/a PBM Limbach Group and PBM Limbach Group – Mechanical and Limbach Company) and Limbach Company, LLC, be made to account for all sums received by it from Tompkins for the account of USM which have not been paid to USM; and

(2)    That judgment be entered against EFS XI, Inc. (d/b/a PBM Limbach Group, PBM Limbach Group – Mechanical and Limbach Company) and Limbach Company, LLC, jointly and severally, for all such sums, plus interest, together with such other and further relief as this Court may deem appropriate.

**(Part II: Station Place Phase 2 Project Claim)**

**Factual Background – Station Place Phase 2 Project**

53.    The second project that is the subject of this action is known as SEC – Station Place, Phase 2 (hereinafter referred to as the "Station Place Phase 2 Project"), located at 600 2nd Street, N.E., Washington, DC.  The Owner of the Project is Dreyfus.

54.    Upon information and belief, in or about 2002, Dreyfus awarded a contract (the "Station Place Phase 2 Prime Contract") to Tompkins to serve as the general contractor for the construction work on the Station Place Phase 2 Project.

55.    Upon information and belief, in or about 2002, Tompkins entered into a subcontract (the "Station Place Phase 2 Mechanical Subcontract") with RSC whereby RSC was to perform the mechanical and related work for the Project, as required by the Station Place Phase 2 Prime Contract.

56.    On or about October 8, 2003, RSC issued a sub-subcontract (the "Station Place Phase 2 HVAC Sub-Subcontract") with USM, whereby USM was to perform

HVAC ductwork on the Project, as required by the Station Place Phase 2 Mechanical

Subcontract and the Station Place Phase 2 Prime Contract.  USM executed and returned

to RSC, on or about November 17, 2003, the Station Place Phase 2 HVAC Sub-

Subcontract.  To date the Sub-Subcontract has not been accepted and/or ratified by RSC.

However, the unratified Sub-Subcontract contains an October 10, 2003 Memorandum of

Understanding (unsigned) which indicates Limbach Company, LLC is responsible for

RSC subcontractors such as USM.  A copy of the Station Place Phase 2 HVAC Sub-

Subcontract is attached hereto as **EXHIBIT E**.

### COUNT V
**(Material and Ordinary Breaches of Contract – Limbach –
Station Place Phase 2 Project)**

57.    The allegations contained in Paragraphs 1 through 9 and 53 through 56

above are incorporated by reference as though fully set forth herein.

58.    This is an action against RSC and Limbach based on RSC's and

Limbach's ordinary and material breaches of the Station Place Phase 2 HVAC Sub-

Subcontract, which may exist in verbal form only.

59.    USM has performed certain work required by the Station Place Phase 2

HVAC Sub-Subcontract and the directives of Limbach including change work and extra

work.

60.    Despite this fact, USM remains unpaid, through April 30, 2004, an amount

totaling Fifty-Five Thousand Nine Hundred Eighteen Dollars ($55,918) for Station Place

Phase 2 HVAC Sub-Subcontract work performed, including change work and extra work.

61.     Of this unpaid amount, RSC and/or Limbach has received payment from Tompkins, for the account of USM, in excess of Thirty-Seven Thousand Dollars ($37,000) which, despite demand, RSC and Limbach have refused to pay USM.

62.     RSC's and/or Limbach's failure to pay these unpaid amounts constitutes a material breach of the Station Place Phase 2 HVAC Sub-Subcontract that affects the very essence of the Station Place Phase 2 HVAC Sub-Subcontract and serves to defeat the object and purpose of the Station Place Phase 2 HVAC Sub-Subcontract.     It also constitutes bad faith on the part of RSC and/or Limbach.

63.     In addition, upon information and belief, USM understands RSC and/or Limbach has been executing Partial Payment Affidavit and Releases on forms issued by Tompkins (copy attached as **EXHIBIT F**), which purport to:

> In consideration of a partial payment, the undersigned, as a subcontractor, supplier, or lower tier subcontractor or supplier . . .
>
> \* \* \*
>
> (b)     **Releases the company** (and in the case of this Affidavit and Release being executed by a lower tier subcontractor or supplier, the subcontractor or supplier) and the company's surety (and in the case of this Affidavit and Release being executed by the lower tier subcontractor or supplier, the subcontractor's or supplier's surety) **and the Owner of the project** and its lenders and guarantors **from all claims, rights or causes of action in equity or law whatsoever arising out of, through or under the above-mentioned subcontractor or purchase order for the performance of work pursuant thereto through the date of the execution of this Release;**

64.     To the extent RSC and/or Limbach has been executing these Partial Payment Affidavit and Releases, RSC and/or Limbach has released Tompkins and

16

Dreyfus of all claims through the date of the Release on behalf of both Limbach and USM.

