UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES<br>f/u/b<br>UNITED SHEET METAL, INC.<br><br>Plaintiff,<br><br>v.<br><br>COAKLEY & WILLIAMS<br>CONSTRUCTION, INC., et al.<br><br>Defendants. | *<br><br>*<br><br>*<br><br>*<br><br>*<br><br>*<br><br>* |

Case No. 1:05cv01199
JUDGE: Reggie B. Walton

\* \* \* \* \* \* \* \* \* \* \* \*

## OPPOSITION TO MOTION TO DISMISS COUNT II OF COMPLAINT

Use Plaintiff, United Sheet Metal, Inc. ("USM"), by undersigned counsel, for its Opposition to Defendants Motion to Dismiss Count II of the Complaint states as follows:

## BACKGROUND

On June 17, 2005, USM filed a Complaint against Coakley & Williams Construction, Inc. ("Coakley") and American Home Assurance Company ("AHAC") (collectively, "Defendants"). In its Complaint, USM asserted two claims against Defendants. Count I is a Miller Act claim on the payment bond provided by AMAC and Coakley. Count II is a claim for restitution, unjust enrichment and quantum meruit for non-payment of work performed.

Coakley entered into a prime Contract with the United States (the "Prime Contract") to perform construction work on the BEQ Marine Barracks Annex and Support Facility for the Department of the Navy (the "BEQ Project") as the general contractor. *See* Complaint at ¶¶ 5 and 6. AHAC is the surety on a labor and material payment bond provided by Coakley. *See* Complaint at ¶ 3. The labor and material payment bond guaranteed payment for labor and materials provided by subcontractors and suppliers on the BEQ Project. *See* Complaint at ¶ 6.

Coakley entered into a subcontract (the "Mechanical Subcontract") with The PBM Limbach Group-Mechanical (now known as Limbach Company, LLC ("Limbach")) whereby Limbach was to perform the mechanical and related work for the BEQ Project, as required by the Prime Contract between Coakley and the United States. *See* Complaint at ¶ 7. Limbach entered into a sub-subcontract (the "HVAC Sub-Subcontract") with USM, whereby USM was to perform HVAC ductwork for the BEQ Project, as required by the Mechanical Subcontract and the Prime Contract. *See* Complaint at ¶ 8. Although an express contract does not exist between USM and Coakley, there still exists an implied contract for Coakley to pay USM in quantum meruit for the work performed and the labor, material and services provided in connection with the BEQ Project. *See* Complaint at ¶ 23.

<b><u>Legal Standard for a Motion to Dismiss</u></b>

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton,* 292 F.3d 235, 242 (D.C.Cir.2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams,* 348 F.3d 1033, 1040 (D.C.Cir.2003) (citing FED.R.CIV.P. 8(a)(2) and *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley,* 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sonoma N.A.,* 534 U.S. 506, 511-14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), or "plead law or match facts to every element of a

legal theory." *Krieger v. Fadely,* 211 F.3d 134, 136 (D.C.Cir.2000) (internal quotation marks and citation omitted).

Accordingly, "the accepted rule in every type of case" is that <u>a court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief</u>. *Warren v. District of Columbia,* 353 F.3d 36, 37 (D.C.Cir.2004); *Kingman Park,* 348 F.3d at 1040. Thus, in resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations-including mixed questions of law and fact-as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States,* 334 F.3d 61, 64, 67 (D.C.Cir.2003); *Holy Land Found. for Relief & Dev. v. Ashcroft,* 333 F.3d 156, 165 (D.C.Cir.2003); *Browning,* 292 F.3d at 242.

## **ARGUMENT**

**A.  USM has properly asserted a claim for unjust enrichment requiring restitution and for quantum meruit**

**1.  The Elements of Quantum Meruit, Unjust Enrichment, and Restitution**

"[Q]uantum meruit . . . rests on a contract implied in fact, that is, a contract inferred from the conduct of the parties." *Modern Electric, Inc. v. Ideal Electronic Security Co., Inc*., 81 F.3d 240, 246 (D.C. Cir. 1996). "This cause of action has four requirements: '1) valuable service rendered by the plaintiff; 2) for the person from whom recovery is sought; 3) which services were accepted and enjoyed by that person; and 4) under circumstances which reasonably notified the person that the plaintiff, in performing such services, expected to be paid.'" *Modern Electric*, 81 F.3d at 246 (citations omitted).

