# UNITED STATED DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES f/u/b UNITED SHEET METAL, INC.       Plaintiff,       v. COAKLEY & WILLIAMS CONSTRUCTION, INC., et al.       Defendants. | Case No. 1:05cv01199 JUDGE: Reggie B. Walton |

## OPPOSITION TO MOTION TO STAY

Use Plaintiff, United Sheet Metal, Inc. ("USM"), by undersigned counsel, for its Opposition to Defendants Motion to Stay states as follows:

### PROCEDURAL AND FACTUAL BACKGROUND

On June 17, 2005, USM filed a Complaint against Coakley & Williams Construction, Inc. ("Coakley") and American Home Assurance Company ("AHAC") (collectively, "Defendants"). In its Complaint, USM asserted two claims against Defendants. Count I is a Miller Act claim on the payment bond issued by AMAC for Coakley on the BEQ Project. Count II is a claim for restitution, unjust enrichment and quantum meruit for non-payment of work performed on the BEQ Project. In their Motion to Stay, Defendants moved to stay Count I of the Complaint. Defendants also filed a Motion to Dismiss Count II of the Complaint which USM has opposed in a separate Opposition.

Coakley entered into a prime Contract with the United States (the "Prime Contract") to perform construction work on the BEQ Marine Barracks Annex and Support Facility for the Department of the Navy (the "BEQ Project") as the general contractor. *See* Complaint at ¶¶ 5

and 6. AHAC is the surety on a labor and material payment bond provided by Coakley. *See* Complaint at ¶ 3. The labor and material payment bond guaranteed payment for labor and materials provided by subcontractors and suppliers on the BEQ Project. *See* Complaint at ¶ 6. Coakley entered into a subcontract (the "Mechanical Subcontract") with The PBM Limbach Group-Mechanical (now known as Limbach Company, LLC ("Limbach") whereby Limbach was to perform the mechanical and related work for the BEQ Project, as required by the Prime Contract between Coakley and the United States. *See* Complaint at ¶ 7. Limbach entered into a sub-subcontract (the "HVAC Sub-Subcontract") with USM, whereby USM was to perform HVAC ductwork for the BEQ Project, as required by the Mechanical Subcontract and the Prime Contract. *See* Complaint at ¶ 8.

During the course of the Project, USM performed certain change work and extra work, pursuant to the directives of Coakley and Limbach. *See* Complaint at ¶ 9. To date, the unpaid value of change work performed totals $208,777. *Id.* These additional costs are part of the labor, materials and services USM provided to the Project. *Id.* In addition, during the course of the Project, USM's sub-subcontract work was impacted, delayed and accelerated due to causes beyond USM's control and for which USM was not responsible. *Id.* at ¶ 10. As a result of the impact, delay and acceleration experienced on the Project, USM incurred additional costs totaling $763,003 (as amended) for which USM submitted a claim. *Id.* These additional costs are part of the labor, materials and services USM provided to the Project. *Id.*

Further, during the course of the Project, retainage was withheld from USM's approved contract sums. *See* Complaint at ¶ 11. This retainage has now been paid by the Government to Coakley who, in turn, has paid Limbach withheld retainage. *Id.* Despite these facts, retainage in the amount of $155,825.20 continues to be withheld on USM for approved contract and change

work. *Id*. These unpaid contract sums are part of the labor, material and/or services USM provided to the Project. *Id*.

USM has performed and completed all contract and change work required on the Project and as directed by Coakley and/or Limbach. *See* Complaint at ¶ 12. Despite this fact, USM remains unpaid the sums as set forth above. Coakley and American are jointly and severally liable to USM for the claimed amount of $1,127,605.00 pursuant to the labor and material payment bond they have provided. *See* Complaint at ¶ 20.

## ARGUMENT

**A.    This action should not be stayed pending disposition of a District of Columbia Superior Court action against Limbach and its sureties**

Defendants argue this action should be stayed pending a District of Columbia Superior Court action brought by USM against Limbach and its sureties. The fact that USM is prosecuting its claims against Limbach and its sureties in a separate suit should not be used as the basis to stay this action.

