1

1          SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

2

3     UNITED SHEET METAL, INC.,   )

4              Plaintiff         )

5     vs.                         )

6                                 )

7     EFS XI, INC., et al.,      ) Case No.: 04ca004942

8              Defendants        )

9              -     -     -     -     -

10         The Deposition of **CHRISTOPHER NEIL**

11    **RICHARDSON** was taken on Monday, August 29, 2005,

12    commencing at 10:00 a.m., at The Offices of

13    Huddles Jones Sorteberg & Dachille, P.C., 5457

14    Twin Knolls Road, Suite 304, Columbia, Maryland,

15    before Melissa Gilcrest, RDR, CRR, Notary Public.

16              -     -     -     -     -

17         RIGLER & O'NEILL COURT REPORTERS, INC.

18              2225 Old Emmorton Road

19                   Suite 203

20         Bel Air, Maryland   21015-6123

21                (410) 515-5660

ORIGINAL

EXHIBIT

tabbies

1

RIGLER & O'NEILL COURT REPORTERS, INC.   (410) 515-5660

1    at Limbach that's involve with the BEQ project,

2    is that correct?

3        A.    I have been put in this position by

4    default.

5        Q.    Yes, that's what happens when you

6    volunteer.  You mentioned you brought some

7    documents today.  What were those documents?

8        A.    Today?

9        Q.    Yes.

10       A.    I brought our accounting system

11   subcontractor report for United Sheet Metal,

12   Limbach's invoice and payment history from our

13   accounting system for the project, I brought a

14   copy of our change order proceed order log for

15   the project.  I have also brought, which was an

16   abbreviated proceed order change order log that

17   had been forwarded to Coakley Williams as a

18   matter of trying to close out open items.

19       Q.    Good.

20       A.    It's based upon the fuller version.

21   And the last document I brought with me is a

1  document that was issued or given to Limbach as a

2  result of a meeting last Thursday with Coakley

3  Williams regarding the project, and it's a

4  summary of Coakley Williams' back charges on the

5  project.

6      Q.      Sooner or later I knew it was going

7  to come to that.  If for any reason you want to

8  talk about those documents, we might even make

9  them an exhibit.  But let's begin by you telling

10  me what was the outcome of the meeting last

11  Thursday?  Mr. Forti told us in his deposition

12  you were going to attend this meeting with

13  Mr. Harraka.

14      A.      Harraka.

15      Q.      Right.

16      A.      We attended a meeting last week with

17  Greg Harraka, who is the executive vice

18  president, I guess that's his title over the

19  project, and David Woodward, who was the project

20  manager over the project.

21              We reviewed the abbreviated proceed

1          A.      That's correct.

2          Q.      When you closed that project out,

3    were there any back charges similar in nature to

4    the back charges you've now received on the BEQ

5    project?

6          A.      I don't recall.  I didn't close it

7    out, so I'm unsure of whether or not any existed.

8          Q.      We're going to make as Exhibit

9    Number 90 this back charge list you got from

10   Coakley Williams on August 25th, 2005.

11              (Richardson Deposition Exhibit 90

12   marked for identification.)

13         Q.      The first charge on this list says

14   including, but not limited to the following.  Did

15   they indicate there was anything else in the

16   pipeline they were going to send you the bill

17   for?

18         A.      I got the feeling the possibility

19   existed.

20         Q.      What else do you think they have up

21   their sleeve?

29

```
1               MR. CARNEY:  Objection.
2        Q.     You can answer.
3        A.     I do not.
4        Q.     Do you believe Coakley & Williams is
5   responsible for these costs?
6               MR. CARNEY:  Objection.
7        A.     When you say Coakley Williams.
8        Q.     I'm sorry, I meant to say Limbach.
9   Do you believe Limbach is responsible for these
10  costs?
11              MR. CARNEY:  Objection.
12       A.     I'm unsure of whether or not they
13  would belong to Limbach.
14       Q.     Do you believe any of these costs
15  belong to United Sheet Metal?
16       A.     I do not know.
17       Q.     The second line item is for clean-up
18  cost from PJ Services in the amount of $31,874.
19  Do you understand why Coakley & Williams believes
20  Limbach is responsible for these costs?
21              MR. CARNEY:  Objection.
```

30

1       A.      I do not.

2       Q.      Do you believe Limbach is

3    responsible for these costs?

