## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>for the use and benefit of<br>UNITED SHEET METAL, INC. | )<br>)<br>)<br>) |
| **Plaintiff,** | )<br>) |
| *v.* | )<br>) |
| COAKLEY & WILLIAMS<br>CONSTRUCTION, INC. | )<br>)<br>) |
| and | )<br>) |
| AMERICAN HOME ASSURANCE CO. | )<br>) |
| **Defendants.** | )<br>) |
| ———————————————— | )<br>) |
| COAKLEY & WILLIAMS<br>CONSTRUCTION, INC. | )<br>)<br>) |
| **Defendant/Third-Party Plaintiff,** | )<br>) |
| *v.* | )<br>) |
| PBM LIMBACH GROUP—MECHANICAL,<br>*(d/b/a* LIMBACH COMPANY, LLC)<br>4 Northshore Center<br>Pittsburg, Pennsylvania 15212 | )<br>)<br>)<br>)<br>) |
| **SERVE:**<br>**CT Corporation**<br>**1015 15th Street, NW**<br>**Suite 100**<br>**Washington, D.C. 20005** | )<br>)<br>)<br>)<br>)<br>) |
| and | )<br>) |

Case No.: 1:05CV01199
Judge: Reggie B. Walton

| | |
|---|---|
| **UNITED STATES FIDELITY AND** | ) |
| **GUARANTY COMPANY** | ) |
| **385 Washington Street** | ) |
| **St. Paul, Minnesota 55102** | ) |
| | ) |
|     **SERVE:** | ) |
|     **Insurance Commissioner** | ) |
|     **810 1st Street, N.W., Suite 701** | ) |
|     **Washington, D.C. 20002** | ) |
| | ) |
| **and** | ) |
| | ) |
| **AMERICAN MANUFACTURERS** | ) |
| **MUTUAL INSURANCE COMPANY** | ) |
| **1 Kemper Drive** | ) |
| **Long Grove, Illinois 60049-0001** | ) |
| | ) |
|     **SERVE:** | ) |
|     **Insurance Commissioner** | ) |
|     **810 1st Street, N.W.** | ) |
|     **Suite 701** | ) |
|     **Washington, D.C. 20002** | ) |
| | ) |
|     **Third-Party Defendants.** | ) |

## DEFENDANT'S THIRD PARTY COMPLAINT

Third-Party Plaintiff Coakley & Williams Construction, Inc. ("Coakley & Williams")

files this third-party complaint pursuant to Rule 14(a), Federal Rules of Civil Procedure, within

ten days after serving its Answer, Motion to Dismiss, and Motion to Stay the Complaint filed by

Plaintiff United States of America, for the use and benefit for, United Sheet Metal, Inc. (the

"USM Complaint").

## PARTIES TO THE THIRD-PARTY COMPLAINT

1.      Coakley & Williams is a Maryland corporation with a principal place of business

in Greenbelt, Maryland, engaged in the business of general building contracting.

2.      Upon information and belief, third-party defendant PBM Limbach Group—Mechanical ("Limbach") is a Virginia corporation, with its principal place of business located in Fairfax, Virginia, engaged in the business of mechanical contracting. Limbach is subject to the jurisdiction of this Court.

3.      Upon information and belief, third-party defendant PBM Limbach Group—Mechanical is now operating as Limbach Company LLC ("Limbach"), a Delaware corporation with its principal place of business located Pittsburg, Pennsylvania. Limbach is subject to the jurisdiction of this Court.

4.      Upon information and belief third-party defendant surety United States Fidelity and Guaranty Company ("USF&G") is a Maryland Corporation with its principal place of business in St. Paul, Minnesota. USF&G is subject to the jurisdiction of this Court.

5.      Upon information and belief third-party defendant surety American Manufacturers Mutual Insurance Company ("AMMIC") is an Illinois corporation with its principal place of business in Long Grove, Illinois. AMMIC is subject to the jurisdiction of this Court.

## JURISDICTION AND VENUE

6.      Limbach contracted with Coakley & Williams to provide labor, materials and supplies to the project known as the BEQ Marine Barracks Annex and Support Facility ("Project") located in the District of Columbia, subjecting Limbach to the jurisdiction of this Court.

7.      Jurisdiction and venue are proper based on Rules 14(a) and 4(k)(1)(B), Federal Rules of Civil Procedure, and 28 U.S.C. § 1367(a).

3

8.    By virtue of the contractual payment obligations with Coakley & Williams, Limbach obligated itself to indemnify Coakley & Williams for any amounts paid by Coakley & Williams or its surety to any of Limbach's subcontractors, including USM, subjecting Limbach to the jurisdiction of this Court.