65.     As such, RSC and/or Limbach now stands in place of Tompkins and Dreyfus with respect to liability on USM's claims for change work and extra work.

66.     USM's Station Place Phase 2 HVAC Sub-Subcontract with RSC and/or Limbach and Limbach's Station Place Phase 2 Mechanical Subcontract with Tompkins do not expressly require submission of Partial Payment Releases. Despite this fact, RSC and/or Limbach have refused to pay USM sums received from Tompkins for the account of USM, to the extent USM refuses to sign such Partial Payment Releases.

67.     RSC's and/or Limbach's actions in signing Partial Payment Releases and in demanding Partial Payment Releases from USM constitute material breaches of the Station Place Phase 2 HVAC Sub-Subcontract that affect the very essence of the Station Place Phase 2 HVAC Sub-Subcontract and serve to defeat the object and purposes of the Station Place Phase 2 HVAC Sub-Subcontract. They also constitute bad faith on the part of RSC and/or Limbach.

68.     In addition, upon information and belief, USM understands RSC and/or Limbach has been executing change orders on forms issued by Tompkins which purport to release Tompkins and the Owner for additional costs stemming from impact and delay relating to the changes that are the subject of the change orders.

69.     To the extent RSC and/or Limbach has been executing such change orders, RSC and/or Limbach have released Tompkins and Dreyfus of all claims for impact and delay relating to the changes on behalf of both RSC and/or Limbach and USM.

70.     As such, RSC and/or Limbach now stands in the place of Tompkins and Dreyfus with respect to liability on USM's claims for impact and delay costs relating to change work and extra work.

71.     USM's Station Place Phase 2 HVAC Sub-Subcontract with RSC and/or Limbach and RSC's and/or Limbach's Station Place Phase 2 Mechanical Subcontract with Tompkins to not expressly require change order pricing to represent a full accord and satisfaction for impact and delay costs relating to the change work. Despite this fact, RSC and/or Limbach has refused to pay USM's sums received from Tompkins for the account of USM change work, to the extent USM refuses to sign change orders including full accord and satisfaction language for impact and delay costs.

72.     RSC's and/or Limbach's actions in signing change orders containing full accord and satisfaction language for impact and delay costs and in demanding that USM sign similar change orders are material breaches of the Station Place Phase 2 HVAC Sub-Subcontract that affect the very essence of the Station Place Phase 2 HVAC Sub-Subcontract and serve to defeat the object and purpose of the Station Place Phase 2 HVAC Sub-Subcontract.  They also constitute bad faith on the part of RSC and/or Limbach.

73.     As a result of RSC's and/or Limbach's material breaches of the Station Place Phase 2 HVAC Sub-Subcontract, USM has incurred damages totaling $55,918, through April 30, 2004, for which Limbach is liable.  Further, USM expects to continue incurring damages for work performed after April 30, 2004.

**WHEREFORE**, Plaintiff, United Sheet Metal, Inc., demands judgment against Defendants, Limbach Company, LLC and Refrigeration Supply Company, jointly and

severally, in the amount of $55,918, plus any additional damages incurred after April 30, 2004, plus interest, together with such other and further relief as this Court may deem appropriate.

### COUNT VI
### (Payment Bond Action – Station Place Phase 2 Project)

74. The allegations contained in Paragraphs 1 through 9 and 53 through 73 above are incorporated by reference as though fully set forth herein.

75. This is an action against Defendants, Limbach, USF&G, and Arch on labor and material payment bond number TB6035/SU1003679 provided by them for the Station Place Phase 2 Project (copy attached as **EXHIBIT G**).

76. USM has complied with all conditions required under the aforesaid payment bond.

77. USM last provided labor, materials and/or services for construction work on the Station Place Phase 2 Project within one year of the filing of this action.

78. By letter dated June 15, 2004 (copy attached as **EXHIBIT H**), USM, through counsel, notified USF&G that USM was unpaid for Station Place Phase 2 HVAC Sub-Subcontract work performed and for labor, materials and/or services provided to the Station Place Phase 2 Project in the amount of $55,918.