"Unjust enrichment . . . rests on a contract implied in law, that is, on the principle of quasi-contract. This . . . form of recovery is possible in the absence of any contract, actual or

implied in fact." *Modern Electric*, 81 F.3d at 247. "Unjust enrichment occurs when a person retains a benefit . . . which in justice and equity belongs to another." *Kramer Associates, inc. v. Ikan, Ltd.*, 2005 WL 3488452, * 5 (D.C. 2005) (internal quotations and citations omitted); *Modern Electric*, 81 F.3d at 247. "The party who retains the benefit is obliged to make restitution to the person who conferred the benefit if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for [the recipient] to retain it." *Kramer*, 2005 WL *5; *Modern Electric*, 81 F.3d at 247. "Recovery [in unjust enrichment] is thus available 'even though no intention of the parties to bind themselves contractually can be discerned.'" *Modern Electric*, 81 F.3d at 247.

**2.    The Facts Supporting Quantum Meruit, Unjust Enrichment, and Restitution**

The facts set forth in the Complaint, many of which are also set forth below, assert facts sufficient to prove a claim for quantum meruit and unjust enrichment for which restitution is necessary.

USM performed valuable work and provided valuable labor, material and services for Coakley, which Coakley accepted, used and enjoyed by way of receipt of payment for the account of said work by USM. *See* Complaint at ¶ 24. Coakley fully understood and was under reasonable notice that USM expected to be paid for the work, labor, materials and services USM provided in connection with the Project. *See* Complaint at ¶ 25. By failing to pay USM for the work, labor, materials and services USM provided in connection with the Project, Coakley has been unjustly enriched at USM's expense and there exist circumstances such that in good conscience Coakley should make restitution for the full value of the unpaid work, labor, materials and services USM provided in connection with the BEQ Project. *See* Complaint at ¶ 26.

The reasonable value of the unpaid work performed and labor, materials and services provided by USM in connection with the BEQ Project is $1,150,100.00. *See* Complaint at ¶ 27. Under the doctrines of restitution, unjust enrichment and quantum meruit and pursuant to the terms of the payment bond provided by Coakley on which AHAC is the surety, Coakley and AHAC are jointly and severally liable for this unpaid value of work performed and labor, materials and services provided by USM in connection with the Project. *See* Complaint at ¶ 28.

    **3.    Additional Legal Support for the Quantum Meruit Claim**

        **a.    USM may sue in quantum meruit as a separate cause of action from the Miller Act payment bond claim**

A sub-subcontractor, such as USM in this case, may pursue a claim for quantum meruit in addition to a claim on the payment bond. *Faerber Electric Company, Inc. v. Atlanta Tri-Com, Inc.*, 795 F. Supp. 240, 244 (N. D. Ill. 1992) ("The Miller Act, though, is not a sub-subcontractor's only remedy; it may also pursue any common law or equitable remedy against the prime contactor that may exist independent of the existence of a bond, such as the quantum meruit and equitable lien claims that plaintiffs make.").

In *Sunworks Division of Sun Collector Corp. v. Insurance Co. of North America*, 695 F.2d 455 (10th Cir. 1982), the United States Court of Appeals for the Tenth Circuit reversed the District Court's judgment of dismissal of a supplier's quantum meruit claim brought against the prime contractor and its surety. In *Sunworks*, the Army Corp of Engineers contracted with Fortec Constructors ("Fortec"), as general contractor, to construct an Armed Forces Reserve Center. *Id.* at 456. Fortec entered in a subcontract with Welco Mechanical Contractors ("Welco") in which Welco agreed to procure and install operative solar collectors. *Id.* Welco contracted with Sunworks to supply the solar collectors. *Id.* Sunworks delivered the solar

5

collectors, but Welco walked off the job before installing the collectors. *Id.* at 456-57. Fortec then hired another subcontractor to install them. *Id.* at 457.