On June 29, 2004, USM filed its lawsuit in D.C. Superior Court against Limbach, United States Fidelity and Guaranty Co. ("USF&G") and American Manufacturers Mutual Insurance Co. ("AMMI") and others. The case name is *United Sheet Metal, Inc. v. EFS XI, Inc., et al.*, Case No. 0004942-4 (the "Limbach Lawsuit"). In the Limbach Lawsuit, USM asserts breach of contract, payment bond, constructive trust and quantum meruit claims against Limbach and its sureties on three separate projects, one of which is the BEQ Project.

In their Motion to Stay, Defendants assert, "the same claims and causes of actions are involved" in the present case and in the Limbach Lawsuit. See Motion to Stay at p. 4. While the types of causes of action, *i.e.*, payment bond and quantum meruit, are asserted in both cases, the claims are not the same. First, different parties are involved in each lawsuit. Coakley and

3

<u>AHAC are not parties to the Limbach Lawsuit</u>.  There are different payment bonds involved in each suit with different principles.  In the Limbach Lawsuit, Limbach is the principle on payment bonds issued by USF&G and AMMI and in this lawsuit, Coakley is the principle on the payment bond issued by AHAC.

In their Motion to Stay, Defendants also assert, "The extent of Limbach's liability to USM – whether formally mediated between those parties or litigated in the state court action – determine what liability, if any, would exist against [Coakley] and [AHAC] on the Miller Bond claim."  See Motion to Stay at p. 5.  This assertion is incorrect.  The suit against Limbach involves Limbach's failure to pay USM.  While the suit against Coakley and AHAC involves Coakley and AHAC's failure to pay for work performed by USM.  While, in both lawsuits, the payments USM seeks are for work performed on the BEQ Project, Coakley's responsibility for paying USM does not directly parallel that of Limbach.

In the Limbach Lawsuit, Limbach states the reason it has failed to pay USM stems from the fact that Coakley has asserted backcharges against Limbach which Limbach claims is the responsibility of USM. The deposition of Chris Richardson, Limbach's project manager on the BEQ Project, was taken on August 29, 2005 (the "Richardson Deposition") in the Limbach Lawsuit.  Excerpts of the Richardson Deposition are attached hereto as **Exhibit 1**.  Mr. Richardson testified regarding the backcharges at his deposition. The following testimony was transcribed at Mr. Richardson's deposition:

```
5      Q.    Yes, that's what happens when you
 6 volunteer.  You mentioned you brought some
 7 documents today.  What were those documents?

                         . . . .

21 And the last document I brought with me is a
0013
 1 document that was issued or given to Limbach as a
 2 result of a meeting last Thursday with Coakley
```

4

```
 3 Williams regarding the project, and it's a
 4 summary of Coakley Williams' back charges on the
 5 project.
```

*See* Richarson Deposition at pp. 12 -13.

```
 8      Q.     We're going to make as Exhibit
 9 Number 90 this back charge list you got from
10 Coakley Williams on August 25th, 2005.
11             (Richardson Deposition Exhibit 90
12 marked for identification.)
```

*See* Richardson Deposition at p. 26. A copy of Exhibit 90 from the Richardson Deposition is attached hereto as **Exhibit 2**.

      Initially, Mr. Richardson testified he did not know whether Limbach or USM were responsible for the backcharges as listed on the letter received from Coakley. *See* Richardson Deposition at pp. 29-32. Later in his testimony, however, he testified Coakley had informed him that a portion of the backcharges were attributable to USM. That testimony is as follows:

```
 5      Q.     Has Coakley & Williams ever
 6 indicated a belief on their part that United
 7 Sheet Metal is responsible for some of these back
 8 charges that they have now or that they have
 9 asserted?
10      A.     They have.
11      Q.     What rationale do they give for
12 believing that United Sheet Metal can be
13 responsible for some of those?
14      A.     When we discussed the back charges
15 very generally, there was allegations that such
16 as the scheduling costs or the scheduling
17 consultant costs of having to resequence work as
18 a result of United Sheet Metal's performance.
19 Clean-up, the same thing, kind of all trades,
20 United Sheet Metal being one that, you know, of
21 many.
0160
 1      Q.     Can you think of any other reasons
 2 Coakley expressed to Limbach as to why United
 3 Sheet Metal could be responsible for some portion
 4 of these back charges?
 5      A.     Well, just a lot of sheet metal work
 6 wasn't completed until the 11th hour on the
 7 project. It was one of the major activities that
 8 was needed to get done at the finish. So they
```

```
 9 recall a lot of the work at the end being to
10 United's responsibility and they felt a lot of it
11 could have been done earlier instead of later.
12      Q.    And did they say that cost them
13 additional funds?
14      A.    They allege that it cost them
15 predominantly in drywall work, painting work,
16 finish work that had to -- work that followed
17 their work.
18      Q.    Did they say that work was
19 accelerated as a result?
20      A.    They did, they did say that.
```

See Richardson Deposition at pp. 159-60.