4               MR. CARNEY:  Objection.

5       A.      I have no idea.

6       Q.      Do you believe United Sheet Metal is

7    responsible for any of these costs?

8       A.      I have no idea.

9       Q.      Okay.  The next line item is

10   additional project clean-up safety labor costs in

11   the amount of $127,402.  Do you understand why

12   Coakley & Williams believes Limbach is

13   responsible for these costs?

14              MR. CARNEY:  Objection.

15      A.      I do not.

16      Q.      Do you believe Limbach is

17   responsible for these costs?

18              MR. CARNEY:  Objection.

19      A.      I am unsure of that.

20      Q.      Do you believe United Sheet Metal is

21   responsible for any of these costs?

1          A.        I do not know.

2          Q.        It's curious that on the additional

3     project clean-up costs, they've multiplied their

4     cost overrun by 30 percent instead of 40 percent,

5     as they did for the extended general condition

6     costs.  Do you know why?

7          A.        I do not.

8          Q.        We've already talked about the

9     extended general conditions costs, but let me

10    just understand, do you believe Limbach is

11    responsible for the extended general conditions

12    costs?

13               MR. CARNEY:   Objection.

14         A.        Do I believe?  I do not know.

15         Q.        Do you believe United Sheet Metal is

16    responsible for these costs?

17         A.        I do not know.

18         Q.        The remaining items on this list,

19    12 -- excuse me, 5 through 16, do you understand

20    on any of these items why Coakley & Williams

21    believes Limbach is responsible for these back

1    charge items?

2        A.        I do not.

3        Q.        On any of these items, 5 through 16,

4    do you believe Limbach is responsible for these

5    back charge items?

6                  MR. CARNEY:   Objection.

7        A.        I do not know.

8        Q.        On any of these items 5 through 16,

9    do you believe United Sheet Metal is responsible

10   for any of these back charge costs?

11       A.        I do not know.

12       Q.        What is Limbach going to do to

13   contest these charges?

14       A.        At a follow-up meeting, when we have

15   it, we will obviously be requesting additional

16   clarification upon why it is that these would be

17   to Limbach's account.

18       Q.        Did they provide to you any

19   accounting substantiation documents for these

20   back charges?

21       A.        Not at the meeting.

41

1    your -- excuse me, 92, which is your payment

2    accounting history, Coakley Williams, it looks

3    like there is some handwritten notes down there

4    that show total receipts versus the contract

5    amount through change order 6 is about 98.76

6    percent.

7        A.    That's correct.

8        Q.    Would that indicate to you that the

9    hundred thousand dollars that Coakley has still

10   withheld represents retainage of approximately

11   1.25 percent?

12       A.    I would agree to that.

13       Q.    And would you agree if you apply

14   that same 1.25 percent figure to what Limbach

15   considers United's current approved contract

16   value of $885,974, that the appropriate

17   percentage of retainage would be calculated in

18   that manner?

19            MR. CARNEY:  Objection.

20       A.    I believe the extent United has been

21   paid, to the extent they have, or has had monies

1    withheld to the extent they had, is the result of

2    allegations by Coakley Williams of numerous back

3    charges, mountainous back charges, a lot of which

4    they allege were to United's performance.  And

5    until last Thursday, we had not received any

6    accounting of these alleged back charges.

7           Q.     And when they gave you these back

8    charges on August 25th, they didn't indicate or

9    break down which of these back charges they felt

10   or how much of these back charges they felt

11   United was responsible for, did they?

12          A.     They did not.

13          Q.     Well, if I just do the math and

14   multiply 1.25 times United's current contract

15   value of $885,974, based on that calculation, the

16   retainage would be $11,074.68, do you agree?

17                 MR. CARNEY:  Objection.

18          A.     I would agree if you were to

19   calculate it that way, yes.