9.    USF&G and AMMIC (the "Limbach Sureties") obligated themselves under a payment bond for the payment of Limbach's subcontractor's and suppliers, subjecting each of the sureties to the jurisdiction of this Court.

## FACTUAL ALLEGATIONS

### A.    The Prime Contract

10.    On or about September 26, 2001, Coakley & Williams was awarded a design/build contract with the Department of the Navy to construct the Marine Barracks and Band Support Facility (the "Prime Contract" for the "Project") located in the District of Columbia.

### B.    The Subcontract Between Coakley & Williams and Limbach

11.    On or about June 6, 2002, Coakley & Williams and Limbach entered into a subcontract agreement for Limbach to provide plumbing and mechanical design and construction services for the Project (the "Subcontract").

12.    Under Paragraph 2.3.1 of the Subcontract, Limbach was required to supervise and direct the work, using its best skill and attention.

13.    Under Paragraph 4.1 of the Subcontract, Limbach was required to provide labor, materials, equipment and services consistent with reasonable skill and care and the orderly progress of the work.

4

14.     Under Paragraph 4.4 of the Subcontract, Limbach was required to prepare and submit a Project schedule, which provided for the expeditious and practicable execution of the work.

15.     Pursuant to Paragraph 2.4.3 of the Addendum 1 to the Subcontract, all of Limbach's work was to be performed in accordance with Coakley & Williams' schedule.

16.     Addendum 5 to the Subcontract required Limbach to complete their work in a timely manner so as to allow the completion of all work by other contractors within the project duration or earlier at the direction of Coakley & Williams.

17.     Under Paragraph 5.1 of Addendum 1 to the Subcontract, payment to Limbach was expressly conditional on payment from the Project owner.

18.     Under Paragraph 5.2 of the Subcontract, Coakley & Williams was entitled to withhold payments to Limbach for numerous reasons, including but not limited to, defective work not remedied, third-party claims, and failure of Limbach to pay its subcontractors.

19.     Under Paragraph 5.3.3 of the Subcontract, an application for payment submitted by Limbach to Coakley & Williams constituted a representation that construction of the work had progressed to the point indicated, that the quality of the work was in accordance with the contract documents, and that Limbach was entitled to the payment in the amount requested.

20.     The Subcontract required Limbach to pay each of its subcontractors from sums paid by Coakley & Williams in the amount to which the subcontractor was entitled for work performed.  Paragraph 5.3.4 provides as follows:

>       Upon receipt of payment from [Coakley & Williams], [Limbach]
>       shall pay each Subcontractor, out of the amount paid to [Limbach]
>       on account of such Subcontractor's work, the amount to which said
>       Subcontractor is entitled.

21.     Under Paragraph 5.3.5 of the Subcontract, Coakley & Williams "shall have no obligation to pay or to be responsible in any way for the payment of moneys to a Subcontractor."

22.     Under Paragraph 5.3.7 of the Subcontract, Limbach warranted that all work, materials and equipment covered by a previous application for payment "are free and clear of liens, claims, security interests or encumbrances. . . ."

23.     Throughout project performance, Limbach submitted to Coakley & Williams various applications for payment for work performed by itself and its subcontractors.  For the periods of October 2002 through September 2004, Limbach submitted Partial General Release and Waiver of Lien documents with its applications for payment.

24.     In a Partial General Release and Waiver of Lien dated September 15, 2004 ("Limbach Release"), Limbach certified that it had received payment in the total amount of $7,565,157.00 for work performed or materials supplied  through June 30, 2004. (A copy is attached as Exhibit 1).

25.     Under the provisions of the Limbach Release, Limbach released and discharged the Project owner, Coakley & Williams and Coakley & Williams' surety "from all causes of actions, suits, debts, liens, damages, claims and demands whatsoever in law or in equity" for work performed or materials supplied through June 30, 2004. (Exhibit 1, ¶ 2).

26.     Under the provisions of Limbach Release, Limbach certified and represented that "all persons, firms or corporations who have supplied labor and/or materials to [Limbach], or at the order of [Limbach], in relation to the construction of the Building(s) have been paid their respective portion of the payment." (Exhibit 1, ¶ 3).

6

27.    Under the provisions of the Subcontract, Limbach was required to provide a payment bond in the amount of the Contract Sum or Seven Million Dollars ($7,000,000), which covered the payment of all obligations under the Subcontract.

**C.    The Sub-subcontract Between Limbach and USM**

28.    On information and belief, on or about August 27, 2002, Limbach entered into a subcontract agreement with United Sheet Metal ("USM") to provide ductwork and related appurtenances for the Project (the "Sub-subcontract").

29.    Under Article 2 of the Sub-subcontract, USM is contractually required to submit any non-payment claims directly to Limbach.