79. By letter dated June 22, 2004 (copy attached as **EXHIBIT I**) USM, through counsel, notified Arch and reiterated to USF&G that USM was unpaid for Station Place Phase 2 HVAC Sub-Subcontract work performed and for labor, materials and/or services provided to the Station Place Phase 2 Project in the amount of $55,918.

80. The current amount due and owing USM for work performed and for labor, materials and/or services provided to the Station Place Phase 2 Project through

April 30, 2004, pursuant to the Station Place Phase 2 HVAC Sub-Subcontract totals $55,918.

81.    Of this amount, RSC and/or Limbach has received payment from Tompkins for the account of USM totaling in excess of $37,750.

82.    To date, despite demand, neither Limbach, USF&G, nor Arch has paid USM these outstanding amounts due and owing.

83.    Limbach, USF&G and Arch are jointly and severally liable to USM for the claimed amount of $55,918 pursuant to the labor and material payment bond they have provided.  Further, Limbach, USF&G and Arch are jointly and severally liable to USM for damages USM expects to continue incurring for work performed after April 30, 2004.

**WHEREFORE**, Plaintiff, United Sheet Metal, Inc. demands judgment against Defendants, Limbach Company, LLC, United States Fidelity and Guaranty Company, and Arch Insurance Company, jointly and severally, in the amount of $55,918, plus any additional damages incurred after April 30, 2004, plus interest, together with such other and further relief as this Court may deem appropriate.

### COUNT VII
### (Restitution/Unjust Enrichment/Quantum Meruit – Station Place Phase 2 Project)

84.    The allegations contained in Paragraphs 1 through 9, 53 through 56 and 74 through 83 above are incorporated by reference as though fully set forth herein.

85.    This is an action, in the alternative, against RSC and/or Limbach and Limbach's payment bond suretyies USF&G and Arch, for the unpaid value of labor, material and services provided by USM in connection with the Station Place Phase 2 Project, under the doctrines of restitution, unjust enrichment and quantum meruit, due to

the material breaches of the Station Place Phase 2 HVAC Sub-Subcontract agreement between the parties.

86.    The failure and refusal of RSC and/or Limbach to process payment to USM, for an amount in excess of $37,750, which RSC and/or Limbach has received from Tompkins for the account of USM for contract and change work performed by USM on the Station Place Phase 2 Project constitutes a failure of consideration for the Station Place Phase 2 HVAC Sub-Subcontract and the change orders issued thereunder. It also represents and unqualified and unjustified refusal by RSC and/or Limbach to comply with RSC and/or Limbach's Station Place Phase 2 HVAC Sub-Subcontract payment obligations, which has deprived USM of the benefit that USM justifiably expected in exchange for the work USM performed under the Station Place Phase 2 HVAC Sub-Subcontract. As such, RSC's and/or Limbach's failure to process payment and RSC and/or Limbach's insistence on partial payment releases is a breach so material and substantial in nature that it affects the very essence of the Station Place Phase 2 HVAC Sub-Subcontract, serving to defeat the object and purpose of the Station Place Phase 2 HVAC Sub-Subcontract agreement; constituting a repudiation and a material breach going to the very root of the Station Place Phase 2 HVAC Sub-Subcontract. It also constitutes bad faith on the part of RSC and/or Limbach.

87.    RSC's and/or Limbach's failure of consideration for the Station Place Phase 2 HVAC Sub-Subcontract and the change orders issued thereunder, as well as RSC's and/or Limbach's material breaches of the Station Place Phase 2 HVAC Sub-Subcontract conditions and obligations justify the rescission and nullification of the

21

written Station Place Phase 2 HVAC Sub-Subcontract agreement and the change orders issued thereunder, to the extent the Sub-Subcontract has been accepted and ratified..

88.     Notwithstanding the rescission and nullification of the written and/or verbal Station Place Phase 2 HVAC Sub-Subcontract agreement, there still exists an implied contract for RSC and/or Limbach to pay USM in quantum meruit for the work performed and the labor, material and services provided in connection with the Station Place Phase 2 Project.  In this regard, USM performed valuable work and provided valuable labor, material and services for RSC and/or Limbach which RSC and/or Limbach accepted, used and enjoyed by way of receipt of payment from Tompkins for the account of said work by USM.  Further, RSC and/or Limbach fully understood and was under reasonable notice that USM expected to be paid for the work, labor, material, and services USM provided in connection with the Station Place Phase 2 Project.

89.     By failing to pay USM for the work, labor, material and services USM provided in connection with the Station Place Phase 2 Project, RSC and/or Limbach has been unjustly enriched at USM's expense and there exist circumstances such that in good conscience RSC and/or Limbach should make restitution for the full value of the unpaid work, labor, material and services USM provided in connection with the Station Place Phase 2 Project.