After it failed to receive payment from Welco, Sunworks brought a Miller Act and quantum meruit claim against Fortec and its surety. *Id.* at 456. The district judge dismissed the action after a bench trial concluding Sunworks had failed to file timely notice of its claim as required under the Miller Act. *Id.* Although the district judge did not specifically address the quantum meruit claim, implicit in it decision was its conclusion that Sunworks had to recover under the Miller Act or not at all. *Id.* at 457. On appeal, the Tenth Circuit reversed the dismissal of the action and stated, "[r]ecovery under the Miller Act is not a supplier's exclusive remedy against a general contractor." *Id.* "[A] state law claim based on unjust enrichment may justify recovery from a general contractor wholly apart from the Miller Act." *Id.* at 458 (citations omitted). "This quasi-contractual obligation is created by the courts for reasons of justice and equity, notwithstanding the lack of any contractual relationship between the parties." *Id.* (citations omitted).

        **b.**    **USM may sue in quantum meruit under its Miller Act payment bond claim**

In addition to suing in quantum meruit under a separate cause of action from the Miller Act claim, USM may sue for quantum meruit damages under its Miller Act claim. USM's claim asserts, in part, entitlement for unpaid labor and material related to delay and change work performed on the BEQ Project.[1] Although these claims are based on work performed pursuant to the HVAC Sub-subcontract with Limbach, such claims may not come directly within the scope of the HVAC Sub-subcontract. Hence, these claims, depending on the fact finders determination of the scope of the HVAC Sub-subcontract and the evidence presented, may ultimately be

---

[1] USM is also seeking payment for unpaid labor and material for approved unpaid contract sums.

6

outside the scope of the HVAC Sub-subcontract and be converted to quantum meruit claims. As such, these claims may be for quantum meruit damages under the Miller Act claim.

In *Mariana v. Piracci Construction Co., Inc.*, 405 F. Supp. 904 (D. D.C. 1975), a subcontractor brought a claim for increased cost caused by delay which was not attributable to the subcontractor under its Miller Act claim against a prime contractor and its surety. *Id*. at 904-05. The surety claimed it was bound only to pay the amount specified in the subcontract for the work. *Id*. at 905. The United States District Court for the District of Columbia held "that a Miller Act surety is liable to a subcontractor for increased costs actually incurred due to delay for labor or material, to the extent such delay is not attributable to the subcontractor." *Id*. at 906. In support of its holding the Court stated:

> To deny relief would remit the use plaintiff to his remedy for breach of contract, and it was inadequacy of such a remedy in the context of federal construction projects that prompted the enactment of the Miller Act.
> . . . .
> Moreover, the Miller Act, like the mechanic's lien for which it substitutes, is premised on 'the equity in favor of those whose actual expenditure of work or utilization of material has enhanced the value of the property in question.' The essential principle upon which the mechanic's lien rests is that of unjust enrichment. Applying equitable considerations the Court finds that the expense of such beneficial and productive efforts be measured as of the time the work was actually performed. This accords with decisions under the Miller Act involving restitution or quantum meruit.
> . . . .
> In the Court's view, the proper test under the Miller Act is whether the claim for relief is based on actual expenditures for labor or materials utilized in the performance of the subcontract. Use plaintiff's cause of action is not defeated by such technical exercises as analyzing whether the claim arose within or without the contract or by determining if the added costs were indispensable to satisfactory contractual performance.

*Id.* at 906-07 (citations omitted).

While the Court, in *Mariana*, did not specifically state the claim brought by the subcontractor was a quantum meruit claim, the Court did apply quantum meruit principles to the Miller Act claim. Here, USM has brought a claim under the Miller Act for which it seeks payment for work it performed pursuant to the HVAC Sub-subcontract and, if found to be outside said contract, for such work on a quantum meruit/unjust enrichment/restitution theory. Consequently, Count II of USM's Complaint asserts an alternative claim for damages both as a separate cause of action from the Miller Act and as an alternative means of recovery under the Miller Act.

In *C.J.C., Inc. v. Western States Mechanical Contractors, Inc.*, 834 F.2d 1533 (10th Cir. 1987), subcontractors brought Miller Act actions against a prime contractor seeking contract and quantum meruit damages relating to their work in construction of a live fire range on an air force base. *Id.* at 1536. In *C.J.C.*, the Court stated, "[i]t is well established that an action in quantum meruit is available to a subcontractor to recover from a breaching contractor under the Miller Act." Id. at 1539 (citations omitted). The District Court had awarded the subcontractor quantum meruit damages for the work performed by the subcontractor both for work performed pursuant to the contract (the Court had determined the subcontractor had been improperly terminated) and for work performed outside the contract that had been covered by change order. Id. at 1541. The Court of Appeals for the Tenth Circuit upheld the District Court's ruling. Id.