Mr. Richarson testified there are no other backcharges which Limbach intends to assess against USM on the BEQ Project. See Richardson Deposition at p. 47. Mr. Richardson also testified that any sums owed to USM are reduced to the extent USM is responsible for the backcharges being asserted by Coakley. That testimony is as follows:

```
13      Q.    And would you agree if you apply
14 that same 1.25 percent figure to what Limbach
15 considers United's current approved contract
16 value of $885,974, that the appropriate
17 percentage of retainage would be calculated in
18 that manner?
19            MR. CARNEY:  Objection.
20      A.    I believe the extent United has been
21 paid, to the extent they have, or has had monies
0042
 1 withheld to the extent they had, is the result of
 2 allegations by Coakley Williams of numerous back
 3 charges, mountainous back charges, a lot of which
 4 they allege were to United's performance.  And
 5 until last Thursday, we had not received any
 6 accounting of these alleged back charges.

                    . . . .

 8      Q.    If you take the open balance that we
 9 you testified about previously being $155,825.20,
10 that's the open balance on United's subcontract
11 based on approved contract value to date, and if
12 you subtract from that retainage calculated at
13 1.25 percent, or $11,074.68, would you agree the
14 open balance of United's subcontract less
15 retainage at 1.25 percent is $144,750.52?
16            MR. CARNEY:  Objection.
17      A.    I would agree less any liability to
18 any of the Coakley Williams back charges would be
```

6

```
19 to United Sheet Metal's account.
20      Q.    You would agree, wouldn't you, that
21 any of those liabilities to Coakley Williams have
0044
 1 yet to be liquidated or defined?
 2            MR. CARNEY:  Objection.
 3      A.    I would agree they have not been
 4 adequately defined.
```

See Richardson Deposition at pp. 41-44.

Limbach is not pursuing resolution of the propriety of the backcharges with Coakley in the Limbach Lawsuit as Coakley is not a party thereto. Coakley's corporate representative, Greg Harraka, was deposed on October 3, 2005 ("Harraka Deposition") in the Limbach Lawsuit. Copies of excerpts from the Harraka Deposition are attached hereto as **Exhibit 3**. Mr. Harraka testified about the backcharges asserted by Coakley against Limbach. See Harraka Deposition at pp. 150-76. In addition, he testified Limbach has not pursued resolution of the backcharges. See Harraka Deposition at pp. 194-95. <u>Thus, the resolution of the backcharge issue, and Coakley's ability to maintain those backcharges, will only be resolved in this lawsuit because Coakley is not a party to the D.C. Superior Court matter</u>. Further, until the Coakley backcharges are resolved, Limbach will continue to assert the backcharges in the Limbach lawsuit as a defense to their liability to USM. For these reasons, this lawsuit should continue because disposition of the Limbach Lawsuit will not fully resolve Coakley's liability to USM. If anything, this action should proceed on an expedited basis so the lack of a disposition on the backcharge issues will not be an impediment in the Limbach lawsuit.

## CONCLUSION

Based on the foregoing, the Motion to Stay should be denied.

Respectfully submitted,

Huddles Jones Sorteberg & Dachille, P.C.

BY: /s/ Roger C. Jones
Kenneth K. Sorteberg (Fed. Bar # 11995)
John H. Michel (Fed. Bar # 27201)
Roger C. Jones
Nicole Lefcourt Campbell
10211 Wincopin Circle, Suite 200
Columbia, Maryland 21044
301-621-4120

Counsel for Plaintiff,
United Sheet Metal, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of January, 2006, a copy of the foregoing Opposition to Motion to Stay was mailed, postage prepaid, to:

Owen J. Shean, Esquire
Wickwire Gavin, P.C.
8100 Boone Boulevard
Suite 700
Vienna, VA 22182
(703) 790-8750 (Telephone)
(703) 448-1767 (Facsimile

/s/ Roger C. Jones
Roger C. Jones