20          Q.     So if you were to take the open

21   balance on United's approved contract value of

1    $155,825.20 and you subtract that from, you

2    subtract the calculated retainage of 1.25

3    percent, would you agree the open balance less

4    retainage calculated at 1.25 percent is

5    $144,750.52?

6              MR. CARNEY:  Objection.

7         A.    I'm sorry, could you ask that again?

8         Q.    If you take the open balance that we

9    you testified about previously being $155,825.20,

10   that's the open balance on United's subcontract

11   based on approved contract value to date, and if

12   you subtract from that retainage calculated at

13   1.25 percent, or $11,074.68, would you agree the

14   open balance of United's subcontract less

15   retainage at 1.25 percent is $144,750.52?

16             MR. CARNEY:  Objection.

17        A.    I would agree less any liability to

18   any of the Coakley Williams back charges would be

19   to United Sheet Metal's account.

20        Q.    You would agree, wouldn't you, that

21   any of those liabilities to Coakley Williams have

44

1   yet to be liquidated or defined?

2              MR. CARNEY:  Objection.

3        A.     I would agree they have not been

4   adequately defined.

5        Q.     When I calculate the open balance on

6   United's approved contract value of $885,974, it

7   comes up with a withholding of approximately 17.6

8   percent.  Has Limbach held retainage on other

9   subs?

10       A.     Yes.

11       Q.     Is the retainage that Limbach has

12   held on other subs approximately 17.6 percent?

13             MR. CARNEY:  Objection.

14       A.     I would have to investigate that.  I

15   do not know that at this time.

16       Q.     Has Limbach released retainage

17   payments to other subs?

18       A.     I'm not sure.  I know we're still

19   withholding retainage on a number of subs.

20       Q.     Has Limbach been sued by any of the

21   subs on the BEQ project?

47

1    guess, received changes from the owner for, and

2    then a couple for which involved back charges

3    against United.  What I'm trying to find out is

4    do similar types of internal changes exist on the

5    BEQ project that you're aware of?

6         A.      None that I'm aware of.

7         Q.      Are there any back charges other

8    than these Coakley & Williams back charges that

9    Limbach intends to assess against United on the

10   BEQ project?

11        A.      None that I'm aware of at this time.

12        Q.     I'm going to make Exhibit 93 to your

13   deposition the PBM proposed change log, which I

14   understand is the abbreviated version.

15              (Richardson Deposition Exhibit 93

16   marked for identification.)

17        Q.      We're going to make Exhibit 94 to

18   your deposition a package of pending United

19   change orders that were transmitted to you on May

20   4th, 2005.

21              (Richardson Deposition Exhibit 94

159

1           A.        I provided it to Mike Forti.

2           Q.        And about when did this dispute

3     arise?

4           A.        I don't recall.  Sometime ago.

5           Q.        Has Coakley & Williams ever

6     indicated a belief on their part that United

7     Sheet Metal is responsible for some of these back

8     charges that they have now or that they have

9     asserted?

10          A.        They have.

11          Q.        What rationale do they give for

12    believing that United Sheet Metal can be

13    responsible for some of those?

14          A.        When we discussed the back charges

15    very generally, there was allegations that such

16    as the scheduling costs or the scheduling

17    consultant costs of having to resequence work as

18    a result of United Sheet Metal's performance.

19    Clean-up, the same thing, kind of all trades,

20    United Sheet Metal being one that, you know, of

21    many.

160

1          Q.      Can you think of any other reasons

2    Coakley expressed to Limbach as to why United

3    Sheet Metal could be responsible for some portion

4    of these back charges?

5          A.      Well, just a lot of sheet metal work

6    wasn't completed until the 11th hour on the

7    project.  It was one of the major activities that

8    was needed to get done at the finish.  So they

9    recall a lot of the work at the end being to

10   United's responsibility and they felt a lot of it

11   could have been done earlier instead of later.

12         Q.      And did they say that cost them

13   additional funds?

14         A.      They allege that it cost them

15   predominantly in drywall work, painting work,

16   finish work that had to -- work that followed

17   their work.

18         Q.      Did they say that work was

19   accelerated as a result?

20         A.      They did, they did say that.

21         Q.      Earlier today, Mr. Jones asked you a