**D.    The Limbach Payment Bond**

30.    Pursuant to its obligations under the Subcontract with Coakley & Williams, Limbach provided a payment bond in the amount of $7,000,000 (the "Limbach Bond").  (A copy is attached as Exhibit 2).   The payment bond issued by the Sureties, USF&G Bond No. SX9457 and AMMIC Bond No. 3S077387, obligated Limbach and the Sureties to pay Limbach's subcontractors.

31.    Under the terms of the Limbach Bond, Limbach, USF&G and AMMI agreed to jointly and severally bind themselves "to [Coakley & Williams] to pay for the labor, materials and equipment furnished for the use in the performance of the Construction Contract, which is incorporated herein by reference."

**E.    Project Performance and Disputes**

32.    During project performance, Limbach failed to meet its contractual obligations, including but not limited to the following: failed to prosecute the work in a timely manner, failed

7

to sequence its work as directed by the Project's schedule, failed to prosecute the work in accordance with the Project documents, failed to meet its own commissioning schedule for the HVAC work, and failed to maintain a clean and orderly work area while performing the Subcontract work.

33.    As a result of Limbach's breaches of contract, Coakley & Williams was required to expend additional time and labor, including but not limited to performing additional painting and re-drywalling on the Project.

34.    As a result of Limbach's breaches of contract, Coakley & Williams was required to pay for the additional time and labor of other subcontractors, materials, and extended general conditions.

35.    Coakley & Williams paid Limbach for amounts due and owing for work and services performed under the Subcontract.

36.    According to the allegations in USM's Complaint, despite receiving payment from Coakley & Williams, Limbach failed to pay USM for work allegedly performed by USM.

37.    On or about June 29, 2004, USM filed a lawsuit in the D.C. Superior Court against Limbach, USF&G, AMMI and others, in a case styled *United Sheet Metal, Inc. v. EFS XI, Inc. (d/b/a PBM Limbach Group, PBM Limbach Group-Mechanical and Limbach Company), Limbach Company LLC, et al.*, Case No. 0004942-4 (the "State Litigation").

38.    In the State Litigation, as well as the current Federal action, USM alleged that it substantially performed all work required under the Sub-subcontract with Limbach.

39.     In the State Litigation, as well as the current Federal action, USM alleged that despite its substantial performance of the work Limbach failed to pay USM $718,568 for work performed, including change orders and extra work.

40.     In the State Litigation, USM also alleged that Coakley & Williams paid to Limbach in excess of $59,000, which Limbach failed to pay USM.

41.     USM's allegations in the State Litigation and the current Federal action regarding Limbach's failure to pay USM, if true, constitute a material breach of Limbach's Subcontract with Coakley & Williams.

42.     By virtue of its payment obligations of the Subcontract and its affirmative representations in its partial release and lien waiver documents, Limbach remains obligated to Coakley & Williams for any and all amounts claimed by USM and found to be due and owing against Coakley & Williams or Coakley & Williams' surety for work performed or materials supplied by USM.

43.     All conditions, including any conditions precedent, for the filing of this third-party complaint against Limbach have been waived and/or satisfied and/or excused.

44.     The Limbach Bond obligates the USF&G and AMMIC to pay for labor materials and equipment furnished in the performance of the Subcontract in the event that Limbach fails to make prompt payment and fails to indemnify Coakley & Williams.

45.     All conditions, including any conditions precedent, for the filing of this third-party complaint against the Limbach Sureties have been waived and/or satisfied and/or excused.

46.     Despite requests to do so, Limbach, USF&G and AMMIC have not taken any action to indemnify Coakley & Williams or to compensate Coakley & Williams for its damages.

**Count I**
**Breach of Contract against Limbach**
**Failure to Pay**

47.     Coakley & Williams incorporates by reference Paragraphs 1-46 as if fully set forth herein.

48.     USM has alleged that it performed all its work under the Sub-subcontract, yet has not been paid by Limbach for that work performed.

49.     If established that Limbach did not pay USM amounts due for work performed under the Sub-subcontract agreement, such nonpayment by Limbach is a material breach of the Subcontract with Coakley & Williams, which requires prompt payment of Limbach's subcontractors.

50.     If established that Limbach did not pay USM amounts that had been already paid by Coakley & Williams for work performed under the Sub-subcontract agreement, such nonpayment by Limbach is a breach of the Subcontract with Coakley & Williams, which requires prompt payment of Limbach's subcontractors.

51.     USM also alleges that Limbach has been paid retainage once held by Coakley & Williams and relating to USM's Sub-subcontract work.

52.     If established that Limbach did not pay USM retainage released by Coakley & Williams attributable to work under the Sub-subcontract agreement, such nonpayment of retainage by Limbach is a breach of the Subcontract with Coakley & Williams which requires prompt release of these funds to Limbach's subcontractors.