90.     The reasonable value of the unpaid work performed and labor, material and services provided by USM in connection with the Station Place Phase 2 Project is $55,918 through April 30, 2004.

91.     Under the doctrines of restitution, unjust enrichment and quantum meruit and pursuant to the terms of the payment bond provided by Limbach Company, LLC on

which USF&G and Arch are sureties, RSC, Limbach Company, LLC , USF&G and Arch are jointly and severally liable for this unpaid value of work performed and labor, material and services provided by USM in connection with the Station Place Phase 2 Project.

**WHEREFORE**, Plaintiff, United Sheet Metal, Inc., demands judgment against Defendants, Limbach Company, LLC, Refrigeration Supply Company, United States Fidelity and Guaranty Company, and Arch Insurance Company jointly and severally, in the amount of $55,918, plus any additional damages incurred after April 30, 2004, plus interest, together with such other and further relief as this Court may deem appropriate.

## COUNT VIII
### (Express and Constructive Trust – Limbach - Station Place Phase 2 Project)

92.    The allegations in paragraphs 1 through 9 and 53 through 91 above are incorporated by reference as if fully set forth herein.

93.    This is an action, in the alternative, against RSC and/or Limbach under the doctrines of express and constructive trust.

94.    The funds received by RSC and/or Limbach from Tompkins for the account of USM for work performed on the Station Place Phase 2 HVAC Sub-Subcontract are funds expressly and constructively held in trust by RSC and/or Limbach for USM under the doctrine of constructive trust and pursuant to RSC's and/or Limbach's Mechanical Subcontract with Tompkins.

95.    The total amount of the express and constructive trust funds received by RSC and/or Limbach for USM exceeds $55,918. The failure and refusal of RSC and/or Limbach to pay USM for the account of work performed by USM constitutes a breach of

23

both express and constructive trusts by RSC and/or Limbach.  Further RSC's and/or Limbach's action in this regard are unconscionable and in bad faith.

96.    Under the doctrines of express and constructive trust RSC and/or Limbach is liable to USM for all funds received by RSC and/or Limbach for the account of USM which RSC and/or Limbach has failed to pay USM and RSC and/or Limbach is required to account for all such funds.

WHEREFORE, Plaintiff, United Sheet Metal, Inc. demands:

(1)    That Defendants, Limbach Company, LLC and/or Refrigeration Supply Company be made to account for all sums received by them from Tompkins for the account of USM which have not been paid to USM; and

(2)    That judgment be entered against Limbach Company, LLC and/or Refrigeration Supply Company, jointly and severally, for all such sums, plus interest, together with such other and further relief as this Court may deem appropriate.

(PART III:  The BEQ Project Claim)

### Factual Background – BEQ Project

97.    The third project that is the subject of this action is known as the BEQ Marine Barracks Annex and Support Facility (hereinafter referred to as the "BEQ Project"), located at 8th and I Streets, SE in Washington, D.C.  The Owner of the Project is the United States Government acting by and through the The Department of the Navy (hereinafter the "Government").

98.    In or about 2002, the Government awarded a Contract (the "BEQ Prime Contract") to Coakley Williams Construction (hereinafter referred to as "Coakley") to serve as the General Contractor for the construction work on the BEQ Project.

99.    On or about June 6, 2002, Coakley entered into a subcontract (the "BEQ Mechanical Subcontract") with Limbach whereby Limbach was to perform the mechanical and related work for the Project, as required by the BEQ Prime Contract.

100.    On or about August 27, 2002, Limbach entered into a sub-subcontract (the "BEQ HVAC Sub-Subcontract") with USM, whereby USM was to perform HVAC ductwork on the Project, as required the BEQ Mechanical Subcontract and the BEQ Prime Contract. "PBM Limbach Group - Mechanical" executed the Sub-Subcontract. A copy of the BEQ HVAC Sub-Subcontract is attached hereto as **EXHIBIT J**.

### COUNT IX
### (Material and Ordinary Breaches of Contract – Limbach – BEQ Project)

101.    The allegations contained in Paragraphs 1 through 9 and 97 through 100 above are incorporated by reference as though fully set forth herein.

102.    This is an action against Limbach based on Limbach's ordinary and material breaches of the BEQ HVAC Sub-Subcontract.

103.    USM has substantially performed all work required by the BEQ HVAC Sub-Subcontract and the directives of Limbach including change work and extra work.