Here, USM alleges it performed change work and extra work directed by Coakley and Limbach and seeks payment for such work. See Complaint at § 9. Payment for such change work, if found to be outside the HVAC Sub-subcontract, will be recoverable under a quantum meruit or unjust enrichment theory of recovery both as a separate cause of action or as an alternative means of recovery under the Miller Act payment bond.

Based on the foregoing, Count II of USM's Complaint should be sustained both as a separate cause of action and as an alternative claim for damages under the Miller Act.

**B.  Contrary to Defendants' claims, the sub-subcontract between USM and Limbach does not bar USM's quasi-contractual claims against Defendants**

Defendants claim Count II should be dismissed because USM has a contract with Limbach and is, therefore, precluded from maintaining an action based in quasi-contract against Coakley and AHAC.  Defendants cite several cases in the Motion to Dismiss which Defendants claim support its claims.  See Motion to Dismiss at pp. 3-4.

The first case Defendants cite in support of its argument for dismissal[2] is *Jefferson Construction Co. v. Bacon*, 283 F.2d 265 (1st Cir. 1960).  Defendants cite the *Jefferson Construction* case for the proposition that "it is well recognized that the Miller Act does not furnish a cause of action in quantum meruit in disregard or derogation of the provisions of an express contract."  See Motion to Dismiss at p. 3.

In *Jefferson Construction*, a sub-subcontractor brought suit under the Miller Act against a general contractor and its sureties and against the subcontractor with whom it had contracted on a government project.  *Id.* at 266.  The plaintiff then moved for summary judgment based on the allegations in the Complaint and an affidavit affirming the allegations.  *Id.*  The counter-affidavit was not considered because it was not based on personal knowledge.  *Id*. at 266-67.  The answer of the general contractor did not deny the allegations, but rather stated it was without sufficient information to form a belief, and therefore the plaintiff's allegations were deemed admitted for purposes of the summary judgment motion.  *Id.* at 266.  The District Court granted the motion for summary judgment.  *Id.* at 266.  On appeal, the Court of Appeals for the First Circuit reversed the judgment because the plaintiff had failed to allege, or assert by affidavit, compliance

---

[2] Defendants cite other cases in a legal standard paragraph.

9

with the sub-subcontract or performance of any conditions precedent. *Id*. at 267. The Court stated, "[t]he Miller Act does not substitute or furnish a cause of action on a quantum meruit in derogation of the provisions of an express contract." *Id*. at 267.

The *Jefferson Construction* case is of no value to this case because USM alleges it "performed and completed all contract and change work required on the Project and as directed by Coakley and/or Limbach." See Complaint at ¶ 12. Further, USM alleges "[a]ll conditions precedent for the filing of this action have been waived and/or satisfied and/or excused." See Complaint at ¶ 13. Consequently, USM's Complaint does not suffer from the same inadequacies as the complaint in *Jefferson Construction*.

Defendants also cite *Harkol v. Americo Construction Co*., 168 F. Supp. 760 (D. Mass. 1958), for the same proposition as they cite *Jefferson Construction*. See Motion to Dismiss at p. 3. In *Harkol*, a subcontractor sued a contractor and its surety under the Miller Act for quantum meruit. *Id.* at 760. The contractor had failed to pay the subcontractor progress payments and the subcontractor had informed the contractor that it would be unable to continue work unless progress payments were made. *Id*. Subcontractor, however, continued to complete contract work despite the failure to pay. *Id*. at 761. The Court found that the subcontractor had waived the breach by continuing performance. Id. at 761-762. Consequently, the Court held the subcontractor could not treat the contract as rescinded and recover in quantum meruit. *Id*.

*Harkol* does not apply to the facts of this case. Here, USM does not allege a total breach of contract by Defendants warranting rescission of the contract. Rather, <u>USM alleges there is no contract between itself and the Defendants thereby making quantum meruit appropriate</u>.