**WHEREFORE**, Third-Party Plaintiff Coakley & Williams demands judgment against Third-Party Defendant Limbach in the amount judged due and owing against Coakley &

10

Williams or its surety on the claims asserted by Plaintiff United Sheet Metal, plus attorneys fees, costs and interest, together with such further relief this Court may deem just and proper.

<u>**Count II**</u>
**Breach of Contract against Limbach**
**Failure to Indemnify**

53.     Coakley & Williams incorporates by reference Paragraphs 1-52 as if fully set forth herein.

54.     By virtue of its payment obligations of the Subcontract and its affirmative representations in its partial release and lien waiver documents, Limbach is obligated to Coakley & Williams for any and all amounts claimed by USM and found to be due and owing against Coakley & Williams or Coakley & Williams' surety for work performed or materials supplied by USM.

55.     Despite demands to do so, Limbach has taken no action to indemnify, protect, or hold harmless Coakley & Williams from the claims of USM, all of which arise out of the performance of the work of the Project.

56.     Limbach's failure to act is contrary to Limbach's contractual duty to indemnify Coakley & Williams and has led to Coakley & Williams incurring attorney's fees and costs in answering the USM Complaint and in submitting appropriate motions to the Court.  Such costs will continue until resolution of the USM Complaint or until Limbach cures its ongoing breach.

**WHEREFORE**, Third Party Plaintiff, Coakley & Williams demands judgment against Third Party Defendant, Limbach, in the amount judged due and owing against Coakley & Williams or its surety on the claims asserted by Plaintiff United Sheet Metal, plus attorneys fees, costs and interest, together with such further relief this Court may deem just and proper.

11

## Count III
**Breach of Contract against Limbach**
**Failure to Perform**

57.    Coakley & Williams incorporates by reference Paragraphs 1-56 as if fully set forth herein.

58.    Under the terms of the Subcontract, Coakley & Williams is entitled to withhold payments from Limbach for numerous reasons, including but not limited to, defective work not remedied, third-party claims, and failure of Limbach to pay its subcontractors.

59.    Under the terms of the Subcontract, Limbach had a duty to perform the work in accordance with the contract documents, to prosecute the work in a timely manner, to sequence its work as directed by the Project's schedule, and to maintain a clean and orderly work area while performing the Subcontract work.

60.    Limbach failed to prosecute the work in a timely manner, failed to sequence its work as directed by the Project's schedule, failed to prosecute the work in accordance with the Project documents, failed to meet its own commissioning schedule for the HVAC work, and failed to maintain a clean and orderly work area while performing the Subcontract work.

61.    As a result of Limbach's breaches of contract, Coakley & Williams was required to expend additional time and labor, including but not limited to paying for the additional time and labor of other subcontractors, materials, and extended general conditions.

62.    Each of Limbach's failures constitutes to a material and ordinary breach of contract, which has caused Coakley & Williams to incur costs for labor, supervision, consultants, equipment, and material in excess of $500,000, with specific proof of these damages to be provided at trial.

WHEREFORE, Third-Party Plaintiff, Coakley & Williams demands judgment against Third-Party Defendant, Limbach, in the amount in excess of $500,000, plus attorneys fees, costs and interest, together with such further relief this Court may deem just and proper.

<u>Count IV</u>
**Bond Claim against USF&G and AMMIC**

63.    Coakley & Williams incorporates by reference Paragraphs 1-62 as if fully set forth herein

64.    Under the terms of the Limbach Bond, the Sureties are bound to Coakley & Williams to "pay for labor materials and equipment furnished for use in the performance of [the Subcontract]."

65.    The Sureties' obligation to pay Coakley & Williams arises when Limbach fails to pay for all sums due any payment bond claimants for labor, materials and equipment furnished for use in the performance of the Project, combined with the failure of Limbach to defend, indemnify and hold harmless Coakley & Williams from claims, demands or liens for the payment of labor, materials and equipments furnished by any sub-subcontracts.

66.    Under the terms of the Limbach Bond, a "Claimant" is an individual or entity having a direct contract with Limbach or with a subcontractor of Limbach to furnish labor, materials or equipment for use in the performance of the Project.

67.    The Sureties' obligation to pay a "Claimant" arises when Limbach fails to pay for all sums due any payment bond claimants for labor, materials and equipment furnished for use in the performance of the Project.

68.     USM has made a claim on the Limbach Bond in the State Litigation, alleging Limbach's failure to pay for sums due and owing for labor, materials and equipment furnished for use in the performance of the Project.

69.     In the State Litigation, as well as the current Federal action, USM alleged that it substantially performed all work required under the Sub-subcontract with Limbach.

70.     In the State Litigation, as well as the current Federal action, USM alleged that despite its substantial performance of the work and that Limbach failed to pay USM $718,568 for work performed, including change orders and extra work.