104.    Despite this fact, USM remains unpaid, through May 31, 2004, an amount totaling Seven Hundred Eighteen Thousand Five Hundred Sixty-Eight Dollars ($718,568) for BEQ HVAC Sub-Subcontract work performed, including change work and extra work.

105.    Of this unpaid amount, Limbach has received payment from Coakley, for the account of USM, in excess of Fifty-Nine Thousand Dollars ($59,000) which, despite demand, Limbach has refused to pay USM.

106.    Limbach's failure to pay this unpaid amount constitutes a breach of the BEQ HVAC Sub-Subcontract that affects the very essence of the BEQ HVAC Sub-Subcontract and serves to defeat the object and purpose of the BEQ HVAC Sub-Subcontract. It also constitutes bad faith on the part of Limbach.

107.    As a result of Limbach's breach of the BEQ HVAC Sub-Subcontract, USM has incurred damages totaling $718,568, through May 31, 2004, for which Limbach is liable. Further, USM expects to continue incurring damages for work performed after May 31, 2004.

**WHEREFORE**, Plaintiff, United Sheet Metal, Inc., demands judgment against Defendant EFS XI, Inc. (d/b/a PBM Limbach Group, PBM Limbach Group – Mechanical and Limbach Company) in the amount of $718,568, plus any additional damages incurred after May 31, 2004, plus interest, together with such other and further relief as this Court may deem appropriate.

## COUNT X
### (Payment Bond Action – BEQ Project)

108.    The allegations contained in Paragraphs 1 through 9 and 97 through 107 above are incorporated by reference as though fully set forth herein.

109.    This is an action against Defendants, Limbach Company, LLC, USF&G and AMMI on the labor and material payment bond provided by them for the BEQ Project (copy attached as **EXHIBIT K**). The labor and material payment bond is USF&G Bond Number SX9457 and AMMI Bond Number 3S077387.

110.    USM has complied with all conditions required under the aforesaid payment bond.

111.    USM last provided labor, materials and/or services for construction work on the BEQ Project within one year of the filing of this action.

112.    By letters dated June 2, 2004 (copy attached as **EXHIBIT L**) and June 15, 2004 (Copy attached as **EXHIBIT M**), USM notified Limbach Company, LLC, USF&G and AMMI that USM remained unpaid for BEQ HVAC Sub-Subcontract work performed and for labor, materials and/or services provided to the BEQ Project in the amount of $718,568.

113.    The current amount due and owing USM for work performed and for labor, materials and/or services provided to the BEQ Project, through May 31, 2004, pursuant to the BEQ HVAC Sub-Subcontract totals $718,568.

114.    Of this amount, Limbach has received payment from Coakley for the account of USM totaling in excess of $59,000.

115.    To date, despite demand, Limbach Company, LLC, USF&G and/or AMMI have not paid USM these outstanding amounts due and owing.

116.    Limbach Company, LLC, USF&G and AMMI are jointly and severally liable to USM for the claimed amount of $718,568, plus any additional damages for work performed after May 31, 2004, pursuant to the labor and material payment bond they have provided for the BEQ Project.

**WHEREFORE**, Plaintiff, United Sheet Metal, Inc. demands judgment against Defendants, Limbach Company, LLC, United States Fidelity and Guaranty Company and American Manufacturers Mutual Insurance Company, jointly and severally, in the amount of $718,568, plus any additional damages incurred after May 31, 2004, plus interest, together with such other and further relief as this Court may deem appropriate.

## COUNT XI
### (Restitution/Unjust Enrichment/Quantum Meruit – BEQ Project)

117.    The allegations contained in Paragraphs 1 through 9, 97 through 100 and 108 through 116 above are incorporated by reference as though fully set forth herein.

118.    This is an action, in the alternative, against Limbach and Limbach's payment bond sureties, USF&G and AMMI, for the unpaid value of labor, material and services provided by USM in connection with the BEQ Project, under the doctrines of restitution, unjust enrichment and quantum meruit, due to the material breach of the BEQ HVAC Sub-Subcontract agreement between the parties.