Defendants then cite *County Commissioners v. J. Roland Dashiell & Sons*, 747 A.2d 600, 607 (Md. 2000) for the proposition that "the laws of a majority of the states and federal courts,

10

which hold that quasi-contractual claims of unjust enrichment and quantum meruit are barred when there exists a valid contract governing the claims.  See Motion to Dismiss at p. 3.   In *J. Roland*, a general contractor brought suit against the county to recover on a theory of unjust enrichment, among other causes of action, because it retained funds as liquidated damages and failed to pay for extra work.   Id. at 601-02.  The Court stated, "the general rule is that no quasi-contractual claim can arise when a contract exists <u>between the parties</u> concerning the same subject matter on which the quasi-contractual claim rests." *Id*. at 607 (emphasis added).   The Court found that because there was an express contract between the county and the general contractor for the work in question, the recovery of money for work performed would be governed by the written contract between the parties. *Id*. at 609.

*J. Roland* is distinguishable from this case because there was a contract between the parties who were alleged to be parties to a quasi-contract.  In contrast, <u>in this case, there is no contract between the parties to this lawsuit</u>.  Rather, <u>Count II asserts a claim in restitution, unjust enrichment, and quantum meruit because there is no contract between USM and the Defendants</u>. Defendants, however, did receive the benefit of USM's work on the BEQ Project and, as a consequence, were unjustly enriched when they failed to pay for that work.

Defendants also cite *Bloomgarden v. Coyer*, 479 F.2d 201 (D.C. Cir. 1973) for the Court's statement, "[t]here is of course, no need to resort to [quasi contract] when the evidence sustains the existence of a true contract, either express or implied in fact." *Id*. at 210.  In *Bloomgarden*, plaintiff sued in quasi contract to recover a finder's fee for services leading to inauguration of an enterprise to develop property. *Id*. at 204.  The suit was based on the plaintiff having introduced the parties who later joined forces to develop property. *Id*. at 204.  The District Court granted defendants' motion for summary judgment on the grounds that plaintiff

11

had no expectation of personal reward for his efforts. *Id*. at 206. On appeal, the Court of Appeals for the District of Columbia upheld the judgment for the same reason. *Id*. The Court stated, "[l]ike the District Court, we are unable to perceive any factual basis upon which it could be asserted that, at the time he introduced the parties, Bloomgarden looked forward to any finder's fee for himself, as distinguished from a fee and future business for his company." Id. at 207.

The actual facts of *Bloomgarden* are not at all analogous to the facts of this case. The statement cited by Defendants regarding the situation where there is a contract between the parties is dicta because there was no contract between the parties in *Bloomgarden*. Furthermore, as discussed above, the statement cited by Defendants regarding the situation where there is a contract between the parties is distinguishable from this case <u>because there is no contract between the parties to this case</u>.

The *Sunworks* case (cited above) is most instructive here. The facts in *Sunworks* with respect to the various contractual relationships of the parties is the same as the facts in this case. Both in *Sunworks* and in this case, the party bringing suit did not have a contractual relationship with the prime contractor and its surety against whom it filed suit in quantum meruit, but it did have a contractual relationship with a subcontractor on the project. Notwithstanding the contractual relationship with the subcontractor, but not with the prime contractor and its surety, the Court in *Sunworks* recognized the validity of a quantum meruit/unjust enrichment/restitution claim brought against the prime contractor and its surety. There is absolutely no reference whatsoever in *Sunworks* that the contract with the subcontractor some how negated Sunworks' ability to bring a quantum meruit/unjust enrichment/restitution claim against the prime contractor

or its surety. Consequently, the Court should reject the Defendants' argument that this Court should so hold here.

## CONCLUSION

Based on the foregoing, the Motion to Dismiss Count II of Complaint should be denied.

Respectfully submitted,

Huddles Jones Sorteberg & Dachille, P.C.

BY:   /s/ Roger C. Jones
      Kenneth K. Sorteberg (Fed. Bar # 11995)
      John H. Michel (Fed. Bar # 27201)
      Roger C. Jones
      Nicole Lefcourt Campbell
      10211 Wincopin Circle, Suite 200
      Columbia, Maryland 21044
      301-621-4120

      Counsel for Plaintiff,
      United Sheet Metal, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of January, 2006, a copy of the foregoing Opposition to Motion to Dismiss was mailed, postage prepaid, to:

Owen J. Shean, Esquire
Wickwire Gavin, P.C.
8100 Boone Boulevard
Suite 700
Vienna, VA 22182
(703) 790-8750 (Telephone)
(703) 448-1767 (Facsimile

/s/ Roger C. Jones
Roger C. Jones

13