71.     Coakley & Williams has made a demand on USF&G and AMMIC for the protection and coverage under the Limbach Bond.

72.     Despite requests to do so, Limbach, USF&G and AMMIC have failed to defend, indemnify and hold harmless Coakley & Williams for the claims asserted by USM.

73.     USM's recovery against Coakley & Williams or its surety in the present action, if any, on account of the matters and things alleged in the Complaint was and should be the responsibility of the Third-Party Defendants USF&G and AMMIC.

74.     Under the terms of the Limbach Bond, Third-Party Defendants USF&G and AMMIC are or may be liable to Coakley & Williams for all or part of USM's claims against Coakley & Williams or its surety.

75.     If Coakley & Williams and/or its surety are compelled to pay damages to USM, then Coakley & Williams has and asserts a right to recover against Third-Party Defendants USF&G and AMMIC the amount of any recovery by USM.

**WHEREFORE**, Third-Party Plaintiff Coakley & Williams demands judgment against Third-Party Defendant Sureties in the amount judged due and owing against Coakley & Williams or its surety on the claims asserted by Plaintiff United Sheet Metal, plus attorneys fees, costs and interest, together with such further relief this Court may deem just and proper.

**DATED:** January 17, 2006.

Respectfully Submitted,


____/s/_____
Owen J. Shean (D.C. No. 412588)
Matthew J. DeVries (D.C. No. 479880)
WICKWIRE GAVIN, P.C.
8100 Boone Boulevard, Suite 700
Vienna, Virginia  22182
Tel: (703) 790-8750
Fax: (703) 448-1801
Email: mdevries@wickwire.com

*Counsel for Coakley & Williams*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Defendant Coakley & Williams' Third-Party Complaint was mailed on this 17th day of January, 2006 to:

Roger Jones, Esq.
Nicole Campbell, Esq.
HUDDLES JONES SORTEBERG
   & DACHILLE, P.C.
10211 Wincopin Circle, Suite 200
Columbia, Maryland 21044
Tel: (301) 621-4120
Fax: (301) 621-4473
***Counsel for United Sheet Metal***


_____/s/_____
Matthew J. DeVries

# *PARTIAL*

## General Release and Waiver of Lien

RECEIVED SEP 1 7 2004
COAKLEY & WILLIAMS CONSTRUCTION

Job Name: BEQ 8th & I ANNEX                              Job #: 11011006

Job Address: 7TH AVENUE                    WASHINGTON      DC

Subcontractor: 16032 THE PBM - LIMBACH GROUP

Contract Date: 101006P2   June 6, 2002

The Undersigned, for and in consideration of the payments made by Coakley & Williams Construction, Inc., ("the Company") to the undersigned (or to a subcontractor or supplier of the undersigned), for the labor employed in and/or materials furnished for the construction of the above referenced project pursuant to the above referenced contract, does hereby acknowledge:

1. The undersigned have received payment in the amount of $ ____7,565,157.00____ for all deliveries of material and/or for all work performed relating to the construction of the Building(s) through 30th day of ___June___, 20 04.

    EFA CHESAPEAKE

2. The undersigned does hereby forever release and discharge ____ ("The Owner"), the Company, the Surety, the Building(s) and the land upon which the Building(s) is located, from any and all causes of action, suits, debts, liens, damages, claims, and demands whatsoever in law or equity which the undersigned and/or its assigns ever had or may have, against the Owner, the Company, the Surety, the Building(s), and/or the land upon which the Building(s) is located, by reason of the delivery of materials and/or performance of work relating to the construction of the Building(s) through 30th day of ___June___, 20 04.

3. The undersigned does hereby certify that all persons, firms or corporations who have supplied labor and/or materials to the undersigned, or at the order of the undersigned, in relation to the construction of the Building(s) have been paid their respective portion of the payment.

4. The undersigned does hereby certify that neither final acceptance of the work by the Owner nor payment for the work by the Owner, shall release the subcontractor or supplier from obligations that arise from his negligence or the supplying of faulty materials or workmanship for the period(s) set forth in the Contract Documents.

IN WITNESS WHEREOF, the undersigned has executed this Release on the 15 day of September, 2004.

WITNESS OR ATTEST:                          COMPANY: Limbach Company LLC

By: _____                   By: Michael C. Forti

                                            Title: Branch Manager

Check #19451            $194,335.00

State of Maryland        County of Prince George's

Subscribed and sworn to me this 15 day of September, 2004.