119.    The failure and refusal of Limbach to process payment to USM, for an amount in excess of $59,000, which Limbach has received from Coakley for the account of USM for contract and change work performed by USM on the BEQ Project constitutes a failure of consideration for the BEQ HVAC Sub-Subcontract and the change orders issued thereunder.  It also represents and unqualified and unjustified refusal by Limbach to comply with Limbach's BEQ HVAC Sub-Subcontract payment obligations, which has deprived USM of the benefit that USM justifiably expected in exchange for the work USM performed under the BEQ HVAC Sub-Subcontract.  As such, Limbach's failure to process payment is a breach so material and substantial in nature that it affects the very essence of the BEQ HVAC Sub-Subcontract, serving to defeat the object and purpose of the BEQ HVAC Sub-Subcontract agreement; constituting a repudiation and a material breach going to the very root of the BEQ HVAC Sub-Subcontract.  It also constitutes bad faith on the part of Limbach.

120.    Limbach's failure of consideration for the BEQ HVAC Sub-Subcontract and the change orders issued thereunder, as well as Limbach's material breaches of the

BEQ HVAC Sub-Subcontract conditions and obligations justify the rescission and nullification of the written BEQ HVAC Sub-Subcontract agreement and the change orders issued thereunder.

121.   Notwithstanding the rescission and nullification of the written BEQ HVAC Sub-Subcontract agreement, there still exists an implied contract for Limbach to pay USM in quantum meruit for the work performed and the labor, material and services provided in connection with the BEQ Project.  In this regard, USM performed valuable work and provided valuable labor, material and services for Limbach which Limbach accepted, used and enjoyed by way of receipt of payment from Coakley for the account of said work by USM.  Further Limbach fully understood and was under reasonable notice that USM expected to be paid for the work, labor, material, and services USM provided in connection with the BEQ Project.

122.   By failing to pay USM for the work, labor, material and services USM provided in connection with the BEQ Project, Limbach has been unjustly enriched at USM's expense and there exists circumstances such that in good conscience Limbach should make restitution for the full value of the unpaid work, labor, material and services USM provided in connection with the BEQ Project.

123.   The reasonable value of the unpaid work performed and labor, material and services provided by USM in connection with the BEQ Project is $718,568, through May 31, 2004.

124.   Under the doctrine of restitution, unjust enrichment and quantum meruit and pursuant to the terms of the payment bond provided by Limbach on which USF&G is a surety, Limbach and USF&G are jointly and severally liable for this unpaid value of

work performed and labor, material and services provided by USM in connection with the BEQ project.

WHEREFORE, Plaintiff, United Sheet Metal, Inc., demands judgment against Defendants, EFS XI, Inc. (d/b/a PBM Limbach Group, PBM Limbach Group – Mechanical and Limbach Company), Limbach Company, LLC, United States Fidelity and Guaranty Company and American Manufacturers Mutual Insurance Company, jointly and severally, in the amount of $718,568, plus any additional damages incurred after May 31, 2004, plus interest, together with such other and further relief as this Court may deem appropriate.

### COUNT XII
### (Constructive Trust – Limbach - BEQ Project)

125.    The allegations in paragraphs 1 through 9 and 97 through 123 above are incorporated by reference as if fully set forth herein.

126.    This is an action against Limbach under the doctrine of constructive trust.

127.    The funds received by Limbach from Coakley for the account of USM for work performed on the BEQ HVAC Sub-Subcontract are funds constructively held in trust by Limbach for USM

128.    Upon information from Coakley, the total amount of the constructive trust funds received by Limbach for USM is in excess of $59,000.  The failure and refusal of Limbach to pay USM for the account of work performed by USM constitutes a breach of constructive trust by Limbach.    Further, Limbach's action in this regard are unconscionable and in bad faith.

129.    Under the doctrine of constructive trust Limbach is liable to USM for all funds received by Limbach for the account of USM which Limbach has failed to pay USM and Limbach is required to account for all such funds.

**WHEREFORE**, Plaintiff, United Sheet Metal, Inc. demands:

(1)    That Defendants, EFS XI, Inc. (d/b/a PBM Limbach Group, PBM Limbach Group – Mechanical and Limbach Company) be made to account for all sums received by it from Coakley for the account of USM which have not been paid to USM; and

(2)    That judgment be entered against EFS XI, Inc. (d/b/a PBM Limbach Group, PBM Limbach Group – Mechanical and Limbach Company) for all such sums, plus interest, together with such other and further relief as this Court may deem appropriate.

Respectfully submitted,

**HUDDLES & JONES, P.C.**

BY: _____

Scott C. Hofer, Bar No. 483744
Overlook Center, Suite 304
5457 Twin Knolls Road
Columbia, Maryland 21045
(301) 621-4120

Counsel for Plaintiff,
United Sheet Metal, Inc.

Date: _____

31