Notary Public: _____

My Commission Expires: October 1, 2004                    (Seal)



EXHIBIT 1

FORM 690-1

# THE AMERICAN INSTITUTE OF ARCHITECTS



Bond No. US F& G Bond NO. SX9457
And Amer. Manuf. Bond No. 3S077387

AIA Document A312

# Payment Bond

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

CONTRACTOR (Name and Address):
**Limbach Company LLC**
**10110 Senate Drive**
**Lanham, MD 20706**

SURETY (Name and Principal Place of Business):
**United States Fidelity and Guaranty Company**
**385 Washington Street, St. Paul, MN 55102 and**
**American   Manufacturers   Mutual   Insurance**
**Company**
**1 Kemper Drive, Long Grove, IL  60049-0001**

OWNER (Name and Address):
**Coakley & Williams Construction, Inc.**
**16 S. Summit Avenue, Suite 300**
**Gaithersburg, MD  20877**

CONSTRUCTION CONTRACT
    Date:     **June 6, 2002**
    Amount:  **$ 7,000,000.00**
    Description (Name and Location):
        **MEP for the Marine Barracks Annex & Support Facility for the Marine Band**

BOND
    Date (Not earlier than Construction Contract Date): **January 2, 2003**
    Amount:  **$7,000,000.00**
    Modifications to this Bond:        [X] None        [ ] See Page 6

CONTRACTOR AS PRINCIPAL
Company:  **Limbach Company LLC**    (Corporate Seal)

SURETY
Company:  **United States Fidelity and**    (Corporate Seal)
**Guaranty  Company  and  American**
**Manufacturers    Mutual    Insurance**
**Company**

Signature: _____
Name and Title: Assistant Secretary

Signature: _____
Name and Title:  **Marjorie A. Altemus, Attorney-in-Fact**

(Any additional signatures appear on page 6)

*(FOR INFORMATION ONLY-Name, Address and Telephone)*
AGENT or BROKER:
**Marsh USA Inc.**
**Six PPG Place, Suite 300**
**Pittsburgh, PA  15222**
**(412) 552-5146**

OWNER'S REPRESENTATIVE (Architect, Engineer or other party):

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D. C. 20006
THIRD PRINTING • MARCH 1987
F889 Rev. 6/87

4



EXHIBIT
**2**

1. The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference.

2. With respect to the Owner, this obligation shall be null and void if the Contractor:

  2.1 Promptly makes payment, directly or indirectly, for all sums due Claimants, and

  2.2 Defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity whose claim, demand, lien or suit is for the payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, provided the Owner has promptly notified the Contractor and the Surety (at the address described in Paragraph 12) of any claims, demands, liens or suits and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety, and provided there is no Owner Default.

3. With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due.

4. The Surety shall have no obligation to Claimants under this Bond until:

  4.1 Claimants who are employed by or have a direct contract with the Contractor have given notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice' thereof, to the Owner, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.

  4.2 Claimants who do not have a direct contract with the Contractor:

    .1 Have furnished written notice to the Contractor and sent a copy, or notice thereof, to the Owner, within 90 days after having last performed labor or last furnished materials or equipment included in the claim stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed; and

    .2 Have either received a rejection in whole or in part from the Contractor, or not received within 30 days of furnishing the above notice any communication from the Contractor by which the Contractor has indicated the claim will be paid directly or indirectly; and

    .3 Not having been paid within the above 30 days, have sent a written notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and enclosing a copy of the previous written notice furnished to the Contractor.

5. If a notice required by Paragraph 4 is given by the Owner to the Contractor or to the Surety, that is sufficient compliance.

6. When the Claimant has satisfied the conditions of Paragraph 4, the Surety shall promptly and at the Surety's expense take the following actions:

  6.1 Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.

  6.2 Pay or arrange for payment of any undisputed amounts.

7. The Surety's total obligation shall not exceed the amount of this Bond, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

8. Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any Construction Performance Bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and the Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

9. The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligations to make payments, to give notices on behalf of, or otherwise have obligations to Claimants under this Bond.

10. The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

11. No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the work or part of the work is located or after the expiration of one year from the date (1) on which the Claimant gave the notice required by Subparagraph 4.1 or Clause 4.2.3, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

12. Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page. Actual receipt of notice by Surety, the Owner or the Contractor, however accomplished, shall be sufficient compliance as of the date received at the address shown on the signature page.

13. When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE ,N.W., WASHINGTON, D. C. 20006
THIRD PRINTING • MARCH 1987
F889 Rev. 6/87

5

Bond shall be construed as a statutory bond and not as a common law bond.

14. Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor shall promptly furnish a copy of this Bond or shall permit a copy to be made.

15. DEFINITIONS

    15.1 Claimant: An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Contract. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished,.

    15.2 Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

    15.3 Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: | (Corporate Seal) | Company: | (Corporate Seal) |
| | | | |
| Signature: _____ | | Signature: _____ | |
| Name and Title: | | Name and Title: | |
| Address: | | Address: | |

AIA DOCUMENT A312 · PERFORMANCE BOND AND PAYMENT BOND · DECEMBER 1984 ED · AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE.,N.W., WASHINGTON, D. C. 20006
THIRD PRINTING · MARCH 1987
F889 Rev. 6/37

6

# POWER OF ATTORNEY

**The St Paul**

Seaboard Surety Company
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company
St. Paul Mercury Insurance Company

United States Fidelity and Guaranty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.

Power of Attorney No. 22928

Certificate No. **1348995**

**KNOW ALL MEN BY THESE PRESENTS:** That Seaboard Surety Company is a corporation duly organized under the laws of the State of New York, and that St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company and St. Paul Mercury Insurance Company are corporations duly organized under the laws of the State of Minnesota, and that United States Fidelity and Guaranty Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc. is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

James L. Bly, Christine A. Hartung, Leslie L. Rudat, Pamela L. Nunez, Elena Zunic, Marjorie A. Altemus, Wendy A. Bright and Rosemarie Rodden

of the City of _____Pittsburgh_____, State _____Pennsylvania_____, their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign its name as surety to, and to execute, seal and acknowledge any and all bonds, undertakings, contracts and other written instruments in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF,** the Companies have caused this instrument to be signed and sealed this _____25th_____ day of _____January_____ 2002

Seaboard Surety Company
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company
St. Paul Mercury Insurance Company

United States Fidelity and Guaranty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.

*John F. Phinney*
JOHN F. PHINNEY, Vice President

*Thomas E. Huibregtse*
THOMAS E. HUIBREGTSE, Assistant Secretary

State of Maryland
City of Baltimore

On this _____25th_____ day of _____January_____ 2002, before me, the undersigned officer, personally appeared John F. Phinney and Thomas E. Huibregtse, who acknowledged themselves to be the Vice President and Assistant Secretary, respectively, of Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Company, and Fidelity and Guaranty Insurance Underwriters, Inc.; and that the seals affixed to the foregoing instrument are the corporate seals of said Companies; and that they, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the names of the corporations by themselves as duly authorized officers.

In Witness Whereof, I hereunto set my hand and official seal.

My Commission expires the 13th day of July, 2002.

*Rebecca Easley-Onokala*
REBECCA EASLEY-ONOKALA, Notary Public

86203 Rev. 7-2000 Printed in U.S.A.

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Boards of Directors of Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Company, and Fidelity and Guaranty Insurance Underwriters, Inc. on September 2, 1998, which resolutions are now in full force and effect, reading as follows:

RESOLVED, that in connection with the fidelity and surety insurance business of the Company, all bonds, undertakings, contracts and other instruments relating to said business may be signed, executed, and acknowledged by persons or entities appointed as Attorney(s)-in-Fact pursuant to a Power of Attorney issued in accordance with these resolutions. Said Power(s) of Attorney for and on behalf of the Company may and shall be executed in the name and on behalf of the Company, either by the Chairman, or the President, or any Vice President, or an Assistant Vice President, jointly with the Secretary or an Assistant Secretary, under their respective designations. The signature of such officers may be engraved, printed or lithographed. The signature of each of the foregoing officers and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Attorney(s)-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and subject to any limitations set forth therein, any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company, and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding upon the Company with respect to any bond or undertaking to which it is validly attached; and

RESOLVED FURTHER, that Attorney(s)-in-Fact shall have the power and authority, and, in any case, subject to the terms and limitations of the Power of Attorney issued them, to execute and deliver on behalf of the Company and to attach the seal of the Company to any and all bonds and undertakings, and other writings obligatory in the nature thereof, and any such instrument executed by such Attorney(s)-in-Fact shall be as binding upon the Company as if signed by an Executive Officer and sealed and attested to by the Secretary of the Company.

I, Thomas E. Huibregtse, Assistant Secretary of Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Company, and Fidelity and Guaranty Insurance Underwriters, Inc. do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I hereunto set my hand this **2nd** day of **January** , **2003**



*Thomas E. Huibregtse*, Assistant Secretary

To verify the authenticity of this Power of Attorney, call 1-800-421-3880 and ask for the Power of Attorney clerk. Please refer to the Power of Attorney number, the above-named individuals and the details of the bond to which the power is attached.

THIS DOCUMENT IS INVALID WITHOUT THE RED BORDER

# POWER OF ATTORNEY

Know All Men By These Presents:

That the Lumbermens Mutual Casualty Company, the American Motorists Insurance Company, and the American Manufacturers Mutual Insurance Company, corporations organized and existing under the laws of the State of Illinois, having their principal office in Long Grove, Illinois (hereinafter collectively referred to as the "Company") do hereby appoint
Christine A. Hartung , Elena Zunic , Marjorie A. Alternus , Leslie L. Rudat ,
Pamela L. Nunez , Wendy A. Bright and Rosemarie Rodden of PITTSBURGH , PA (EACH)

\* \* \* \* \* \* \* \* \* \* \* \* \*

their true and lawful agent(s) and Attorney(s)-in-Fact, to make, execute, seal, and deliver from the date of issuance of this power for and on its behalf as surety, and as their act and deed;

Any and all bonds and undertakings

EXCEPTION:  NO AUTHORITY is granted to make, execute, seal and deliver any bond or undertaking which guarantees the payment or collection of any promissory note, check, draft or letter of credit.

This authority does not permit the same obligation to be split into two or more bonds in order to bring each such bond within the dollar limit of authority as set forth herein.

This appointment may be revoked at any time by the Company.

The execution of such bonds and undertakings in pursuance of these presents shall be as binding upon the said Company as fully and amply to all intents and purposes, as if the same had been duly executed and acknowledged by their regularly elected officers at their principal office in Long Grove, Illinois.

This Power of Attorney is executed by authority of resolutions adopted by the Executive Committees of the Boards of Directors of the Company on February 23, 1988 at Chicago, Illinois, true and accurate copies of which are hereinafter set forth and are hereby certified to by the undersigned Secretary as being in full force and effect:

"VOTED, That the Chairman of the Board, the President, or any Vice President, or their appointees designated in writing and filed with the Secretary, or the Secretary shall have the power and authority to appoint agents and attorneys-in-fact, and to authorize them to execute on behalf of the Company, and attach the seal of the Company thereto, bonds and undertakings, recognizances, contracts of indemnity and other writings, obligatory in the nature thereof, and any such officers of the Company may appoint agents for acceptance of process."

This Power of Attorney is signed, sealed and certified by facsimile under and by authority of the following resolution adopted by the Executive Committee of the Boards of Directors of the Company at a meeting duly called and held on the 23rd day of February, 1988:

"VOTED, That the signature of the Chairman of the Board, the President, any Vice President, or their appointees designated in writing and filed with the Secretary, and the signature of the Secretary, the seal of the Company, and certifications by the Secretary, may be affixed by facsimile on any power of attorney or bond executed pursuant to resolution adopted by the Executive Committee of the Board of Directors on February 23, 1988 and any such power so executed, sealed and certified with respect to any bond or undertaking to which it is attached, shall continue to be valid and binding upon the Company."

In Testimony Whereof, the Company, has caused this instrument to be sign... and their corporate seals to be affixed by their authorized officers, this October3, 2001.

Attested and Certified:

Lumbermens Mutual Casualty Company
American Motorists Insurance Company
American Manufacturers Mutual Insurance Company

 

John K. Conway, Corporate Secretary

Gary J. Tully, Senior Vice President

STATE OF ILLINOIS    SS

COUNTY OF LAKE    SS

I, Maria I. Omori, a Notary Public, do hereby certify that Gary J. Tully and John K. Conway personally known to me to be the same persons whose names are respectively as Senior Vice President and Corporate Secretary of the Lumbermens Mutual Casualty Company, the American Motorists Insurance Company, and the American Manufacturers Mutual Insurance Company, Corporations organized and existing under the laws of the State of Illinois, subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that they being thereunto duly authorized signed, sealed with the corporate seals and delivered the said instrument as the free and voluntary act of said corporations and as their own free and voluntary acts for the uses and purposes therein set forth.

"OFFICIAL SEAL"
MARIA I. OMORI
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/17/2003

Maria I. Omori, Notary Public
My commission expires 9-17-03

CERTIFICATION

I, J. K. Conway, Corporate Secretary of the Lumbermens Mutual Casualty Company, the American Motorists Insurance Company, and the American Manufacturers Mutual Insurance Company, do hereby certify that the attached Power of Attorney dated October3, 2001 on behalf of the person(s) as listed above is a true and correct copy and that the same has been in full force and effect since the date thereof and is in full force and effect on the date of this certificate; and I do further certify that the said Gary J. Tully, who executed the Power of Attorney as Senior Vice President, was on the date of execution of the attached Power of Attorney the duly elected Senior Vice President of the Lumbermens Mutual Casualty Company, the American Motorists Insurance Company, and the American Manufacturers Mutual Insurance Company.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seal of the Lumbermens Mutual Casualty Company, the American Motorists Insurance Company, and the American Manufacturers Mutual Insurance Company on this    2nd    day of    January    , 20 03 .

  

John K. Conway, Corporate Secretary

This Power of Attorney limits the acts of those named therein to the bonds and undertakings specifically named therein and they have no authority to bind the Company except in the manner and to the extent herein stated.

Home Office: Long Grove, IL 60049

FK 09 75 (Ed. 09 01)

Printed in U.S.A.